

**IN THE UNITED STATES DISTRICT COURT**
**FOR NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**FILED**

12-31-2008

DEC 3 1 2008

UNITED STATES OF AMERICA ex rel.
JENNIFER S. SHULTZ,

Plaintiffs,

v.

DEVRY INC.

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

**Judge Suzanne B. Conlon**

Judge Suzanne B. ~~United~~ States District Court

Case No. 07 C 5425

**FILED IN CAMERA AND UNDER SEAL**
**UNDER THE FALSE CLAIMS ACT**

## FIRST AMENDED COMPLAINT

Comes now *qui tam* relator Jennifer Shultz by counsel, pursuant to Rule 15(a)

and Rule 15(c) of the Federal Rules of Civil Procedure, and alleges the following as her

First Amended Complaint herein, to be filed UNDER SEAL pursuant to 31 U.S.C. §

3730(b)(2):

1.      This is a civil action brought against Defendant Devry, Inc. ("Devry"), and

on behalf of the United States of America, through the *qui tam* provisions of the False

Claims Act, 31 U.S.C. §§ 3729-3732 (as amended by the False Claims Act

Amendments of 1986), to recover damages and civil penalties from Devry.

### Venue and Jurisdiction

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345

and 31 U.S.C. § 3730(b).

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c),

and 31 U.S.C. § 3732(a) as the Defendant has during all relevant times maintained its

corporate headquarters in, and has directed the conduct which is the subject of this action from, the Northern District of Illinois.

## The Parties

4.      Relator Jennifer Shultz, an adult resident citizen of Hilliard, Ohio, was employed by the Defendant Devry as a student recruiter from January of 2002 until approximately November of 2003. In that capacity, she worked within the Admissions Department at Devry and thereby became familiar with the marketing activities of Devry conducted throughout the United States to recruit students to enroll at "colleges" owned and controlled by Devry.

5.      Defendant Devry is a publicly-traded corporation, organized under the laws of the State of Delaware, which throughout all periods relevant to this case has maintained its corporate headquarters and principal place of business at One Tower Lane, Oakbrook Terrace, Illinois, located within this District and Division, which was also the location from which Devry devised the compensation schemes and related practices challenged in this action.  Since its formation in 1987, Devry has become one of the largest for-profit post-secondary educational enterprises in the United States, with current total enrollments exceeding 50,000 students. Devry owns and runs such educational institutions under the names of Devry University, Ross University, Chamberlain College of Nursing, and Becker Professional Review.  Devry's "campuses" within Illinois include facilities located at Addison, Chicago (and "Chicago Loop" and "Chicago O'Hare"), Elgin, Gurnee, Lincolnshire, Naperville, Oak Brook, Schaumburg, and Tinley Park, Illinois.

6.      The United States of America is here named a Plaintiff pursuant to the

2

False Claims Act, funds of the United States through the United States Department of Education ("DOEd") having directly or indirectly been disbursed and awarded to Defendant Devry, pursuant to the Higher Education Act, 20 U.S.C. §§ 1071 *et seq.,* Title IV ("HEA"), as a result of the false statements and false claims alleged in this Complaint made by or on behalf of (or caused by) Devry.

### Conditions for Devry's Entitlement to Proceeds of Federal Title IV Grants and Loans

7. Proceeds received directly or indirectly by Devry (or units or subsidiaries of Devry), from federal or federally-guaranteed student loans or grants made pursuant to the HEA, provided Devry with approximately 75% of its revenues from U. S. undergraduate tuition, book, and fee sources, since a substantial majority of the students recruited to and enrolled in Devry institutions receive federally-supported financial aid funded as a result of Title IV. (Proceeds from all such Title IV grants and loans are disbursed not to student borrowers, but to Devry and other purportedly eligible post-secondary institutions.)

8. As a legal prerequisite and legal condition to any legal entitlement to receive any such loan or grant proceeds, each of the Devry-owned and Devry-controlled "colleges" (or other "institutions") is required by statute and by DOEd regulations to make certain explicit certifications on the face of a "Program Participation Agreement" ("PPA") entered with the DOEd by each such school. The Program Participation Agreements themselves make clear to the institutional representative signing each such Agreement on behalf of the institution that "(t)he execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial

3

or continued participation in any Title IV, HEA Program." An example of such a PPA is attached to this First Amended Complaint as Exhibit A hereto.

9. Among the explicit certifications and statements signed by and on behalf of each Devry-controlled institution as a prerequisite for participation in the Title IV program was a certification that the Devry institution "will not provide, nor contract with any entity that provides, any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the awarding of student financial assistance, except that this requirement shall not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student assistance. This provision does not apply to the giving of token gifts to students or alumni for referring students for admission to the institution as long as the gift is not in the form of money, check, or money order; no more than one such gift is given to any student or alumnus; and the gift has a value of not more than $25." (The language concerning "recruitment of foreign students" does not apply to the claims asserted in this case, as this case does not involve Title IV loans to foreign students.)

10. That certification by each Devry-owned institution participating in the Title IV program constituted an explicit representation that the college then obeyed, and intended to continue to obey, the similar terms of the statutory provision enacted as 20 U.S.C. § 1094(a)(20), which provides that every such PPA shall "condition the initial and continuing eligibility of an institution to participate in a program upon compliance with the following requirements," including this requirement: "The institution will not

4

provide any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or In making decisions regarding the award of student financial assistance, except that this paragraph shall not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student assistance." (That prohibition shall be referred to hereafter as "the enrollment recruitment incentives prohibition.")

11.    The enrollment recruitment incentives prohibition is an essential and core part of the congressional policies behind the Title IV program, as it is designed by Congress and by the DOEd to protect the fiscal integrity and the educational effectiveness of the Title IV program by removing incentives for post-secondary institutions to recruit and enroll persons who are not likely to be willing or able to complete successfully the academic programs of the institution (and, in the case of student loans, are therefore less likely to be able and willing to re-pay their federal loans).

12.    That enrollment recruitment incentives prohibition has during all relevant times been re-stated by the DOEd In the regulation codified at 34 C.F.R. § 668.14(22). At all times relevant to this proceeding and preceding July 1, 2003, that regulation provided in relevant part that as a prerequisite to maintaining status as an eligible institution and in order to be eligible to be paid as a participant in the Title IV program, an educational institution "will not provide, nor contract with any entity that provides, any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities

5

engaged in any student recruiting or admission activities or in making decisions regarding the awarding of student financial assistance, . . ."

13.     Beginning on July 1, 2003, that regulatory language and meaning was changed, resulting in 34 C.F.R. § 668.14(22)(ii).  That new provision described twelve different "activities and arrangements that an institution may carry out without violating the provisions" of the enrollment recruitment incentives prohibition. None of those twelve categories of activities is involved in this case, as those "safe harbor" exceptions involve compensation (a) to persons other than recruiters (or their managers or supervisors) employed by Devry, or (b) compensation involving enrollment in programs not even eligible for any Title IV loan, or (c) compensation involving employers who pay their employees' tuition, or (d) uniform corporate-wide profit sharing distributions, or (e) fixed compensation adjustments made every six or twelve months (but not more often), or (f) compensation paid for internet-based admission activities, or (g) compensation based on students successfully graduating or completing an entire academic year of study at a Devry-owned institution.

14.     Throughout its participation in the Title IV program, Devry and all of its Devry-owned "colleges" and other institutions have known (and continue to know) that obedience to and compliance with the terms of the enrollment recruitment incentives prohibition, as re-stated in their own certifications in Devry's own PPA Agreements and in the Title IV statutes and regulations themselves, was a legal prerequisite to and was integral to the legal validity of, and to any entitlement of Devry or any of its units to receive any loan proceeds as a result of, any Title IV grant or loan application for any individual actual or prospective student submitted or presented for

6

payment directly to the DOEd or to any Guaranty Agency acting as agent of, on behalf of, and with the funds of the DOEd (and thus of the United States).

### Knowing Violations by Devry of the Enrollment Recruitment Incentives Prohibition

15.     Throughout the entire decade preceding the filing of this action, and in particular on each day that a Devry representative signed on behalf of Devry each of its PPAs, Devry and its management have known that they were (and intended to remain) in continual violation of the enrollment recruitment incentives prohibition, and that they were in violation of that prohibition at the times when they caused to be presented and submitted each and every one of the applications for Title IV loan (and grant) proceeds on behalf of each and every one of their students who purported to be eligible to serve as borrowers of such loans (or beneficiaries of such grants). As Devry management knew, it was the systematic and continual corporate policy of Devry to engage in compensation schemes which violated the enrollment recruitment incentive prohibition. Those violations were not anecdotal or incidental or temporary in nature, but were matters of continual corporate practice.

16.     Throughout the decade preceding the filing of this action, Devry has regularly and systematically provided and paid incentive payments to its admissions recruiters (and its Directors of Admissions, Assistant Directors of Admissions, and other recruiter supervisors) based on their success (or the success of those under their supervision) in securing enrollments. During all of those periods, for instance, Devry has caused and directed its institutions to pay (or to withhold) "promotional increases" and other incentive payments to Devry's individual "Admissions Advisor" recruiters, and

to promote (and demote) such admissions recruitment employees, based on the numbers or levels of "starts" achieved by or attributed to each such individual recruiter. (The term "start" as used by Devry, and as used herein, means an enrollment by a single prospective student at a Devry institution, and attendance by that enrollee during at least one day's classes at the Devry institution. The term "start" did not require or mean when used by Devry (and does not require or mean when used in this Complaint) that the student graduate from any particular educational program or otherwise successfully complete an educational course.)

17.     As a substantial part of its compensation scheme for rewarding recruiters with additional compensation based on the numbers of "starts" achieved by the recruiters, Devry required specified numbers of "starts" to be achieved by an employee to be (or to remain) an "Associate 1" (including, during some periods, "up to 120 starts"), required additional starts to be paid more as an "Advisor II" (including, during some periods, "121-130 starts"), required additional starts to be paid more as an "Advisor III" (including, during some periods, "131-145 starts"), required additional starts to be paid more as an "Advisor IV" (including, during some periods, "146-165 starts"), and required additional starts to be paid still more as a "Senior Advisor" (namely, during some periods, more than 165 starts annually).

18.     As Devry executives also knew during all relevant times, each Devry recruiter (and each recruitment or "admissions" manager or supervisor) was specifically assigned and was subject to a "minimum start expectation" for each trimester class of students admitted to the Devry campus as to which the recruiter worked. Each recruiter was required successfully to recruit and to cause the enrollment of at least the minimum

number of students (thus creating the minimum number of "starts") assigned to their "career ladder" position in the Devry hierarchy of recruiter positions and salaries, and was told that he or she would be (and was) subject each trimester to being demoted (or, in the euphemistic term preferred by Devry, "re-assigned") to a lower "career ladder" recruiter (or supervisory) position - and as a result would receive a lower salary - if the individual recruiter (or, in the case of recruiter managers, recruiters under their supervision) "missed" their assigned minimum start expectation figure for two consecutive trimester periods. Maintenance of the level of enrollment success required of each recruiter by the "minimum start expectation" assigned to each of them by Devry for each trimester was therefore an announced condition for each such Devry recruiter to maintain his or her salary level (and to retain an opportunity to advance his or her future salary levels). As a result, during each trimester each recruiter was incentivized by Devry successfully to achieve enough starts to avoid foregoing his or her same pay level in the future, such that the prospect of being paid future salary increments operated continually as an incentive payment (to be paid in the future, only if the required minimum starts were not "missed") based on success in securing enrollments at Devry. Devry's top management knew throughout all relevant periods that Devry was intentionally incentivizing each recruiter to maintain at least his or her minimum start level each trimester, in order for the recruiter to get paid during the following trimester (or other recruiter assessment period) the incremental difference between their existing salary level and the lower salary level they knew they would receive if they did not "meet" their start minimums during the required number of trimesters. Because the

9

resulting start-based decisions about such demotions were implemented each trimester, such demotion decisions were made and any resulting pay decreases were adjusted more often than every six months.

19.    As a principal means of supervising and motivating Devry recruiters to cause more enrollments at Devry institutions through their recruitment activities, Devry also maintained during the decade preceding the filing of this action what Devry called a "PRIDE" motivational program, in which Devry promised to (and did) pay each year for each individual recruiter to receive additional or bonus compensation (in addition to and separate from any fixed salary) if, but only if, the individual recruiter caused or was responsible for a specified number of "starts" during the year, or "met PRIDE" targets for that recruiter for the year involved. As one example, Devry required an individual recruiter to be responsible for at least 145 "total starts" in order to "make PRIDE" in 2003 and thus receive the additional compensation linked to "PRIDE Membership".

20.    If an individual Devry recruiter (or "Devry Admissions Advisor") "met PRIDE" by causing (or being treated or regarded by supervisors as having caused) their required target number of starts during the year (or other "start period") involved, Devry would pay for that recruiter (and that recruiter's spouse or other guest) to fly to an annual "PRIDE" celebration at a designated city, for the recruiter (and spouse or guest) to stay at a designated expensive hotel at Devry's expense, and for the recruiter (and spouse or guest) to eat during the "PRIDE" celebration at Devry's expense. One year, believed to be in December of 2003, the Devry all-expense-paid trip for all "PRIDE Members" who met their designated "PRIDE Start Targets" was in Chicago, Illinois, and another year the same annual trip was in December in Miami, Florida. Eligibility for

10

attending any such "PRIDE Meeting" at Devry's expense depended entirely on whether or not the individual Devry recruiter met their annual PRIDE target of starts. Most Devry recruiters did not receive that bonus compensation because most did not "make PRIDE" by achieving the level of "starts" required of them in order to receive that additional compensation.

21.   As additional compensation resulting each year to each individual "PRIDE Member" who met their designated "start" target, the recruiter who thereby became a "PRIDE Member" for that year also received a cash bonus paid to the recruiter by Devry. In 2003, for instance, each individual "PRIDE Member" received $1,000.00 in cash in an envelope delivered to each individual PRIDE Member's hotel room in the course of the annual "PRIDE Meeting" which the Relator believes to have occurred in Chicago, Illinois in December of 2003.

22.   As further additional compensation resulting each year to each individual "PRIDE Member" who met their designated "start" target for the year, the recruiter who thereby became a "PRIDE member" for that year was allowed by Devry to look through a catalogue of alternative gifts supplied by Devry, and was allowed to select from that catalogue an item to be purchased by Devry and at Devry's expense for the "PRIDE Member," which Devry did in fact purchase for and give to each such PRIDE "member". Alternative gifts available only to "PRIDE Members" each year were not of nominal value, and included expensive wrist watches, items of luggage, and household fixtures such as lamps.

23.   The bonus compensation "PRIDE Member" program of Devry was heavily and consistently emphasized by Devry recruitment executives through weekly (Friday

morning) sales meetings held within the Admissions Department of each Devry campus, as such executives regularly announced to their entire "team" of recruiters at such meetings the number of additional "starts" which each recruiter needed to "Make PRIDE" and thus receive the year-end additional compensation and other "amenities" earned entirely through achieving credit for the designated number of "starts" for the year or other period involved.

24.     At the time of signing each of its PPA agreements with the DOEd, Devry (and its institutional units or "colleges") knew that its certifications of compliance with the enrollment recruitment incentives prohibition were false, and knew that it had no intent or purpose of changing its recruitment compensation practices to come into compliance with the prohibition, and accordingly Devry signed and entered each of its PPA agreements fraudulently, intending fraudulently to induce the DOEd to treat Devry as an eligible institution for purposes of getting payments from DOEd in response to loan and grant applications, when Devry knew that it did not meet (and had no intention or plan to meet) the conditions and prerequisites for serving as an eligible institution. By signing its PPA agreements, Devry intended specifically to deceive the DOEd.

25.     Devry throughout its maintenance of the "PRIDE Member" bonus compensation program has used various terms and documents fraudulently to obscure and hide its recruitment compensation practices committed in violation of the enrollment recruitment incentives prohibition, when in fact the financial rewards for individual recruiters were contingent on and tied directly to the individual recruiters' statistical level of success in causing specified levels of enrollments (or "starts"). Devry has also instructed its recruiters not to communicate the true facts of its "PRIDE Member"

12

compensation program to persons not employed by Devry. Devry's purpose has been to obscure and hide from the DOEd its numbers-drive compensation system, including the "PRIDE Member" program itself.

### False Statements and Records Used by Devry to Get<br>False Claims for Pell Grant and FSEO Grant Proceeds Paid by DOEd

26.     During the decade immediately preceding the filing of this Complaint, Devry has continually caused its "colleges" and other units to make, and has caused individual prospective students recruited by Devry to make, applications directly to the DOEd seeking and claiming entitlement to funds from Pell Grants (pursuant to 20 U.S.C. § 1070a *et seq.*) and from Federal Supplemental Educational Opportunity ("FSEO") Grants (pursuant to 20 U.S.C. § IQ70b *et seq.*), to fund the educations of individual students. A majority of the students recruited to and enrolled in Devry institutions have during the relevant time received either Pell or FESO grants. Both the Pell Grant program and the FSEO program are Title IV programs, and the eligibility of an educational institution to participate in either such program depends on the validity of and its compliance with the school's PPA.

27.     Proceeds from Pell Grants and FSEO grants during all relevant times were disbursed by DOEd on behalf of the United States directly to Devry. Upon Devry's receipt of all such proceeds directly from DOEd, Devry is responsible for administering the grant proceeds by crediting to the account of each eligible student appropriate amount of grant funds.

28.     In order to receive a Pell or FSEO grant, a student must demonstrate financial need. The expected family contribution ("EFC") formula is the standard formula

used in determining financial need for Federal Student Aid programs. From the information presented to the DOEd through each prospective student's Free Application for Federal Student Aid ("FAFSA"), the student's financial need is determined by assigning to each student an EFC number. The lower a student's EFC number is, the greater is the student's demonstrated financial need and thus eligibility for Pell grant or FSEO grant funds. A sample copy of a FAFSA form is attached to this First Amended Complaint as Exhibit B hereto.

29.    Each of the FAFSA application forms submitted for prospective students of Devry during the years relevant to this case included a "School Use Only" Section, in which a Devry representative on behalf of Devry wrote a "Federal School Code" specific to Devry on each such FAFSA, and added on behalf of Devry a signature affirming that accuracy of that Devry Code, as a material part of each such FAFSA's presentation to the DOEd. The purpose of each such "Federal School Code" was not only to identify the school, but also to affirm and represent that each such school was then an "eligible institution" in compliance with its PPA obligations and representations under Title IV. For the reasons set forth above, all such representations by Devry were false, and all such FAFSA applications were false statements and records, and all such claims for payments of Pell grants and FESO grants were legally false, as Devry by virtue of its knowing and intentional disregard and violation of the enrollment recruitment incentives prohibition was not in compliance with its PPA and had falsely represented its compliance on its PPA.

30.    As Devry has known throughout its existence, continuing compliance with

14

the terms of its PPA, including the enrollment recruitment incentives prohibition, has

continually been a prerequisite and precondition for any entitlement on the part of Devry

or any of its units or subsidiaries to receive any such Pell or FESO grant proceeds, or

otherwise to be truthfully and validly an "eligible institution" to participate in any such

Title IV program.

31.    Between August of 2001 and the original filing of the Complaint herein,

Devry has caused 149,978 Pell Grants to be paid by the DOEd directly to Devry, in

reliance on and response to such claims and representations, resulting in payments to

Devry during that period alone of an estimated total of $323,172,332.00 in Pell Grant

proceeds alone.

32.    In presenting to the DOEd itself, or causing to be presented to the

DOEd by the individual student, each such FAFSA application, Devry intended for the

DOEd to rely on that representation of the status of Devry as an eligible institution, and

intended for the DOEd to rely on the implicit use of Devry's PPA certifications of

compliance with the enrollment recruitment incentives prohibition, as material to its

decision to pay the requested amount to Devry, and intended that DOEd as a result of

that material reliance would in fact pay to Devry the grant proceeds requested in the

FAFSA.

### False Statements and Records Used by Devry to Get
### False Claims for Title IV Loan Proceeds Paid by DOEd

33.    Throughout the decade immediately preceding the filing of this Compliant,

Devry has continually caused its "colleges" and other educational units to make, and

has caused individual student loan lenders to make, applications directly to the DOEd

seeking and claiming entitlement to funds as a result of student loans made directly by the DOED pursuant to the Federal Direct Student Loan Program (pursuant to 20 U.S.C. § 1087a *et seq.*), to fund the education of individual students at a Devry "college". Loan proceeds resulting from all such direct loan applications were disbursed to Devry or to one of its units or subsidiaries.

34. Throughout the decade immediately preceding the filing of this Compliant, Devry has continually caused its "colleges" and other educational units to make, and has caused individual prospective students recruited by Devry to make, applications to private lenders for loan proceeds, to be disbursed to Devry or to one of its units or subsidiaries, from loans made under the Federal Family Education Loan Program ("FFELP"). The FFELP in turn includes federally subsidized (and unsubsidized) "Stafford Loans" (on which the DOEd directly or indirectly pays interest during in-school or other deferment and forebearance periods), Federal PLUS loans (directly to parents of dependent undergraduate college students), Perkins Loans (to students with substantial financial need), and Federal Consolidation Loans.

35. As a part of each such application or claim for each such Title IV loan, Devry has caused a knowingly false representation to be made to the DOEd that Devry (or the Devry-controlled institution to which the prospective student has been recruited) was at that time an eligible institution, and was therefore then in compliance with a valid PPA.

36. As to each application for each Stafford Loan, for instance, Devry caused to be presented to the DOEd a "Federal Stafford Loan School Certification," in the form reflected on Exhibit C attached. Each such Certification included a "School

16

Certification" signed by a representative of Devry on its behalf certifying that the Devry Institution involved was "a program that is eligible for the loan type(s) certified," and that Devry was otherwise an eligible institution under Title IV.

37.    As to each application for a Federal "PLUS" loan, Devry caused to be presented to the DOEd a "Federal PLUS Loan Information and School Certification," in the form reflected on Exhibit D attached. Each such Certification included a "School Certification" by Devry representing that the Devry institution to be attended by the student was "an eligible program" under Title IV.

38.    Devry also submitted directly to the DOEd each year a "Fiscal Operations Report and Application to Participate" ("FISAP"), in the form reflected on Exhibit F attached, seeking to renew its eligibility to participate in the Federal Perkins Loan program (involving loans to students demonstrating substantial financial need), inherently representing that Devry was an eligible institution under Title IV, and implicitly using its certifications in its PPAs of its continuing compliance with the enrollment recruitment incentives prohibition, all as a material prerequisite to its eligibility to participate in the Perks Loan program each such year.

39.    As Devry has known throughout its existence, continuing compliance with the terms of its PPA, including the enrollment recruitment incentives prohibition, has continually been a prerequisite and precondition for any entitlement on the part of Devry or any of its units or subsidiaries to be properly regarded as an eligible institution or eligible program under Title IV, eligible to receive any such loan proceeds. Each such certification by Devry on each such form used to apply for or receive such loan

proceeds, including the forms of the kind attached as Exhibit C and Exhibit D hereto, was false, and each such resulting loan application was likewise false.

40.     In presenting to the DOEd itself, or in causing to be presented to the DOEd by the individual student or lender, each such FFELP loan application or FISAP, Devry intended that the DOEd rely on Devry's own representation of the status of Devry as an eligible institution, and intended for the DOEd to rely on the implicit use of Devry's PPA certifications of compliance with the enrollment recruitment incentives prohibition, as material to its decision to pay the requested amount to Devry, and intended for DOEd to regard those representations as material to DOEd's decision in fact to pay the requested loan proceeds to Devry.

### False Statements and Records Caused by Devry to be Made to Get False Default Insurance Claims, Interest Subsidies, and Special Allowance Payments Paid to Title IV Lenders by DOEd

41.     When any such FFELP loan has been the subject of a default, Devry has caused the private lenders as to such loans to represent falsely that Devry was then an eligible institution in compliance with its PPA, and as a result to claim and receive an insurance payment by the DOEd or by one of the Guaranty Agencies acting as agent of the DOEd and with DOEd funds, pursuant to the DOEd guaranty behind each such FFELP loan obligation.  Through a "Claim Form" submitted by each lender as to each such defaulted loan in the form reflected as Exhibit G attached, Devry has specifically caused each such lender falsely to certify that each such loan was made "in compliance with all federal regulations," when in fact each such loan was made in order to fund tuition at a Devry institution which was not an eligible institution as required.  As Devry

18

has known throughout its existence, continuing compliance by it and by its units with the terms of its PPA, including the enrollment recruitment incentives prohibition, has continually been a prerequisite and precondition for any entitlement on the part of any FFELP lender to receive any such insurance proceeds.

42.     Any private lender as to any such FFELP student loan is also eligible to claim payments as to such loans, directly from the DOEd and pursuant to 20 U.S.C. § 1078(a)(1)(A), of interest subsidies (for the purposes of reducing interest obligations of students during their school attendance, during grace periods, or during deferments of their payment obligations) and also a further form of DOEd payments called "Special Allowance" payments.

43.     Claims for such interest subsidy and special allowance payments are made directly by lenders (or their loan "servicers") to the DOEd each quarter through claims forms known as"LaRS/799" forms, a true copy of which is attached as Exhibit H hereto. A material part of each such payment in reliance on each such claims form is the accuracy of the lender's certification as follows: "I certify that this submission seeks payment of only those amounts that are proper and authorized under the laws, regulations, and policies applicable to the Federal Family Education Loan Program." A material condition of the accuracy of that certification, and of the lender's entitlement to be paid on any such claim for interest subsidies or special allowance payments, is the status of the school attended by the student borrower as an eligible institution under Title IV. A material condition of that eligibility is in turn the accuracy of the school's PPA certification of compliance with the enrollment recruitment incentives prohibition, and indeed the school's continuing compliance with that prohibition after the date of its PPA

19

certification to that effect.

44.    Devry knew at the time of each such certification and claim, by each such lender of each Devry student borrower, for each such interest subsidy and special allowance payment, that its continuing compliance with and obedience to the enrollment recruitment incentives prohibition was a precondition of, was material to, and was integral to any entitlement by any such lender to be paid with funds of the DOEd in response to each such claim. Devry also knew continually that it was not in compliance with the enrollment recruitment incentives prohibition, had not been in compliance therewith at the time of the most recent signing of its PPA, and had no intention and no plan to come into compliance with the prohibition. Devry therefore knew at the time of each such claim that each such interest subsidy and special allowance claim was factually and legally false, and that a false certification as to Devry's eligibility as an educational institution had been made in order to get such claims paid by the DOEd, and a legally necessary, material, and integral part of, condition of, and cause of, each such claim being paid to each such lender.

45.    In causing each such lender to present to the DOEd each such claim for interest subsidies or special allowance payments, Devry intended that the DOEd would rely on that representation of the status of Devry as an eligible institution, intended that the DOEd would rely on the implicit use of Devry's PPA certification of its compliance with the enrollment recruitment incentives prohibition, intended that DOEd would regard those representations as material to its decision to pay the requested amount of each and every such claim, and intended that DOEd as a result would in fact pay the requested amount of each such claim.

20

## Count 1 - Causing Knowingly False Claims to be Presented and Paid

46.     This is a claim on behalf of the United States of America under the False Claims Act, 31 U.S.C. §§ 3729-33, as amended, specifically for violations of Section 3729(a)(1) thereof.

47.     The Plaintiff hereby re-alleges and incorporates by reference all allegations contained in Paragraphs 1 through 45 above.

48.     In performing all of the acts set out herein, Defendant Devry knowingly presented and/or caused to be presented, to the DOEd (or to Guaranty Agencies operating as agents of and with funds of the DOEd) and to other officers, employees or agents of the United States, false claims and fraudulent claims for approval and payment out of the funds of the United States, and caused losses to the United States in the amounts of those payments, for grant proceeds, loan proceeds, interest subsidies, special allowance payments, and loan insurance guaranty payments, as to each and every such claim and payment proceeds of which were disbursed directly or indirectly to Devry or to any of its units or colleges (or, as to insurance guaranty payments, any lender to any enrollee of any Devry institution), since the date when Devry first started causing such claims to be made (or since the date when Devry first decided to engage in conduct in violation of the enrollment recruitment incentives prohibition as defined above), all in violation of 31 U.S.C. § 3729(a)(1).

49.     By virtue of and as a result and cause of the false claims presented or caused to be presented by Devry, the United States of America has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the

false claims presented or caused to be presented, and other monetary relief as determined appropriate from the evidence to be presented at the trial hereof.

### Count 2 - Knowing Use of False Certifications and Other Statements to Get False Claims Paid

50.     This is a claim on behalf of the United States of America under the False Claims Act, 31 U.S.C. §§ 3729-33, as amended, specifically for violations of Section 3729(a)(2) thereof.

51.     The Plaintiff hereby re-alleges and incorporates by reference all allegations contained in Paragraphs 1 through 45 above.

52.     In performing all of the acts set forth herein, Defendant Devry knowingly used and caused false and fraudulent PPA certifications, and other representations that Devry-controlled institutions were institutions eligible to receive proceeds from related DOEd programs, and other false and fraudulent records as set forth above, to be used as an integral part of and as material to the process of and conditions for causing false and fraudulent claims to be made to the DOEd (or to Guaranty Agencies operating as agents of and with funds of the DOEd) and to other officers, employees or agents of the United States, for grant proceeds, loan proceeds, interest subsidies, special allowance payments, and loan insurance guaranty payments, as to each and every such false claim and payment, proceeds of which were disbursed directly or indirectly to Devry or to any of its units or colleges (or, as to insurance guaranty payments, any lender to any enrollee of any Devry institution), since the date when Devry first started causing such claims to be made (or since the date when Devry first decided to engage in conduct in violation of the enrollment recruitment incentives

prohibition as defined above), all such claims being legally false, and all in violation of

31 U.S.C. § 3729(a)(2).

53. By virtue of and as a result and cause of the false claims presented or

caused to be presented by Devry with the use of such statements and records, the

United States of America has suffered actual damages and is entitled to recover three

times the amount by which it is damaged, plus civil money penalties of not less than

$5,500 and not more than $11,000 for each of the false claims presented or caused to

be presented, and other monetary relief as determined appropriate from the evidence to

be presented at the trial hereof.

### Count 3 - Using False Certifications and Other Statements to Avoid Obligations to Re-Pay Funds to DOEd

54. This is a claim on behalf of the United States of America under the False

Claims Act, 31 U.S.C. §§ 3729-33, as amended, specifically for violations of Section

3729(a)(7) thereof.

55. The Plaintiff hereby re-alleges and incorporates by reference all

allegations contained in Paragraphs 1 through 45 above.

56. In performing all of the acts set out herein, Defendant Devry

knowingly used and caused false and fraudulent PPA certifications, and other

representations that Devry-controlled institutions were institutions eligible to receive

proceeds from related DOEd programs, and other false and fraudulent records, to be

used as an integral part of the process of and conditions for causing false and

fraudulent claims to be made to the DOEd (or to Guaranty Agencies operating as

agents of and with funds of the DOEd) and to other officers, employees or agents of the

United States, for grant proceeds, loan proceeds, interest subsidies, special allowance payments, and loan insurance guaranty payments, in order to be treated by the DOEd as an eligible institution for the lawful receipt of such payments, and in order to avoid the obligation to return or refund to the DOEd funds received during periods of time when in fact Devry, because of its violations of the enrollment recruitment incentives prohibition, was not an eligible institution, and thus all funds received directly or indirectly by Devry from the DOEd since the date when Devry first decided to engage in conduct in violation of that prohibition, all in violation of 31 U.S.C. § 3729(a)(7).

57.    By virtue of and as a result and cause of the false claims presented or caused to be presented by Devry with the use of such statements and records, and the use by Devry of false statements to conceal Devry's obligation to return or refund all such payments received by Devry, the United States of America has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as determined appropriate from the evidence to be presented at the trial hereof.

### PRAYER FOR RELIEF

WHEREFORE, the United States of America demands and prays that judgment be entered in favor of the United States of America:

1.    On Counts 1-3, under the False Claims Act against Devry for three times (or "treble") the amount of funds paid directly or indirectly (through reimbursements to a Guaranty Agency or otherwise) by the DOEd to Devry (and to any unit or institution owned or controlled by Devry), and to any private lender which

received insurance guaranty payments, or special allowance payments, or interest payments, as to grants or loans the original proceeds of which were disbursed directly or indirectly to an institution owned or controlled by Devry, plus all investigative costs, and all civil penalties as are allowable by law for each false claim, and for costs of this civil action; and

2.    For such other relief as the Court deems just and equitable.

WHEREFORE, Relator Jennifer S. Shultz demands and prays that judgment be entered in his favor as follows:

1.    On Counts 1-3, under the False Claims Act, for thirty percent (or another lawful and appropriate percent) of all civil penalties and damages obtained from Devry pursuant to 31 U.S.C. § 3730;

2.    Reasonable attorneys' fees, and all costs incurred in the prosecution of this action against the Defendant; and

3.    Such other relief as the Court deems just and proper.

Respectfully submitted,
JENNIFER S. SHULTZ, Relator
By her Attorneys,
PIGOTT, REEVES & JOHNSON, P.A.

By: _____
Brad Pigott
Admitted Pro Hac Vice

Robin Potter (ARDC No. 3123932)
Denise M. Kelleher (ARDC No. 6286565)
Robin Potter & Associates
111E. Wacker, Suite 2600
Chicago, Illinois 60601
Telephone: (312) 861-1800

Brad Pigott (Miss. Bar No. 4350)

Pigott Reeves Johnson, P.A.
775 N. Congress Street
Post Office Box 22725
Jackson, Mississippi 39501
Telephone: (601) 354-2121

Timothy J. Matusheski (Miss. Bar No. 100998)
Law Offices of Timothy Matusheski
Post Office Box 1421
Waynesboro, Mississippi 39367
Telephone: 601-735-5333
Fax: 601-735-5008

Exhibit A
Prog. Participation Agmt

PPA, OPE ID: 00787000. PPA Expiration Date: 09/30/2009          http://www.hccfl.edu/sacs/draft_report/ParticipationAgreementupto20...

ED Logo     **UNITED STATES DEPARTMENT OF EDUCATION**

### FEDERAL STUDENT AID
### SCHOOL ELIGIBILITY CHANNEL

# PROGRAM PARTICIPATION AGREEMENT

Effective Date of          The date on which this Agreement is signed on behalf of the
Approval:                  Secretary of Education

Approval Expiration
Date:

Reapplication Date:

Name of Institution:

Address of Institution:

OPE ID Number:

DUNS Number:

Taxpayer Identification Number (TIN):

**The execution of this Agreement by the Institution and
the Secretary is a prerequisite to the Institution's initial
or continued participation in any Title IV, HEA Program.**

The postsecondary educational institution listed above, referred to hereafter as the "Institution,"
and the United States Secretary of Education, referred to hereafter as the "Secretary," agree that
the Institution may participate in those student financial assistance programs authorized by Title
IV of the Higher Education Act of 1965, as amended (Title IV, HEA Programs) indicated under
this Agreement and further agrees that such participation is subject to the terms and conditions
set forth in this Agreement. As used in this Agreement, the term "Department" refers to the U.S.
Department of Education.

### SCOPE OF COVERAGE

This Agreement applies to all locations of the Institution as stated on the most current
ELIGIBILITY AND CERTIFICATION APPROVAL REPORT issued by the Department. This
Agreement covers the Institution's eligibility to participate in each of the following listed Title
IV, HEA programs, and incorporates by reference the regulations cited.

EXHIBIT
A

- **FEDERAL PELL GRANT PROGRAM,** *20 U.S.C. 1070a et seq; 34 CFR Part 690.*

- **FEDERAL FAMILY EDUCATION LOAN PROGRAM,** *20 U.S.C. 1071 et seq; 34 CFR Part 682.*

- **FEDERAL DIRECT STUDENT LOAN PROGRAM,** *20 U.S.C. 1087a et seq; 34 CFR Part 685.*

- **FEDERAL PERKINS LOAN PROGRAM,** *20 U.S.C. 1087aa et seq; 34 CFR Part 674.*

- **FEDERAL SUPPLEMENTAL EDUCATIONAL OPPORTUNITY GRANT PROGRAM,** *20 U.S.C. 1070b et seq; 34 CFR Part 676.*

- **FEDERAL WORK-STUDY PROGRAM,** *42 U.S.C. 2751 et seq; 34 CFR Part 675.*

# GENERAL TERMS AND CONDITIONS

1. The Institution understands and agrees that it is subject to and will comply with the program statutes and implementing regulations for institutional eligibility as set forth in 34 CFR Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 CFR Part 668.
*The recitation of any portion of the statute or regulations in this Agreement does not limit the Institution's obligation to comply with other applicable statutes and regulations.*

2.  a. The Institution certifies that on the date it signs this Agreement, it has a drug abuse prevention program in operation that it has determined is accessible to any officer, employee, or student at the Institution.
   b. The Institution certifies that on the date it signs this Agreement, it is in compliance with the disclosure requirements of Section 485(f) of the HEA (Campus Security Policy and Crime Statistics).

3. The Institution agrees to comply with --
   a. Title VI of the Civil Rights Act of 1964, as amended, and the implementing regulations, 34 CFR Parts 100 and 101 (barring discrimination on the basis of race, color or national origin);
   b. Title IX of the Education Amendments of 1972 and the implementing regulations, 34 CFR Part 106 (barring discrimination on the basis of sex);
   c. The Family Rights and Privacy Act of 1974 and the implementing regulations, 34 CFR Part 99;
   d. Section 504 of the Rehabilitation Act of 1973 and the implementing regulations, 34 CFR Part 104 (barring discrimination on the basis of physical handicap); and
   e. The Age Discrimination Act of 1975 and the implementing regulations, 34 CFR Part 110.

4. The Institution acknowledges that 34 CFR Parts 602 and 667 require accrediting agencies, State regulatory bodies, and the Secretary to share information about institutions. The Institution agrees that the Secretary, any accrediting agency recognized by the Secretary, and any State regulatory body may share or report information to one another about the Institution without limitation.

5. The Institution acknowledges that the HEA prohibits the Secretary from recognizing the accreditation of any institution of higher education unless that institution agrees to submit any dispute involving the final denial, withdrawal, or termination of accreditation to initial arbitration prior to any other legal action.

## SELECTED PROVISIONS FROM
## GENERAL PROVISIONS REGULATIONS, 34 CFR PART 668

By entering into this Program Participation Agreement, the Institution agrees that:

(1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program;

(2) As a fiduciary responsible for administering Federal funds, if the institution is permitted to request funds under a Title IV, HEA program advance payment method, the institution will time its requests for funds under the program to meet the institution's immediate Title IV, HEA program needs;

(3) It will not request from or charge any student a fee for processing or handling any application, form, or data required to determine a student's eligibility for, and amount of, Title IV, HEA program assistance;

(4) It will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV, HEA programs, together with assurances that the institution will provide, upon request and in a timely manner, information relating to the administrative capability and financial responsibility of the institution to--

(i) The Secretary;

(ii) The State [regulatory bodies] for the State or States in which the institution or any of the institution's branch campuses or other locations are located;

(iii) A guaranty agency, as defined in 34 CFR part 682, that guarantees loans made under the Federal Stafford Loan, and Federal PLUS programs for attendance at the institution or any of the institution's branch campuses or other locations;

(iv) The nationally recognized accrediting agency that accredits or preaccredits the institution or any of the institution's branch campuses, other locations, or educational programs;

(v) The State agency that legally authorizes the institution and any branch campus or other location of the institution to provide postsecondary education; and

(vi) In the case of a public postsecondary vocational educational institution that is approved by a State agency recognized for the approval of public postsecondary vocational education, that State agency;

(5) It will comply with the provisions of §668.15 relating to factors of financial responsibility;

(6) It will comply with the provisions of §668.16 relating to standards of administrative capability;

(7) It will submit reports to the Secretary and, in the case of an institution participating in the Federal Stafford Loan, Federal PLUS, or the Federal Perkins Loan Program, to holders of loans

made to the institution's students under these programs at such times and containing such information as the Secretary may reasonably require to carry out the purpose of the Title IV, HEA programs;

(8) It will not provide any statement to any student or certification to any lender under the Federal Stafford Loan or Federal PLUS Program that qualifies the student for a loan or loans in excess of the amount that the student is eligible to borrow in accordance with §§425(a), 428(a)(2), 428(b)(1)(A) and (B), and 428H of the HEA;

(9) It will comply with the requirements of Subpart D of 34 CFR part §§668 concerning institutional and financial assistance information for students and prospective students;

(10) In the case of an institution that advertises job placement rates as a means of attracting students to enroll in the institution, it will make available to prospective students, at or before the time that those students apply for enrollment-

(i) The most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements; and

(ii) Relevant State licensing requirements of the State in which the institution is located for any job for which an educational program offered by the institution is designed to prepare those prospective students;

(11) In the case of an institution participating in the Federal Stafford Loan, or Federal PLUS Program, the institution will inform all eligible borrowers, as defined in 34 CFR part 682, enrolled in the institution about the availability and eligibility of those borrowers for State grant assistance from the State in which the institution is located, and will inform borrowers from another State of the source for further information concerning State grant assistance from that State;

(12) It will provide the certifications described in paragraph (c) of this section;

(13) In the case of an institution whose students receive financial assistance pursuant to section 484(d) of the HEA, the institution will make available to those students a program proven successful in assisting students in obtaining the recognized equivalent of a high school diploma;

(14) It will not deny any form of Federal financial aid to any eligible student solely on the grounds that the student is participating in a program of study abroad approved for credit by the institution;

(15) In the case of an institution seeking to participate for the first time in the Federal Stafford Loan and Federal PLUS programs, the institution has included a default management plan as part of its application under §600.20 for participation in those programs and will use the plan for at least two years from the date of that application. The Secretary considers the requirements of this paragraph to be satisfied by a default management plan developed in accordance with the default reduction measures described in the June 2001 Dear Partner Letter, GEN-01-08;

(16) In the case of an institution that changes ownership that results in a change of control, or that changes its status as a main campus, branch campus, or an additional location, the institution will, to participate in the Federal Stafford Loan and Federal PLUS Programs, develop a default management plan for approval by the Secretary and implement the plan for at least two years after the change in control or status. The Secretary considers the requirements of this paragraph to be satisfied by a default management plan developed in accordance with the default reduction measures described in the June 2001 Dear Partner Letter, GEN-01-08;

(17) The Secretary, guaranty agencies and lenders as defined in 34 CFR Part 682, nationally recognized accrediting agencies, the Secretary of Veterans Affairs, State [regulatory bodies], State agencies recognized under 34 CFR part 603 for the approval of public postsecondary vocational education, and State agencies that legally authorize institutions and branch campuses

or other locations of institutions to provide postsecondary education, have the authority to share with each other any information pertaining to the institution's eligibility for or participation in the Title IV, HEA programs or any information on fraud and abuse;

(18) It will not knowingly --

(i) Employ in a capacity that involves the administration of the Title IV, HEA programs or the receipt of funds under those program, an individual who has been convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds, or has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(ii) Contract with an institution or third-party servicer that has been terminated under section 432 of the HEA for a reason involving the acquisition, use, or expenditure of Federal, State, or local government funds, or that has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds; or

(iii) Contract with or employ any individual, agency, or organization that has been, or whose officers or employees have been—

(A) Convicted of, or pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds; or

(B) Administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(19) It will complete, in a timely manner and to the satisfaction of the Secretary, surveys conducted as a part of the Integrated Postsecondary Education Data System (IPEDS) or any other Federal collection effort, as designated by the Secretary, regarding data on postsecondary institutions;

(20) In the case of an institution that offers athletically related student aid, it will comply with the provisions of paragraph (d) of this section;

(21) It will not impose any penalty, including, but not limited to, the assessment of late fees, the denial of access to classes, libraries, or other institutional facilities, or the requirement that the student borrow additional funds for which interest or other charges are assessed, on any student because of the student's inability to meet his or her financial obligations to the institution as a result of the delayed disbursement of the proceeds of a Title IV, HEA program loan due to compliance with statutory and regulatory requirements of or applicable to the Title IV, HEA programs, or delays attributable to the institution;

(22) It will not provide, nor contract with any entity that provides, any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the awarding of student financial assistance, except that this requirement shall not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal Student Assistance. This provision does not apply to the giving of token gifts to students or alumni for referring students for admission to the institution as long as: the gift is not in the form of money, check, or money order; no more than one such gift is given to any student or alumnus; and the gift has a value of not more than $100;

(23) It will meet the requirements established pursuant to Part H of Title IV of the HEA by the Secretary, State [authorizing bodies], and nationally recognized accrediting agencies;

(24) It will comply with the refund provisions established in 34 CFR Part 668.22;

(25) It is liable for all improperly administered funds received or refunded under the Title IV, HEA programs, including any funds administered by a third-party servicer;

(26) If the stated objectives of an educational program of the institution are to prepare a student for gainful employment in a recognized occupation, the institution will--

(i) Demonstrate a reasonable relationship between the length of the program and entry level requirements for the recognized occupation for which the program prepares the student. The Secretary considers the relationship to be reasonable if the number of clock hours provided in the program does not exceed by more than 50 percent the minimum number of clock hours required for training in the recognized occupation for which the program prepares the student, as established by the State in which the program is offered, if the State has established such a requirement, or as established by any Federal agency; and

(ii) Establish the need for the training for the student to obtain employment in the recognized occupation for which the program prepares the student.

(c) In order to participate in any Title IV, HEA program (other than the SSIG and NEISP programs), the institution must certify that it--

(1) Has in operation a drug abuse prevention program that the institution has determined to be accessible to any officer, employee, or student at the institution; and

(2)(i) Has established a campus security policy in accordance with section 485(f) of the HEA; and

(ii) Has complied with the disclosure requirements of §668.47 as required by section 485(f) of the HEA.

(d) In order to participate in any Title IV, HEA program (other than the SSIG and NEISP programs), an institution that offers athletically related student aid must--

(1) Cause an annual compilation, independently audited not less often than every 3 years, to be prepared within 6 months after the end of the institution's fiscal year, of--

(i) The revenues derived by the institution from the institution's intercollegiate athletics activities, according to the following categories:

(A) Total revenues.

(B) Revenues from football.

(C) Revenues from men's basketball.

(D) Revenues from women's basketball.

(E) Revenues from all other men's sports combined.

(F) Revenues from all other women's sports combined;

(ii) Expenses made by the institution for the institution's intercollegiate athletics activities, according to the following categories:

(A) Total expenses.

(B) Expenses attributable to football.

(C) Expenses attributable to men's basketball.

(D) Expenses attributable to women's basketball.

(E) Expenses attributable to all other men's sports combined.

(F) Expenses attributable to all other women's sports combined; and

(iii) The total revenues and operating expenses of the institution; and

(2) Make the compilation and, where allowable by State law, the results of the audits required by paragraph (d)(1) of this section available for inspection by the Secretary and the public.

(e) For the purposes of paragraph (d) of this section--

(1) Revenues from intercollegiate athletics activities allocable to a sport shall include without limitation gate receipts, broadcast revenues and other conference distributions, appearance guarantees and options, concessions, and advertising;

(2) Revenues such as student activities fees, alumni contributions, and investment interest income that are not allocable to a sport shall be included in the calculation of total revenues only;

(3) Expenses for intercollegiate athletics activities allocable to a sport shall include without limitation grants-in-aid, salaries, travel, equipment, and supplies; and

(4) Expenses such as general and administrative overhead that are not allocable to a sport shall be included in the calculation of total expenses only.

(f)(1) A program participation agreement becomes effective on the date that the Secretary signs the agreement.

(2) A new program participation agreement supersedes any prior program participation agreement between the Secretary and the institution.

(g)(1)(i) With respect to an institution that has been certified *other than under a provisional certification*--

(A) Except as provided in paragraphs (h) and (i) of this section, the Secretary terminates a program participation agreement through the proceedings in subpart G of this part.

(B) An institution may terminate a program participation agreement.

(C) If the Secretary or the institution terminates a program participation agreement under paragraph (g) of this section, the Secretary establishes the termination date.

(2) With respect to an institution that has been *provisionally certified,* the Secretary revokes a provisional certification through the proceedings in §668.13(d).

(h) An institution's program participation agreement automatically expires on the date that--

(1) The institution changes ownership that results in a change in control as determined by the Secretary under 34 CFR part 600; or

(2) The institution's participation ends under the provisions of §668.26(a)(1), (2), (4), or (7).

(i) An institution's program participation agreement no longer applies to or covers a location of the institution as of the date on which that location ceases to be a part of the participating institution.

# WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM

If an institution participates in the William D. Ford Federal Direct Loan (Direct Loan) Program, the institution and its representatives shall comply with the statute, guidelines, and regulations governing the Title IV, Part D, William D. Ford Federal Direct Loan Program as required by Section 454 of Public Law 103-66.

The institution will:

1. Provide for the establishment and maintenance of a Direct Loan Program at the Institution that will:

Identify eligible students who seek student financial assistance in accordance with Section 484 of the Higher Education Act of 1965, as amended (the HEA).

Estimate the need of students as required under Title IV, Part F of the HEA.

Provide a certification statement of eligibility for students to receive loans that will not exceed the annual or aggregate limits, except the Institution may exercise its authority, under exceptional circumstances identified by the Secretary, to refuse to certify a statement that permits a student to receive a loan, or certify a loan amount that is less than the student's determination of need, if the reason for such action is documented and provided in written form to a student.

Establish a schedule for disbursement of loan proceeds to meet the requirements of Section 428G of the HEA.

Provide timely and accurate information to the Secretary concerning 1) the status of borrowers while students are in attendance, any new information pertaining to the status of student borrowers of which the Institution becomes aware after the student leaves the Institution, and 2) the utilization of Federal funds under Part D at such times and in such manner as prescribed by the Secretary.

2. Comply with requirements established by the Secretary relating to student loan information with respect to the Direct Loan Program.

3. Provide that students at the Institution and their parents (with respect to such students) will be eligible to participate in the programs under Title IV, Part B of the HEA, Federal Family Education Loan programs, at the discretion of the Secretary for the period during which such Institution participates in the Direct Loan Program, except that a student or parent may not receive loans under both Part B and Part D of the HEA for the same period of enrollment.

4. Provide for the implementation of a quality assurance system, as established by the Secretary and developed in consultation with Institutions of higher education, to ensure that the Institution is complying with program requirements and meeting program objectives.

5. Provide that the Institution will not charge any fees of any kind, regardless of how they are described, to student or parent borrowers for loan application, or origination activities (if applicable), or the provision and processing of any information necessary for a student or parent to receive a loan under Part D of the HEA.

6. Provide that the Institution will originate loans to eligible students and parents in accordance with the requirements of Part D of the HEA and use funds advanced to it solely for that purpose (Option 2 only).

7. Provide that the note or evidence of obligation of the loan shall be the property of the Secretary (Options 2 and 1 only).

8. Implement such other provisions as the Secretary determines are necessary to protect the interest of the United States and to promote the purposes of Part D of the HEA.

9. Accept responsibility and financial liability stemming from its failure to perform its functions under this Program Participation Agreement.

The Institution's continued approval to participate in the Direct Loan Program will be based on the Department of Education's review and approval of the Institution's future applications for recertification to continue participating in the federal student aid programs.

# CERTIFICATIONS REQUIRED FROM INSTITUTIONS

The Institution should refer to the regulations cited below. Signature on this Agreement provides for compliance with certification requirements under 34 CFR Part 82, "New Restrictions on Lobbying," and 34 CFR Part 85, "Government-wide Debarment and Suspension (Nonprocurement) and Government-wide Requirement for Drug-Free Workplace (Grants)." Breach of any of these certificates constitutes a breach of this Agreement.

# PART 1 CERTIFICATION REGARDING LOBBYING; DEBARMENT, SUSPENSION AND OTHER RESPONSIBILITY MATTERS; AND DRUG-FREE WORKPLACE REQUIREMENTS

## *1. Lobbying*

As required by Section 1352, Title 31 of the U.S. Code, and implemented at 34 CFR Part 82, for persons entering into a grant or cooperative agreement over $100,000, as defined at 34 CFR Part 82, Sections 82.105, and 82.110, the Institution certifies that:

(a) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the making of any Federal grant, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal grant or cooperative agreement;

(b) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal Grant or cooperative agreement, the Institution shall complete and submit Standard Form - LLL, "Disclosure Form to Report Lobbying," in accordance with all subrecipients shall certify and disclose accordingly.

(c) The Institution shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subgrants, contracts under grants and cooperative agreements, and subcontracts) and that all subrecipients shall certify and disclose accordingly.

## *2. Debarment, Suspension, and Other Responsibility Matters*

As required by Executive Order 12549, Debarment and Suspension, and implemented at 34 CFR Part 85, for prospective participants in primary covered transactions as defined at 34 CFR Part 85, Sections 85.105 and 85.110, the Institution certifies that it and its principals:

(a) Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any Federal department or agency;

(b) Have not within a three-year period preceding this application been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State, or local) transaction or contract under a public transaction; violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property.

(c) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any of the offenses enumerated in paragraph (1)(b) of this certification; and

(d) Have not within a three-year period preceding this application had one or more public transactions (Federal, State, or local) terminated for cause or default.

### 3. Drug-Free Workplace (Grantees Other Than Individuals)

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 CFR Part 85, Subpart F, for grantees, as defined at 34 CFR Part 85, Sections 85.605, and 85.610 -
The Institution certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about-

(1) The dangers of drug abuse in the workplace;

(2) The Institution's policy of maintaining a drug-free workplace;

(3) Any available drug counseling, rehabilitation, and employee assistance programs; and

(4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a);

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will -

(1) Abide by the terms of the statement, and

(2) Notify the employer in writing of his or her conviction for a violation of a criminal drug statute occurring in the workplace no later than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under this subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W. (Room 3124, GSA Regional Office Building No. 3), Washington, DC 20202-5140. Notice shall include the identification number(s) of each affected grant;

PPA, OPE ID: 00787000. PPA Expiration Date: 09/30/2009          http://www.hcofl.edu/sacs/draft_report/ParticipationAgreementupto20...

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted -

    (1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1972, as amended; or

    (2) Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

## 4. Drug-Free Workplace (Grantees Who Are Individuals)

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 CFR Part 85, Subpart F, for grantees, as defined at 34 CFR Part 85, Sections 85.605, and 85.610 -

1. As a condition of the grant, the Institution certifies that it will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity with the grant; and

2. If any officer or owner of the Institution is convicted of a criminal drug offense resulting from a violation occurring during the conduct of any grant activity, the Institution will report the conviction, in writing, within 10 calendar days of the conviction, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W. (Room 3124, GSA Regional Office Building No. 3), Washington, DC 20202-5140. Notice shall include the identification number(s) of each affected grant.

# PART 2 U.S. DEPARTMENT OF EDUCATION DRUG PREVENTION CERTIFICATION

The undersigned Institution certifies that it has adopted and implemented a drug prevention program for its students and employees that, at a minimum, includes--

1. The annual distribution in writing to each employee, and to each student who is taking one or more classes for any kind of academic credit except for continuing education units, regardless of the length of the student's program of study, of:

- Standards of conduct that clearly prohibit, at a minimum, the unlawful possession, use, or distribution of illicit drugs and alcohol by students and employees on its property or as part of any of its activities.
- A description of the applicable legal sanctions under local, State or Federal law for the unlawful possession or distribution of illicit drugs and alcohol.
- A description of the health risks associated with the use of illicit drugs and the abuse of alcohol.
- A clear statement that the Institution will impose disciplinary sanctions on students and employees (consistent with local, State and Federal law), and a description of those sanctions, up to and including expulsion or termination of employment and referral for prosecution, for violation of the standards of conduct. A disciplinary sanction may include the completion of an appropriate rehabilitation program.
- A description of any drug or alcohol counseling, treatment, or re-entry programs that are available to employees or students.

2. A biennial review by the Institution of its program to:
- Determine its effectiveness and implement changes to the program if they are needed.
- Ensure that its disciplinary sanctions are consistently enforced.

## PART 3  CERTIFICATION REGARDING DEBARMENT, SUSPENSION, INELIGIBILITY, AND VOLUNTARY EXCLUSION – LOWER TIER COVERED TRANSACTIONS

**The Institution is to obtain the signatures of Lower Tier Contractors on copies of the certification reproduced below, and retain in the Institution's files.**

### CERTIFICATION BY LOWER TIER CONTRACTOR
**(Before Completing Certification, Read Instructions for This Part 3, below)**

(1) The prospective lower tier participant certifies by submission of this proposal, that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal Department or Agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

| | |
|---|---|
| Name of Lower Tier Organization | PR/Award Number or Project Name |
| Name of Authorized Representative | Title of Authorized Representative |
| Signature of Authorized Representative | Date |

1. By signing and submitting this proposal, the prospective lower tier participant is providing the certification set out below.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "ineligible," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to whom this proposal is submitted for assistance in obtaining a copy of those regulations.

5. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or

PPA, OPE ID: 00787000, PPA Expiration Date: 09/30/2009         http://www.hccfl.edu/sacs/draft_report/ParticipationAgreementupto20...

voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Ineligibility, and Voluntary Exclusion--Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

NOTE: A completed copy of the "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion--Lower Tier Covered Transactions" form must be retained by the Institution. The original must be returned with the PPA.

PPA. OPE ID: 00787000. PPA Expiration Date: 09/30/2009

# IN WITNESS WHEREOF

the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Signature of Institution's
Chief Executive Officer: _____ Date: _____

Print Name and Title: _____

_____

For the Secretary: _____ Date: _____
U.S. Department of Education

**Exhibit B**
FAFSA Form 7/06-6/07



**FAFSA**

JULY 1, 2006 — JUNE 30, 2007

*Use this form to apply free for federal and state student grants, work-study and loans.*

**Or apply free online at www.fafsa.ed.gov.**



### Federal Deadlines

For federal aid, submit your application as early as possible, but not earlier than January 1, 2006. We must receive your application no later than July 2, 2007. Your college must have your correct, complete information by your last day of enrollment in the 2006-2007 school year.

For state or college aid, the deadline may be as early as January 2006. See the table to the right for state deadlines. You may also need to complete additional forms. Check with your high school guidance counselor or a financial aid administrator at your college about state and college sources of student aid and deadlines.

If you are filing close to one of these deadlines, we recommend you file online at www.fafsa.ed.gov. This is the fastest and easiest way to apply for aid.

### Filing your taxes early

If you are supposed to file a 2005 federal income tax return, we recommend that you complete it before filling out this form. If you have not yet filed your return, you can still submit your FAFSA, but you must provide income and tax information. Once you file your tax return, correct any income or tax information that is different from what you initially submitted on your FAFSA.

### Filling Out This Form

Your answers on this form will be read electronically. Therefore:

- use black ink and fill in ovals completely.
- print clearly in CAPITAL letters and skip a box between words:
- report dollar amounts (such as $12,356.41) like this:



Correct — Incorrect

| 1 | 5 | | E | L | M | | S | T |

| | 1 | 2 | | 3 | 5 | 6 | no cents |

### If you have special circumstances and your State Deadline Information

If you or your family has unusual circumstances (such as loss of employment), complete this form to the extent you can, then submit it as instructed and consult with the financial aid office at the college you plan to attend.

For more information or help in filling out the FAFSA, call 1-800-4-FED-AID (1-800-433-3243). TTY users may call 1-800-730-8913. Or visit our Web site at www.studentaid.ed.gov.

### Mailing your FAFSA

After you complete this application, make a copy of pages 3 through 6 for your records. Then mail the original of only pages 3 through 6 in the attached envelope or send it to: Federal Student Aid Programs, P.O. Box 4691, Mt. Vernon, IL 62864-0059. Do not send the worksheets on page 8; keep them for your records.

If you do not receive the results of your application—a *Student Aid Report* (SAR)—within three weeks, please check online at www.fafsa.ed.gov or call 1-800-433-3243. If you provided your e-mail address in question 13, you will receive information about your application within a few days after we process it.

### Let's Get Started!

Now go to page 3, detach the application form and fill it out. Refer to the notes as instructed.



EXHIBIT
B

---

## STATE AID DEADLINES

**STATE AID DEADLINES**

File Online and File On Time
www.fafsa.ed.gov

AK  April 15, 2006 *(date received)*
AR  For Academic Challenge - June 1, 2006 *(date received)*
      For Workforce Grant - Contact your financial aid administrator.
AZ  June 30, 2007 *(date received)*
*^CA For initial awards - March 2, 2006
      For additional community college awards - September 2, 2006
      June 30, 2006 *(date received by state)*
* DC  April 15, 2006 *(date received)*
DE  May 15, 2006 *(date processed)*
FL  May 15, 2006 *(date processed)*
^IA  July 1, 2006 *(date received)*
#IL  First-time applicants - September 30, 2006
      Continuing applicants - August 15, 2006 *(date received)*
IN  March 10, 2006 *(date received)*
#* KS  April 1, 2006 *(date received)*
#KY  March 15, 2006 *(date received)*
#*LA  May 1, 2006
      Final deadline - July 1, 2006 *(date received)*
#*MA  May 1, 2006 *(date received)*
MD  March 1, 2006 *(date received)*
ME  May 1, 2006 *(date received)*
MI  March 1, 2006 *(date received)*
MN  30 days after term starts *(date received)*
MO  April 1, 2006 *(date received)*
#MT  March 1, 2006 *(date received)*
NC  March 15, 2006 *(date received)*
ND  March 15, 2006 *(date received)*
NH  May 1, 2006 *(date received)*
*NJ  June 1, 2006, if you received a Tuition Aid Grant in 2005-2006
      All other applicants
      - October 1, 2006, fall & spring terms
      - March 1, 2007, spring term only *(date received)*
*^NY  May 1, 2006 *(date received)*
OH  October 1, 2006 *(date received)*
#OK  April 15, 2006
      Final deadline - June 30, 2006 *(date received)*
#OR  March 1, 2005 *(date received)*
      Final deadline - Contact your financial aid administrator.
*PA  All 2005-2006 State Grant recipients & all non-2005-2006 State Grant recipients in degree programs - May 1, 2006
      All other applicants - August 1, 2006 *(date received)*
#RI  March 1, 2006 *(date received)*
SC  June 30, 2006 *(date received)*
TN  For State Grant - May 1, 2006
      For State Lottery - September 1, 2006 *(date received)*
^WV  March 1, 2006 *(date received)*

Check with your financial aid administrator for these states and territories:
AL, *AS, CO, *CT, *FM, GA, *GU, *HI, ID, *MH, *MP, MS, *NE, *NM, *NV, PR, *PW, *SD, *TX, UT, *VA, *VI, *VT, WA, WI and *WY.

* For priority consideration, submit application by date specified.
^ Applicants encouraged to obtain proof of mailing.
# Additional form may be required.  MDE0472

### Notes for questions 14–15 (page 3)

If you are an eligible noncitizen, write in your eight- or nine-digit Alien Registration Number. Generally, you are an eligible noncitizen if you are (1) a U.S. permanent resident with a Permanent Resident Card (I-551C); (2) a conditional permanent resident (I-551C); or (3) the holder of an Arrival-Departure Record (I-94) from the Department of Homeland Security showing any one of the following designations: "Refugee," "Asylum Granted," "Parolee" (I-94 confirms paroled for a minimum of one year and status has not expired) or "Cuban-Haitian Entrant." If you are in the U.S. on an F1 or F2 student visa, a J1 or J2 exchange visitor visa, or a G series visa (pertaining to international organizations), you must fill in oval c. If you are neither a citizen nor an eligible noncitizen, you are not eligible for federal student aid. However, you may be eligible for state or college aid.

### Notes for question 28 (page 4)

Enter 1 for 1st bachelor's degree.
Enter 2 for 2nd bachelor's degree.
Enter 3 for associate degree (occupational or technical program).
Enter 4 for associate degree (general education or transfer program).
Enter 5 for certificate or diploma for completing an occupational, technical, or educational program of less than two years.

Enter 6 for certificate or diploma for completing an occupational, technical, or educational program of at least two years.
Enter 7 for teaching credential program (nondegree program).
Enter 8 for graduate or professional degree.
Enter 9 for other/undecided.

### Notes for question 29 (page 4) for question 29 (page 4)

Enter 0 for never attended college & 1st year undergraduate.
Enter 1 for attended college before & 1st year undergraduate.
Enter 2 for 2nd year undergraduate/sophomore.
Enter 3 for 3rd year undergraduate/junior.

Enter 4 for 4th year undergraduate/senior.
Enter 5 for 5th year/other undergraduate.
Enter 6 for 1st year graduate/professional.
Enter 7 for continuing graduate/professional or beyond.

### Notes for questions 29/30 (page 4)

Some states and colleges offer aid based on the level of schooling your parents completed.

### Notes for questions 37, 38 and 39 (page 4) and 71, 72 and 73 (page 8)

If you filed or will file a foreign tax return, or a tax return with Puerto Rico, Guam, American Samoa, the U.S. Virgin Islands, the Marshall Islands, the Federated States of Micronesia, or Palau, use the information from that return to fill out this form. If you filed a foreign return, convert all figures to U.S. dollars, using the exchange rate that is in effect today. To view the daily exchange rate, go to www.federalreserve.gov/releases/h10/update.

### Notes for questions 41 (page 4) and 74 (page 8)

In general, a person is eligible to file a 1040A or 1040EZ if he or she makes less than $100,000, does not itemize deductions, does not receive income from his or her own business or farm, and does not receive alimony. A person is not eligible if he or she itemizes deductions, receives self-employment income or alimony, or is required to file Schedule D for capital gains. If you filed a 1040 only to claim Hope or Lifetime Learning credits, and you would have otherwise been eligible for a 1040A or 1040EZ, you should answer "Yes" to this question.

### Notes for questions 42 (page 4) and 75 (page 8) — Notes for those who filed a 1040EZ

On the 1040EZ, if a person answered "Yes" on line 5, use EZ worksheet line F to determine the number of exemptions ($3,200 equals one exemption). If a person answered "No" on line 5, enter 01 if he or she is single, or 02 if he or she is married.

### Notes for questions 43-45 (page 5) and 81-83 (page 9)

By applying online at www.fafsa.ed.gov, you may be eligible to skip some questions. If you do not apply online, you will not be penalized for completing questions 43-45 and 81-83 on the paper FAFSA.

Net worth means current value minus debt. If net worth is one million dollars or more, enter $999,999. If net worth is negative, enter 0.

Investments include real estate (do not include the home you live in), trust funds, money market funds, certificates of deposit, stocks, stock options, bonds, other securities, Coverdell savings accounts, college savings plans, installment and land sale contracts (including mortgages held), commodities, etc. For more information about reporting education savings plans, call 1-800-433-3243. Investment value includes the market value of these investments as of today. Investment debt means only those debts that are related to the investments.

Investments do not include the home you live in, the value of life insurance, retirement plans (pension funds, annuities, noneducation IRAs, Keogh plans, etc.), and prepaid tuition plans, or cash, savings, and checking accounts already reported in 43 and 81.

Business and/or investment farm value includes the market value of land, buildings, machinery, equipment, inventory, etc. Business and/or investment farm debt means only those debts for which the business or investment farm was used as collateral.

### Notes for question 47 (page 5)

Answer "No" (you are not a veteran) if you (1) have never engaged in active duty in the U.S. Armed Forces, (2) are currently an ROTC student or a cadet or midshipman at a service academy, or (3) are a National Guard or Reserves enlistee activated only for training. Also answer "No" if you are currently serving in the U.S. Armed Forces and will continue to serve through June 30, 2007.

Answer "Yes" (you are a veteran) if you (1) have engaged in active duty in the U.S. Armed Forces (Army, Navy, Air Force, Marines or Coast Guard) or are a National Guard or Reserve enlistee who was called to active duty for purposes other than training, or were a cadet or midshipman at one of the service academies, and (2) were released under a condition other than dishonorable. Also answer "Yes" if you are not a veteran now but will be one by June 30, 2007.

**Page 2**

Notes continued on page 7.

# FAFSA

*July 1, 2006 — June 30, 2007*
**FREE APPLICATION FOR FEDERAL STUDENT AID**
OMB # 1845-0001

## Step One: For questions 1–30, leave blank any questions that do not apply to you (the student).

**1-3.** Your full name (as it appears on your Social Security card)

1. LAST NAME: `F O R   I N F O R M A T I O N   O N L Y`
2. FIRST NAME: `D O   N O T   S U B M I T`
3. MIDDLE INITIAL: ☐

**4-7.** Your permanent mailing address

4. NUMBER AND STREET (INCLUDE APT. NUMBER)

5. CITY (AND COUNTRY IF NOT U.S.)

6. STATE

7. ZIP CODE

**8.** Your Social Security Number: `X X X - X X - X X X X`

**9.** Your date of birth: `M M D D 1 9 Y Y`

**10.** Your permanent telephone number: ( ___ ) ___ - ____

**11-12.** Your driver's license number and state (if any)

11. LICENSE NUMBER

12. STATE

**13.** Your e-mail address
WE WILL USE THIS E-MAIL ADDRESS TO CORRESPOND WITH YOU. YOU WILL RECEIVE YOUR FAFSA INFORMATION THROUGH A SECURE LINK ON THE INTERNET, SENT TO THE E-MAIL ADDRESS YOU PROVIDE. LEAVE BLANK TO RECEIVE INFORMATION THROUGH REGULAR MAIL. WE WILL ONLY SHARE THIS ADDRESS WITH THE SCHOOLS YOU LIST ON THE FORM AND YOUR STATE. THEY MAY USE THE E-MAIL ADDRESS TO COMMUNICATE WITH YOU.

`                    @                    `

**14.** Are you a U.S. citizen? Pick one. See page 2.
- a. Yes, I am a U.S. citizen. Skip to question 16. ........... ○ 1
- b. No, but I am an eligible noncitizen. Fill in question 15. ..... ○ 2
- c. No, I am not a citizen or eligible noncitizen. ............ ○ 3

**15.** ALIEN REGISTRATION NUMBER: `A _ _ _ _ _ _ _ _`

**16.** What is your marital status as of today?
- I am single, divorced or widowed ....... ○ 1
- I am married/remarried ..................... ○ 2
- I am separated ................................. ○ 3

**17.** Month and year you were married, separated, divorced or widowed: MONTH `M M` YEAR `Y Y Y Y`

**18.** What is your state of legal residence? STATE ☐☐

**19.** Did you become a legal resident of this state before January 1, 2001? Yes ○ 1  No ○ 2

**20.** If the answer to question 19 is "No," give month and year you became a legal resident. MONTH `M M` YEAR `Y Y Y Y`

**21.** Are you male? (Most male students must register with Selective Service to get federal aid.) Yes ○ 1  No ○ 2

**22.** If you are male (age 18–25) and not registered, answer "Yes" and Selective Service will register you. Yes ○ 1  No ○ 2

**23.** What degree or certificate will you be working on during 2006–2007 school year? See page 2 and enter the correct number in the box. ☐

**24.** What will be your grade level when you begin the 2006–2007 school year? See page 2 and enter the correct number in the box. ☐

**25.** Will you have a high school diploma or GED before you begin the 2006–2007 school year? Yes ○ 1  No ○ 2

**26.** Will you have your first bachelor's degree before July 1, 2006? Yes ○ 1  No ○ 2

**27.** In addition to grants, are you interested in student loans (which you must pay back)? Yes ○ 1  No ○ 2

**28.** In addition to grants, are you interested in "work-study" (which you earn through work)? Yes ○ 1  No ○ 2

**29.** Highest school your father completed — Middle school/Jr. High ○ 1  High School ○ 2  College or beyond ○ 3  Other/unknown ○ 4

**30.** Highest school your mother completed — Middle school/Jr. High ○ 1  High School ○ 2  College or beyond ○ 3  Other/unknown ○ 4

**31.** Do not leave this question blank. Have you ever been convicted of possessing or selling illegal drugs? If you have, answer "Yes," complete and submit this application, and we will send you a worksheet in the mail for you to determine if your conviction affects your eligibility for aid. No ○ 1  Yes ○ 2  [ DO NOT LEAVE QUESTION 31 BLANK ]

**Page 3**

**Step Two:** For questions 32–45, report your (the student's) income and assets. If you are married as of today, report your and your spouse's income and assets, even if you were not married in 2005. Ignore references to "spouse" if you are currently single, separated, divorced or widowed.

32. For 2005, have you (the student) completed your IRS income tax return or another tax return listed in question 33?

   a. I have already        b. I will file, but I have not yet     c. I'm not going to file. (Skip to
      completed my return. ○       completed my return.   ○       question 35.)  ○

33. What income tax return did you file or will you file for 2005?

   a. IRS 1040 .................................... ○    d. A tax return with Puerto Rico, Guam, American Samoa, the
                                  U.S. Virgin Islands, the Marshall Islands, the Federated
   b. IRS 1040A or 1040EZ .................. ○      States of Micronesia, or Palau. See page 2. .................. ○
   c. A foreign tax return. See page 2. ...... ○

34. If you have filed or will file a 1040, were you eligible to file a 1040A or 1040EZ? See page 2.   Yes ○  No ○  Don't Know ○

For questions 35–47, if the answer is zero or the question does not apply to you, enter 0.

35. What was your (and spouse's) adjusted gross income for 2005? Adjusted gross income is on IRS Form 1040—line 37; 1040A—line 21; or 1040EZ—line 4.   $ ☐☐☐ , ☐☐☐

36. Enter your (and spouse's) income tax for 2005. Income tax amount is on IRS Form 1040—line 57; 1040A—line 36; or 1040EZ—line 10.   $ ☐☐☐ , ☐☐☐

37. Enter your (and spouse's) exemptions for 2005. Exemptions are on IRS Form 1040—line 6d or on Form 1040A—line 6d. For Form 1040EZ, see page 2.   ☐☐

38-39. How much did you (and spouse) earn from working (wages, salaries, tips, combat pay, etc.) in 2005? Answer this question whether or not you filed a tax return. This information may be on your W-2 forms, or on IRS Form 1040—lines 7 + 12 + 18; 1040A—line 7; or 1040EZ—line 1.

   You (38)   $ ☐☐☐ , ☐☐☐

   Your Spouse (39)   $ ☐☐☐ , ☐☐☐

Student (and Spouse) Worksheets (40–42)

40-42.  Go to page 8 and complete the columns on the left of Worksheets A, B, and C. Enter the student (and spouse) totals in questions 40, 41 and 42, respectively. Even though you may have few of the Worksheet items, check each line carefully.

   Worksheet A (40)   $ ☐☐☐ , ☐☐☐

   Worksheet B (41)   $ ☐☐☐ , ☐☐☐

   Worksheet C (42)   $ ☐☐☐ , ☐☐☐

43. As of today, what is your (and spouse's) total current balance of cash, savings, and checking accounts? Do not include student financial aid.   $ ☐☐☐ , ☐☐☐

44. As of today, what is the net worth of your (and spouse's) investments, including real estate (not your home)? Net worth means current value minus debt. See page 2.   $ ☐☐☐ , ☐☐☐

45. As of today, what is the net worth of your (and spouse's) current businesses and/or investment farms? Do not include a farm that you live on and operate. See page 2.   $ ☐☐☐ , ☐☐☐

46-47. If you receive veterans' education benefits, for how many months from July 1, 2006, through June 30, 2007, will you receive these benefits, and what amount will you receive per month? Do not include your spouse's veterans' education benefits.   Months (46)  ☐☐

   Monthly Amount (47)  $ ☐ , ☐☐☐

**Step Three:** Answer all seven questions in this step.

48. Were you born before January 1, 1983? ............................................  Yes ○  No ○

49. At the beginning of the 2006–2007 school year, will you be working on a master's or doctorate program (such as an MA, MBA, MD, JD, PhD, EdD, or graduate certificate, etc.)? ..................  Yes ○  No ○

50. As of today, are you married? (Answer "Yes" if you are separated but not divorced.) .............  Yes ○  No ○

51. Do you have children who receive more than half of their support from you? ...................  Yes ○  No ○

52. Do you have dependents (other than your children or spouse) who live with you and who receive more than half of their support from you, now and through June 30, 2007? ......................  Yes ○  No ○

53. Are (a) both of your parents deceased, or (b) are you (or were you until age 18) a ward/dependent of the court? ............................................................................  Yes ○  No ○

54. Are you a veteran of the U.S. Armed Forces? See page 2. ...............................  Yes ○  No ○

If you (the student) answered "No" to every question in Step Three, go to Step Four.
If you answered "Yes" to any question in Step Three, skip Step Four and go to Step Five on page 6.

(Health Profession Students: Your school may require you to complete Step Four even if you answered "Yes" to any Step Three question.)

For Help – 1-800-433-3243

**Step Four:** Complete this step if you (the student) answered "No" to all questions in Step Three. Go to page 7 to determine who is a parent for this step.

55. What is your parents' marital status as of today?

Married/Remarried ............ ○  Divorced/Separated ............ ○

Single ...................... ○  Widowed ...................... ○

56. Month and year they were married, separated, divorced or widowed

`MM YYYY`

57-64. What are the Social Security Numbers, names and dates of birth of the parents reporting information on this form? If your parent does not have a Social Security Number, you must enter 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.

57. FATHER'S/STEPFATHER'S SOCIAL SECURITY NUMBER

59. FATHER'S/STEPFATHER'S LAST NAME, AND  58. FIRST INITIAL  60. FATHER'S/STEPFATHER'S DATE OF BIRTH

`MM DD 19 Y Y`

61. MOTHER'S/STEPMOTHER'S SOCIAL SECURITY NUMBER

62. MOTHER'S/STEPMOTHER'S LAST NAME, AND  63. FIRST INITIAL  64. MOTHER'S/STEPMOTHER'S DATE OF BIRTH

`MM DD 19 Y Y`

65. Go to page 7 to determine how many people are in your parents' household. Enter that number here.

66. Go to page 7 to determine how many in question 65 (exclude your parents) will be college students between July 1, 2006, and June 30, 2007. Enter that number here.

67. What is your parents' state of legal residence?  STATE

68. Did your parents become legal residents of this state before January 1, 2001?  Yes ○ 1  No ○ 2

69. If the answer to question 68 is "No," give month and year legal residency began for the parent who has lived in the state the longest.

MONTH  YEAR

`MM YYYY`

70. For 2005, have your parents completed their IRS income tax return or another tax return listed in question 71?

a. My parents have already completed their return. ○  b. My parents will file, but they have not yet completed their return. ○  c. My parents are not going to file. (Skip to question 76.) ○

71. What income tax return did your parents file or will they file for 2005?

a. IRS 1040 ................................. ○  d. A tax return with Puerto Rico, Guam, American Samoa, the U.S. Virgin Islands, the Marshall Islands, the Federated States of Micronesia, or Palau. See page 2. ○

b. IRS 1040A or 1040EZ .................. ○

c. A foreign tax return. See page 2. ........ ○

72. If your parents have filed or will file a 1040, were they eligible to file a 1040A or 1040EZ? See page 2.  Yes ○ 1  No ○ 2  Don't Know ○ 3

**For questions 73-83, if the answer is zero or the question does not apply, enter 0.**

73. What was your parents' adjusted gross income for 2005? Adjusted gross income is on IRS Form 1040—line 37; 1040A—line 21; or 1040EZ—line 4.  $ _____

74. Enter your parents' income tax for 2005. Income tax amount is on IRS Form 1040—line 57; 1040A—line 36; or 1040EZ—line 10.  $ _____

75. Enter your parents' exemptions for 2005. Exemptions are on IRS Form 1040—line 6d or on Form 1040A—line 6d. For Form 1040EZ, see page 2.  _____

76-77. How much did your parents earn from working (wages, salaries, tips, combat pay, etc.) in 2005? Answer this question whether or not your parents filed a tax return. This information may be on their W-2 forms, or on IRS Form 1040—lines 7 + 12 + 18; 1040A—line 7; or 1040EZ—line 1.

Father/Stepfather (76)  $ _____

Mother/Stepmother (77)  $ _____

Parent Worksheets (78-80)

78-80. Go to page 8 and complete the columns on the right of Worksheets A, B, and C. Enter the parents' totals in questions 78, 79 and 80, respectively. Even though your parents may have few of the Worksheet items, check each line carefully.

Worksheet A (78)  $ _____

Worksheet B (79)  $ _____

Worksheet C (80)  $ _____

81. As of today, what is your parents' total current balance of cash, savings, and checking accounts?  $ _____

82. As of today, what is the net worth of your parents' investments, including real estate (not your parents' home)? Net worth means current value minus debt.  $ _____

83. As of today, what is the net worth of your parents' current businesses and/or investment farms? Do not include a farm that your parents live on and operate. See page 2.  $ _____

**Now go to Step Six.**

For Help – www.studentaid.ed.gov/completefafsa

## Step Five: Complete this step only if you (the student) answered "Yes" to any Step Three question.

84. Go to page 7 to determine how many people are in your (and your spouse's) household. Enter that number here.

85. Go to page 7 to determine how many people in question 84 will be college students, attending at least half time between July 1, 2006, and June 30, 2007. Enter that number here.

## Step Six: Please tell us which schools may request your information, and indicate your enrollment status.

Enter the 6-digit federal school code and your housing plans. Look for the federal school codes at www.fafsa.ed.gov, at your college financial aid office, at your public library, or by asking your high school guidance counselor. If you cannot get the federal school code, write in the complete name, address, city and state of the college. For state aid, you may wish to list your preferred school first.

| | | HOUSING PLANS | |
|---|---|---|---|
| 86. 1st FEDERAL SCHOOL CODE OR | NAME OF COLLEGE / ADDRESS AND CITY | STATE | 87. on campus ○ 1 / off campus ○ 2 / with parent ○ 3 |
| 88. 2nd FEDERAL SCHOOL CODE OR | NAME OF COLLEGE / ADDRESS AND CITY | STATE | 89. on campus ○ 1 / off campus ○ 2 / with parent ○ 3 |
| 90. 3rd FEDERAL SCHOOL CODE OR | NAME OF COLLEGE / ADDRESS AND CITY | STATE | 91. on campus ○ 1 / off campus ○ 2 / with parent ○ 3 |
| 92. 4th FEDERAL SCHOOL CODE OR | NAME OF COLLEGE / ADDRESS AND CITY | STATE | 93. on campus ○ 1 / off campus ○ 2 / with parent ○ 3 |
| 94. 5th FEDERAL SCHOOL CODE OR | NAME OF COLLEGE / ADDRESS AND CITY | STATE | 95. on campus ○ 1 / off campus ○ 2 / with parent ○ 3 |
| 96. 6th FEDERAL SCHOOL CODE OR | NAME OF COLLEGE / ADDRESS AND CITY | STATE | 97. on campus ○ 1 / off campus ○ 2 / with parent ○ 3 |

98. See page 7. At the start of the 2006-2007 school year, mark if you will be: Full time ○ 1  3/4 time ○ 2  Half time ○ 3  Less than half time ○ 4  Not sure ○ 5

## Step Seven: Read, sign and date.

If you are the student, by signing this application you certify that you (1) will use federal and/or state student financial aid only to pay the cost of attending an institution of higher education, (2) are not in default on a federal student loan or have made satisfactory arrangements to repay it, (3) do not owe money back on a federal student grant or have made satisfactory arrangements to repay it, (4) will notify your school if you default on a federal student loan and (5) will not receive a Federal Pell Grant for more than one school for the same period of time.

If you are the parent or the student, by signing this application you agree, if asked, to provide information that will verify the accuracy of your completed form. This information may include U.S. or state income tax forms that you filed or are required to file. Also, you certify that you understand that the Secretary of Education has the authority to verify information reported on this application with the Internal Revenue Service and other federal agencies. If you sign any document related to the federal student aid programs electronically using a Personal Identification Number (PIN), you certify that you are the person identified by the PIN and have not disclosed that PIN to anyone else. If you purposely give false or misleading information, you may be fined $20,000, sent to prison, or both.

99. Date this form was completed.

M M D D   2006 ○   or   2007 ○

100. Student (Sign below)

Parent (A parent from Step Four sign below)

If this form was filled out by someone other than you, your spouse or your parents, that person must complete this part.

Preparer's name, firm and address

101. Preparer's Social Security Number (or 102)

102. Employer ID number (or 101)

103. Preparer's signature and date

**SCHOOL USE ONLY:**   Federal School Code

D/O ○ 1

FAA Signature

**DATA ENTRY USE ONLY:** ○ P  ○ .  ○ L  ○ E

For Help—1-800-433-3243

### Notes for questions 55-83 (page 4): Step Four: Who is considered a parent in this step?

Read these notes to determine who is considered a parent on this form. Answer all questions in Step Four about them, even if you do not live with them. (Note that grandparents, foster parents and legal guardians are not parents.)

If your parents are living and married to each other, answer the questions about them.

If your parent is widowed or single, answer the questions about that parent. If your widowed parent is remarried as of today, answer the questions about that parent and the person whom your parent married (your stepparent).

If your parents are divorced or separated, answer the questions about the parent you lived with more during the past 12 months. (If you did not live with one parent more than the other, give answers about the parent who provided more financial support during the past 12 months, or during the most recent year that you actually received support from a parent.) If this parent is remarried as of today, answer the questions on the rest of this form about that parent and the person whom your parent married (your stepparent).

### Notes for question 85 (page 5)

Include in your parents' household (see notes, above, for who is considered a parent):
- your parents and yourself, even if you don't live with your parents,
- your parents' other children if (a) your parents will provide more than half of their support from July 1, 2006, through June 30, 2007, or (b) the children could answer "no" to every question in Step Three on page 4 of this form, and
- other people if they now live with your parents, your parents provide more than half of their support, and your parents will continue to provide more than half of their support from July 1, 2006, through June 30, 2007.

### Notes for questions 86 (page 5) and 95 (page 6)

Always count yourself as a college student. Do not include your parents. Include others only if they will attend, at least half time in 2006-2007, a program that leads to a college degree or certificate.

### Notes for question 94 (page 6)

Include in your (and your spouse's) household:
- yourself (and your spouse, if you have one),
- your children, if you will provide more than half of their support from July 1, 2006, through June 30, 2007, and
- other people if they now live with you, you provide more than half of their support, and you will continue to provide more than half of their support from July 1, 2006, through June 30, 2007.

### Notes for question 98 (page 6)

For undergraduates, "full time" generally means taking at least 12 credit hours in a term or 24 clock hours per week. "3/4 time" generally means taking at least 9 credit hours in a term or 18 clock hours per week. "Half time" generally means taking at least 6 credit hours in a term or 12 clock hours per week. Provide this information about the college you are most likely to attend.

---

**Information on the Privacy Act and use of your Social Security Number**

We use the information that you provide on this form to determine if you are eligible to receive federal student financial aid and the amount that you are eligible to receive. Sections 483 and 484 of the Higher Education Act of 1965, as amended, give us the authority to ask you and your parents these questions, and to collect the Social Security Numbers of you and your parents. We use your Social Security Number to verify your identity and retrieve your records, and we may request your Social Security Number again for those purposes.

States and institutional student financial aid programs may also use the information that you provide on this form to determine if you are eligible to receive state and institutional aid and the need that you have for such aid. Therefore, we will disclose the information that you provide on this form to each institution you list in questions 86-96, state agencies in your state of legal residence, and the state agencies of the states in which the colleges that you list in questions 86-96 are located.

If you are applying solely for federal aid, you must answer all of the following questions that apply to you: 1-9, 14-16, 18, 21-22, 25-26, 31-36, 38-45, 48-67, 70-74, 76-85 and 99-100. If you do not answer these questions, you will not receive federal aid.

Without your consent, we may disclose information that you provide to entities under a published "routine use." Under such a routine use, we may disclose information to third parties that we have authorized to assist us in administering the above programs; to other federal agencies under computer matching programs, such as those with the Internal Revenue Service, Social Security Administration, Selective Service System, Department of Homeland Security, Department of Justice and Veterans Affairs; to your parents or spouse; and to members of Congress if you ask them to help you with student aid questions.

If the federal government, the U.S. Department of Education, or an employee of the U.S. Department of Education is involved in litigation, we may send information to the Department of Justice, or a court or adjudicative body, if the disclosure is related to financial aid and certain conditions are met. In addition, we may send your information to a foreign, federal, state, or local law enforcement agency if the information that you submitted indicates a violation or potential violation of law, for which that agency has jurisdiction for investigation or prosecution. Finally, we may send information regarding a claim that is determined to be valid and overdue to a consumer reporting agency. This information includes identifiers from the record; the amount, status and history of the claim; and the program under which the claim arose.

**State Certification**

By submitting this application, you are giving your state financial aid agency permission to verify any statement on this form and to obtain income tax information for all persons required to report income on this form.

**The Paperwork Reduction Act of 1995**

The Paperwork Reduction Act of 1995 says that no one is required to respond to a collection of information unless it displays a valid OMB control number, which for this form is 1845-0001. The time required to complete this form is estimated to be one hour, including time to review instructions, search data resources, gather the data needed, and complete and review the information collection. If you have comments about this estimate or suggestions for improving this form, please write to: U.S. Department of Education, Washington DC 20202-4700.

We may request additional information from you to process your application more efficiently. We will collect this additional information only as needed and on a voluntary basis.

Notes continued from page 2.

# Worksheets
## Calendar Year 2005

**Do not mail these worksheets in with your application.**
Keep these worksheets; your school may ask to see them.

## Worksheet A
### Report Annual Amounts

| Student/Spouse For question 40 | | Parents For question 78 |
|---|---|---|
| | Earned income credit from IRS Form 1040—line 66a; 1040A—line 41a; or 1040EZ—line 8a. | |
| | Additional child tax credit from IRS Form 1040—line 68 or 1040A—line 42 | |
| | Welfare benefits, including Temporary Assistance for Needy Families (TANF). Don't include food stamps or subsidized housing. | |
| | Social Security benefits received, for all household members as reported in question 84 (or 65 for your parents), that were not taxed (such as SSI). Report benefits paid to parents in the Parents column, and benefits paid directly to student (or spouse) in the Student/Spouse column. | |
| $ | Enter in question 40. | Enter in question 78. $ |

## Worksheet B
### Report Annual Amounts

| For question 41 | | For question 79 |
|---|---|---|
| | Payments to tax-deferred pension and savings plans (paid directly or withheld from earnings), including, but not limited to, amounts reported on the W-2 Form in Boxes 12a through 12d, codes D, E, F, G, H and S | |
| | IRA deductions and payments to self-employed SEP, SIMPLE, and Keogh and other qualified plans from IRS Form 1040—line 28 + line 32 or 1040A—line 17 | |
| | Child support you received for all children. Don't include foster care or adoption payments. | |
| | Tax exempt interest income from IRS Form 1040—line 8b or 1040A—line 8b | |
| | Foreign income exclusion from IRS Form 2555—line 43 or 2555EZ—line 18 | |
| | Untaxed portions of IRA distributions from IRS Form 1040—lines (15a minus 15b) or 1040A—lines (11a minus 11b). Exclude rollovers. If negative, enter a zero here. | |
| | Untaxed portions of pensions from IRS Form 1040—lines (16a minus 16b) or 1040A—lines (12a minus 12b). Exclude rollovers. If negative, enter a zero here. | |
| | Credit for federal tax on special fuels from IRS Form 4136—line 15 (nonfarmers only) | |
| | Housing, food and other living allowances paid to members of the military, clergy and others (including cash payments and cash value of benefits) | |
| | Veterans' noneducation benefits such as Disability, Death Pension, or Dependency & Indemnity Compensation (DIC), and/or VA Educational Work-Study allowances | |
| | Other untaxed income not reported elsewhere on Worksheets A and B (e.g., workers' compensation, untaxed portions of railroad retirement benefits, Black Lung Benefits, disability, combat pay not reported on the tax return, etc.) Don't include student aid, Workforce Investment Act educational benefits, non-tax filers' combat pay, or benefits from flexible spending arrangements, e.g., cafeteria plans. | |
| | Money received, or paid on your behalf (e.g., bills), not reported elsewhere on this form | |
| $ | Enter in question 41. | Enter in question 79. $ |

## Worksheet C
### Report Annual Amounts

| For question 42 | | For question 80 |
|---|---|---|
| | Education credits (Hope and Lifetime Learning tax credits) from IRS Form 1040—line 50 or 1040A—line 31 | |
| | Child support you paid because of divorce or separation or as a result of a legal requirement. Don't include support for children in your (or your parents') household, as reported in question 84 (or question 65 for your parents). | |
| | Taxable earnings from need-based employment programs, such as Federal Work-Study and need-based employment portions of fellowships and assistantships | |
| | Student grant and scholarship aid reported to the IRS in your (or your parents') adjusted gross income. Includes AmeriCorps benefits (awards, living allowances and interest accrual payments), as well as grant or scholarship portions of fellowships and assistantships. | |
| $ | Enter in question 42 | Enter in question 80. $ |

For Help — 1-800-433-3243

Exhibit C
Stafford Loan School Cert.

Family Education Loan Program (FFELP)

# Federal Stafford Loan
# School Certification

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties which may include fines or imprisonment under the United States Criminal Code and 20 U.S.C. 1097.

*(Reserved for school, lender, or guarantor mailing address as appropriate)*

1. School Code

2. School Information (Name, address, and phone number)

---

**To be completed by a financial aid administrator or other school official authorized to certify financial aid forms.**

| 3. Borrower's Last Name | First Name | MI | 4. Social Security Number |
|---|---|---|---|

| 5. Permanent Street Address | | 6. Telephone Number | 7. Date of Birth (Month/Day/Year) |
|---|---|---|---|
| City | State | Zip | 8. Borrower e-mail Address (optional) |

9. Lender Code/Name

| 10. Grade Level | 11. Enrollment Status (Check one)<br>☐ Full Time   ☐ At Least Half Time | 12. Anticipated (Completion) Graduation Date (Month/Day/Year) |
|---|---|---|

| 13. Loan Period (Month/Day/Year)<br>From:<br>To: | 14. Certified Loan Amounts<br>a. Subsidized  $ .00<br>b. Unsubsidized  $ .00 | 15. Recommended Disbursement Date(s) (Month/Day/Year)<br>1st                2nd<br>3rd                4th |
|---|---|---|

## School Certification

I hereby certify that the borrower named on this Certification is accepted for enrollment on at least a half-time basis and is making satisfactory progress in a program that is eligible for the loan type(s) certified. I certify that the student is an eligible borrower in accordance with the Higher Education Act of 1965, as amended, and applicable U.S. Department of Education regulations (collectively referred to as the Act). I further certify that the borrower's eligibility for a Pell Grant has been determined, that the borrower is not incarcerated, and that the borrower has been determined eligible for loan(s) in the amount(s) certified. I further certify that the disbursement schedule complies with the requirements of the Act and hereby authorize the guarantor and/or the lender to adjust disbursement dates if necessary to ensure compliance with the Act. I further certify that, based on records available and due inquiry, the borrower has met the requirements of the Selective Service Act and that the information provided in this Certification is true, complete, and accurate to the best of my knowledge and belief. I agree to provide the borrower (i) with confirmation of any transfer of funds through electronic funds transfer (EFT) or master check to the borrower's student account, and (ii) with an opportunity to cancel or reduce any disbursement of a loan.

16. Signature of Authorized School Official _____    17. Date (Month/Day/Year) _____

Name/Title (Printed or Typed) _____

*Please refer to the Instructions for completing this form.*



# Instructions for Certifying a Federal Stafford Loan

*Important Notice: If certification information is transmitted electronically, do not complete the School Certification form.*

**Item 1:** Enter the code for your institution. This code is provided by the U.S. Department of Education for the Federal Family Education Loan Program.

**Item 2:** Enter your school name, address, and telephone number, including area code, of the school official who can answer questions about this certification.

**Item 3:** Enter the borrower's complete name, last name first, followed by the first name and middle initial.

**Item 4:** Enter the borrower's Social Security Number.

**Item 5:** Enter the borrower's permanent street address.

**Item 6:** Enter the borrower's telephone number.

**Item 7:** Enter the borrower's date of birth in month, day, year format.

**Item 8:** Enter the borrower's e-mail address if known.

**Item 9:** Enter the borrower's lender selection (identification number and name) if known.

**Item 10:** Enter the academic level of the student seeking this loan. Select the proper grade level indicator using the standard grade level codes provided:

| Code | Grade Level |
|------|-------------|
| 1. | Freshman/First Year (including proprietary institution programs that are less than one year in duration) |

| 2. | Sophomore/Second Year |
| 3. | Junior/Third Year |
| 4. | Senior/Fourth Year |
| 5. | Fifth Year/Other Undergraduate (including sixth year undergraduate and continuing education students) |
| A. | First Year Graduate/Professional |
| B. | Second Year Graduate/Professional |
| C. | Third Year Graduate/Professional |
| D. | Beyond Third Year Graduate/Professional |

**Item 11:** Indicate whether the student is (or plans to be) enrolled at least half time or full time. Students enrolled (or planning to enroll) less than half time are not eligible.

**Item 12:** Enter the date the student is expected to complete the program at your institution. Use numbers in a Month/Day/Year format; for example, 6/9/2006. Day date is needed to determine the specific day the student will enter repayment (as per the Act). If you are unsure of the actual completion date in the future, enter the last day of the month.

**Item 13:** Enter the dates covered by the student's cost of attendance. These dates must coincide with actual term starting and ending dates. At a school without academic terms, these dates must coincide with the borrower's program of study if that is less than an academic year in length, or the academic year. Use numbers in a Month/Day/Year format.

**Item 14:** Enter the lesser of the following: A) the amount of the student's eligibility for each loan type, or B) the loan amount requested by the student. The student's eligibility must be reduced if the student is attending a program with a length of less than a full academic year, or completing the remaining balance of a program in a period of less than an academic year. The student's eligibility may also be reduced based on professional judgment. If this field is left blank, the loan(s) will be delayed.

**Item 14a:** Certify the lesser of the student's eligibility for a subsidized Federal Stafford Loan or the subsidized Stafford amount requested by the student. If the student is not eligible for a subsidized Federal Stafford Loan, enter 0.

**Item 14b:** Certify the lesser of the student's eligibility for an unsubsidized Federal Stafford Loan or the unsubsidized Stafford amount requested by the student. If the student is not eligible for an unsubsidized Federal Stafford Loan, enter 0.

**Item 15:** Enter the disbursement dates for this loan(s) as determined in accordance with the Act.

**Item 16:** Your signature acknowledges that you have read and agree to the provisions in the School Certification. You must sign the Certification and print your name and title.

**Item 17:** Enter the date of Certification.

**Exhibit D**
PLUS Loan Info. Info and
School Cert.

**Federal Family Education Loan Program (FFELP)**

# Federal PLUS Loan Information and School Certification

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties which may include fines, imprisonment, or both, under the United States Criminal Code and 20 U.S.C. 1097.

Guarantor, Program, or Lender Identification

*(Reserved for school, lender, or guarantor mailing address as appropriate)*

1. School Code

2. School Information (Name, Address, and Phone Number)

## Borrower (Parent) and Student Information

| 3. Parent Borrower's Last Name | First Name | MI | 4. Parent's Social Security Number |
|---|---|---|---|

| 5. Permanent Street Address | | | 6. Home Telephone Number ( ) |
|---|---|---|---|

| City | State | Zip | 7. Parent's Date of Birth (MM/DD/Birth Year) |
|---|---|---|---|

| 8. Lender Name | City | State | 9. Lender Code, if known |
|---|---|---|---|

| 10. Parent's Requested Loan Amount $ .00 | 11. Student's Loan Period (Month/Year) From: | | To: |
|---|---|---|---|

| 12. Student's Last Name | First Name | MI | 13. Student's Social Security Number | 14. Student's Date of Birth (MM/DD/Birth Year) |
|---|---|---|---|---|

## School Certification Information
**(To be completed only by the school.)**

| 15. Enrollment Status (Check one) ☐ Full Time ☐ At Least Half Time | 16. Anticipated (Completion) Graduation Date (Month/Day/Year) |
|---|---|

| 17. Loan Period (Month/Day/Year) From: To: | 18. Grade Level | 19. Certified Loan Amount $ .00 |
|---|---|---|

20. Recommended Disbursement Date(s) (Month/Day/Year)

| 1st | 2nd | 3rd | 4th | 5th | 6th |
|---|---|---|---|---|---|

This space reserved for additional disbursement dates, if needed.

PLAINTIFF'S EXHIBIT

## School Certification
**(To be completed only by the school.)**

I hereby certify that the student named on this Certification is accepted for enrollment as a regular student in an eligible program on at least a half-time basis, is a U.S. citizen, permanent resident, or other eligible non-citizen, and is making satisfactory academic progress. I certify that the borrower is an eligible borrower in accordance with the Higher Education Act of 1965, as amended, and applicable U.S. Department of Education regulations (collectively referred to as the Act) and has been determined eligible for a loan in the amount certified. I further certify that the disbursement schedule complies with the requirements of the Act. I further certify that, based on records available and appropriate inquiry, the student has met the requirements of the Selective Service Act, is not incarcerated, and that neither the parent borrower nor the student is liable for an overpayment of any federal grant or loan made under the Act, is not in default, or if so, has made satisfactory payment arrangements with the holder(s) of any defaulted loan(s), does not have property subject to a judgement lien for a debt owed to the U.S., and that the information provided in this Certification is true, complete, and accurate to the best of my knowledge and belief. I agree to provide the borrower (i) with confirmation of any transfer of funds through electronic funds transfer (EFT) or master check to the borrower's dependent student's account, and (ii) an opportunity to cancel or reduce any disbursement of a loan.

21. Signature of Authorized School Official _____ 22. Today's Date (Month/Day/Year) _____

Name/Title (Printed or Typed) _____

*Please refer to the instructions for completing this form.*

# Instructions for Completing Federal PLUS Loan Information and School Certification

*Items 1 and 2 may be prefilled or completed by the school.*

**Item 1:** Enter the code for your institution. This code is provided by the U.S. Department of Education.

**Item 2:** Enter your school name, address, and telephone number, including area code, of a school official who can answer questions about this certification.

*Items 3-14 may be completed by the parent borrower, school, or lender. If the parent is completing this section and any information has been prefilled by the school or lender, the parent should review it for correctness. If any part of the prefilled information is incorrect, cross out the incorrect information and print the correct information.*

**Item 3:** Enter the borrower's last name, then first name and middle initial.

**Item 4:** Enter the borrower's nine-digit Social Security Number. This loan cannot be processed without the borrower's Social Security Number.

**Item 5:** Enter the borrower's permanent home street address, apartment number, city, state and zip code. If the borrower has a Post Office Box and a street address, list both.

**Item 6:** Enter the area code and telephone number for the address listed in Item 5. If the borrower does not have a telephone, enter N/A.

**Item 7:** Enter the month, day and four-digit year of the borrower's birth. Use only numbers. Be careful not to enter the current year.

**Item 8:** Enter the name and address of the lender from which the borrower wishes to borrow this loan.

*Note to Parent: If you do not have a lender for this loan, contact the school's financial aid office, a bank or other financial institution, or the guarantor or program listed on this form for information on lenders willing to make Federal PLUS Loans.*

**Item 9:** Enter the lender code, if known. Otherwise, leave this item blank.

**Item 10:** Enter the maximum total amount the borrower wishes to borrow under the PLUS Loan Program for the dependent student listed in Item 12 for the loan period listed in Item 11.

*Note to Parent: Apply only for what you will need to pay your dependent's educational costs this year, keeping in mind your ability to repay your loan(s). You may borrow up to the student's estimated cost of education at the school the student will attend minus any estimated financial assistance the student has or will be awarded during the period of enrollment.*

**Item 11:** Enter the beginning and ending dates (month/year) of the academic period for which this loan is to be used (for example, 9/2003 to 6/2004). These dates must not be more than 12 months apart.

**Item 12:** Enter the last name, then first name and middle initial of the student for whom the parent is borrowing.

**Item 13:** Enter the student's nine-digit Social Security Number. This loan cannot be processed without the student's Social Security Number.

**Item 14:** Enter the month, day, and four-digit year of the student's birth. Use only numbers. Be careful not to enter the current year.

*Items 15-22 are to be completed only by the school. This information is to be certified by a financial aid administrator or other school official authorized to certify financial aid forms. If certification information is transmitted electronically, the School Certification form does not have to be submitted.*

**Item 15:** Indicate whether the student is (or plans to be) enrolled at least half time or full time. Parents of students enrolled (or planning to enroll) less than half time are not eligible for a Federal PLUS Loan.

**Item 16:** Enter the date the student is expected to complete the program at your institution. Use numbers in a month/day/year format; for example, 6/9/2004. If you are unsure of the actual completion date in the future, enter the last day of the month.

**Item 17:** Enter the dates covered by the student's cost of attendance. These dates must coincide with actual term starting and ending dates. At a school without academic terms, these dates must coincide with the student's program of study if that is less than an academic year in length, or the academic year. Use numbers in a month/day/year format.

**Item 18:** Enter the grade level of the student. Select the proper grade level indicator using the standard grade level codes provided:

1. Freshman/First Year (including proprietary institution programs that are less than one year in duration)
2. Sophomore/Second Year
3. Junior/Third Year
4. Senior/Fourth Year
5. Fifth Year/Other Undergraduate (including sixth year undergraduate and continuing education students)

**Item 19:** Enter the maximum amount of PLUS Loan the borrower is eligible to receive for the academic period covered in Item 17. This amount cannot exceed the student's Cost of Attendance minus Other Financial Aid.

**Item 20:** Enter the disbursement dates for this loan as determined in accordance with the Act. Use numbers in a month/day/year format.

**Item 21:** Your signature acknowledges that you have read and agree to the provisions in the School Certification. You must sign the Certification and print your name and title.

**Item 22:** Enter the date of Certification. Use numbers in a month/day/year format.

Exhibit F
FISAP

ED Form 646-1
OMB no 1845-0030
Expires 06/30/2008

# Fiscal Operations Report and Application to Participate (FISAP)

**Report: Award Year July 1, 2006 through June 30, 2007; Application: Award Year July 1, 2008 through June 30, 2009**

Part I. Identifying Information, Certification and Warning

*Section A. Identifying Information*

**1(a) Name and address of school**

_____
_____
_____
_____

**1(b) Mailing address (if different from 1(a))**

_____
_____
_____
_____

**2. OPEID Number** _____

**3. Type of school (select one)**

___ 3.1 public
___ 3.2 private/non-profit
___ 3.3 proprietary

**(Select one if proprietary)**

___ (a) art
___ (b) business
___ (c) cosmetology
___ (d) trade and technical
___ (e) other

**4. Length/type of longest program (select one)**

___ 4.1 less than 1 year
___ 4.2 1 year but less than 2 years
___ 4.3 2 years but less than 3 years
___ 4.4 3 years but less than 4 years
___ 4.5 4 years (no higher than a baccalaureate degree)
___ 4.6 5 years or more
___ 4.7 post-baccalaureate only

**5. Additional locations**
Schools with separately eligible additional locations that will be funded under this application must list these locations and their addresses and OPEID Numbers on the screen. You may not file a separate application for any separately eligible school listed herein.

We have entered a list of separately eligible additional locations included in this application.           ___ yes    ___ no

**6. Financial Aid Administrator**
Name _____
E-mail address _____

Telephone No. _____
Fax No.              _____

**7. Name and address of private financial aid consultant firm, if any**
Name _____
Address 1 _____
Address 2 _____
City _____ State _____ Zip _____



ED Form 646-1
OMB no 1846-0030
Expires 08/30/2008

*Section B. Certification and Warning*

Applicants must review the requirements for certification regarding lobbying included in the regulations cited below before completing this form. Applicants must sign this form to comply with the certification requirements under 34 CFR Part 82, "New Restrictions on Lobbying." This certification is a material representation of fact upon which the Department of Education relies when it makes a grant or enters into a cooperative agreement.

As required by Section 1352, Title 31 of the U.S. Code, and implemented at 34 CFR Part 82, for persons entering into a Federal contract, grant or cooperative agreement over $100,000, as defined at 34 CFR Part 82, Sections 82.105 and 82.110, the applicant certifies that:

(a) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the making of any Federal grant, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal grant or cooperative agreement;

(b) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal grant or cooperative agreement, the undersigned shall complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions (Available at the following link: http://www.ed.gov/fund/grant/apply/appforms/sfll.doc); and

(c) The undersigned shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subgrants and contracts under grants and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

As the duly authorized representative of the applicant, I hereby certify that the applicant will comply with the above certification. I further certify that the information contained in this electronic FISAP is in compliance with governing legislation and regulations and is true and accurate. I understand that all information associated with this FISAP is subject to audit and program review by representatives of the Secretary of Education.

WARNING: Any person who knowingly provides false or misleading information on this FISAP will be subject to a fine of up to $10,000 or imprisonment of up to 5 years or both under provisions of Section 1001, Title 18 of the U.S. Code.

8. Chief Executive Officer (Includes President, Chancellor, and Director)

Signature _____          Date signed _____
Name _____               Telephone No. _____
Title _____              Fax No. _____
E-mail address _____

## Mail signed form to

**FISAP Administrator**
**2020 Company, LLC**
**3110 Fairview Park Drive**
**Suite 950**
**Falls Church, VA 22042**

FISAP Version:

A-2

ED Form 646-1
OMB no 1845-0030
Expires 06/30/2008

## Application to Participate, Part II

Name of school _____
OPEID Number _____ State _____

Part II. Application to Participate for Award Year July 1, 2008 through June 30, 2009

*Section A. Request for Funds for the 2008-2009 Award Year*

1. Federal Perkins Loan Level of Expenditures         $ _____

2. Federal Perkins Loan Federal Capital Contribution    $ _____

3. FSEOG federal funds                                $ _____

4. FWS federal funds                                  $ _____

*Section B. Federal Perkins Loan Program Liquidation Request*
(Applies only to certain schools; see instructions)

5. My school wishes to discontinue participation in the Federal Perkins Loan Program.    __ yes    __ no

*Section C. Waiver Request for the Underuse of Funds*

My school has returned more than 10 percent of its Federal Perkins Loan, FSEOG, or FWS allocation for the 2006-2007 award year.

6. My school wishes to apply for a waiver of the penalty for the underuse of funds and will provide, on the Additional Information screen, a written explanation of the circumstances.    __ yes    __ no

ED Form 646-1
OMB no 1845-0030
Expires 06/30/2008

## Application to Participate, Part II (continued)

Name of school _____
OPEID Number _____    State _____

Part II. Application to Participate for Award Year July 1, 2008 through June 30, 2009

*Section D. Information on Enrollment*

My school's calendar is __ Traditional  __ Non-Traditional

Schools with a non-traditional calendar that had 2006-2007 enrollment, fill in fields 9 through 20.

Schools with a traditional calendar that had 2006-2007 enrollment, fill in Field 7.

| | Undergraduate (a) | Graduate/Professional (b) |
|---|---|---|
| 7. Total number of students, 2006-2007 | _____ | _____ |

Schools with a traditional calendar that did not have 2006-2007 enrollment, fill in Field 8.

| | Undergraduate (a) | Graduate/Professional (b) |
|---|---|---|
| 8. Estimated number of students, 2007-2008 | _____ | _____ |

| | Continuing Students (a) | New Starts (b) |
|---|---|---|
| 9. July 1, 2006 | _____ | _____ |
| 10. August 1 | _____ | _____ |
| 11. September 1 | _____ | _____ |
| 12. October 1 | _____ | _____ |
| 13. November 1 | _____ | _____ |
| 14. December 1 | _____ | _____ |
| 15. January 1, 2007 | _____ | _____ |
| 16. February 1 | _____ | _____ |
| 17. March 1 | _____ | _____ |
| 18. April 1 | _____ | _____ |
| 19. May 1 | _____ | _____ |
| 20. June 1, 2007 | _____ | _____ |
| 21. TOTAL | _____ | _____ |

*Section E.  Assessments and Expenditures*

| | Undergraduate (a) | Graduate/Professional (b) |
|---|---|---|
| 22. Total tuition and fees for the award year July 1, 2006 to June 30, 2007 | $_____ | $_____ |
| 23. Title IV, Part A, Subpart I, Grants | | |
| (a) Total Federal Pell Grant expenditures for the 2006-2007 award year | $_____ | |
| (b) Total ACG expenditures for the 2006-2007 award year | $_____ | |
| (c) Total National SMART Grant expenditures for the 2006-2007 award year | $_____ | |
| 24. Total expended for state grants and scholarships made to undergraduates for the award year July 1, 2006 to June 30, 2007 | $_____ | |

*Section F. Information on Eligible Aid Applicants Enrolled in Your School for Award Year 2006-2007*

| | Dependent Undergraduate Without Baccalaureate/ 1st Prof. Degree (a) | With Baccalaureate/ 1st Prof. Degree (b) | Independent Undergraduate Without Baccalaureate/ 1st Prof. Degree (c) | With Baccalaureate/ 1st Prof. Degree (d) | Independent Graduate/ Professional (e) |
|---|---|---|---|---|---|
| 25. Students with an "Automatic" Zero EFC | _____ | _____ | _____ | _____ | _____ |

**Taxable and Untaxed Income**

| | | |
|---|---|---|
| 26. $0 - $2,999 | _____ | _____ |
| 27. $3,000 - $5,999 | _____ | _____ |
| 28. $6,000 - $8,999 | _____ | _____ |
| 29. $9,000 - $11,999 | _____ | _____ |
| 30. $12,000 - $14,999 | _____ | _____ |
| 31. $15,000 - $17,999 | _____ | _____ |
| 32. $18,000 - $23,999 | _____ | _____ |
| 33. $24,000 - $29,999 | _____ | _____ |
| 34. $30,000 - $35,999 | _____ | _____ |
| 35. $36,000 - $41,999 | _____ | _____ |
| 36. $42,000 - $47,999 | _____ | _____ |
| 37. $48,000 - $53,999 | _____ | _____ |
| 38. $54,000 - $59,999 | _____ | _____ |
| 39. $60,000 and over | _____ | _____ |
| 40. TOTAL | _____ | _____ |

**Taxable and Untaxed Income**

| | | | |
|---|---|---|---|
| $0 - $999 | _____ | _____ | _____ |
| $1,000 - $1,999 | _____ | _____ | _____ |
| $2,000 - $2,999 | _____ | _____ | _____ |
| $3,000 - $3,999 | _____ | _____ | _____ |
| $4,000 - $4,999 | _____ | _____ | _____ |
| $5,000 - $5,999 | _____ | _____ | _____ |
| $6,000 - $7,999 | _____ | _____ | _____ |
| $8,000 - $9,999 | _____ | _____ | _____ |
| $10,000 - $11,999 | _____ | _____ | _____ |
| $12,000 - $13,999 | _____ | _____ | _____ |
| $14,000 - $15,999 | _____ | _____ | _____ |
| $16,000 - $17,999 | _____ | _____ | _____ |
| $18,000 - $19,999 | _____ | _____ | _____ |
| $20,000 and over | _____ | _____ | _____ |
| TOTAL | _____ | _____ | _____ |

FISAP Version:

DO NOT SEND THESE PAGES TO THE DEPARTMENT

Page A-4

ED Form 646-1
OMB no 1845-0030
Expires 08/30/2008

## Fiscal Operations Report, Part III

Name of school _____

OPEID Number _____ State _____

### Part III. Federal Perkins Loan Program for Award Year July 1, 2006 through June 30, 2007

*Section A. Fiscal Report (Cumulative) as of June 30, 2007*

| Field Item | Amount (a) | Number of Borrowers (b) | Debit Balances (c) | Credit Balances (d) |
|---|---|---|---|---|
| 1.1. Cash on hand and in depository as of 6/30/2007 | | | $_____ | |
| 1.2. Cash on hand and in depository as of 10/31/2007 | $_____ | | $_____ | |
| 2. Funds receivable from federal government | | | $_____ | |
| 3. Funds receivable from school | | | $_____ | |
| 4. Funds advanced to students | | | $_____ | |
| 5. Loan principal collected | | _____ | | $_____ |
| 6. Loan principal assigned to and accepted by the United States | | _____ | | $_____ |
| Loan principal canceled for the following categories: | | | | |
| 7. teaching/military service (applies to loans made prior to 07/01/1972) | | _____ | | $_____ |
| 8. certain subject matter teaching service (math, science, foreign languages, bilingual education) | | _____ | | $_____ |
| 9. all other authorized teaching service | | _____ | | $_____ |
| 10. military service (applies to loans made 07/01/1972 and after) | | _____ | | $_____ |
| 11. volunteer service | | _____ | | $_____ |
| 12. law enforcement and corrections officer service | | _____ | | $_____ |
| 13. child/family/early intervention service | | _____ | | $_____ |
| 14. nurse/medical technician service | | _____ | | $_____ |
| 15. death/disability | | _____ | | $_____ |
| 16. bankruptcy | | _____ | | $_____ |
| 17. surviving spouses of public service victims of 9-11 terrorist attacks | | _____ | | $_____ |
| 18. loans discharged due to closed schools | | _____ | | $_____ |
| 19. Loan principal adjustments – other | | _____ | | $_____ |
| 20. Federal Capital Contributions | | | $_____ | |
| 21. Repayments of fund capital to federal government | | | | $_____ |
| 22. Institutional Capital Contributions | | | $_____ | |
| 23. Repayments of fund capital to school | | | | $_____ |
| 24. Interest income on loans | | | | $_____ |
| 25. Other income | | | | |
| 26. Reimbursements to the Fund of the amounts canceled on loans made 07/01/1972 and after | | | | $_____ |
| 27.1. Administrative cost allowance | $_____ | | | |
| 27.2. Collection costs | $_____ | | | |
| 27.3. Administrative cost allowance and collection costs (control) | | | $_____ | |
| Cost of loan principal and interest canceled for the following categories: | | | | |
| 28. teaching/military service (applies to loans made prior to 07/01/1972) | | | $_____ | |
| 29. certain subject matter teaching service (math, science, foreign languages, bilingual education) | | | $_____ | |
| 30. all other authorized teaching service (applies to loans made 07/01/1972 and after) | | | $_____ | |
| 31. military service (applies to loans made 07/01/1972 and after) | | | $_____ | |
| 32. volunteer service in the Peace Corps or under the Domestic Volunteer Service Act of 1973 | | | $_____ | |
| 33. law enforcement and corrections officer service | | | $_____ | |
| 34. child/family/early intervention service | | | $_____ | |
| 35. nurse/medical technician service | | | $_____ | |
| 36. death/disability | | | $_____ | |
| 37. bankruptcy | | | $_____ | |
| 38. surviving spouses of public service victims of 9-11 terrorist attacks | | | $_____ | |
| 39. Cost of loan principal and interest assigned to and accepted by the United States | | | $_____ | |
| 40. Cost of loan principal and interest canceled for loans discharged due to closed schools | | | $_____ | |

FISAP Version:

ED Form 646-1
OMB no 1845-0030
Expires 06/30/2008

## Fiscal Operations Report, Part III (continued)

Name of school _____
OPEID Number _____ State _____

Part III. Federal Perkins Loan Program for Award Year July 1, 2006 through June 30, 2007

Section A. Fiscal Report (Cumulative) as of June 30, 2007

| Field Item | Amount (a) | Number of Borrowers (b) | Debit Balances (c) | Credit Balances (d) |
|---|---|---|---|---|
| 41. Other costs or losses | | | $_____ | |
| 42. Balancing Adjustments (Debits) | | | $_____ | |
| 43. Balancing Adjustments (Credits) | | | | $_____ |
| 44. Total debits and credits (Sum of fields 1.1 through 43) | | | $_____ | $_____ |

Section B. Fund Activity (Annual) During the 2006-2007 Award Year (July 1, 2006 through June 30, 2007)

| | Number of Borrowers (a) | Amount (b) |
|---|---|---|
| 1. Final adjusted Federal Capital Contribution (FCC) authorization | | $_____ |
| 2. FCC transferred to: (a) FSEOG | | $_____ |
| (b) FWS | | $_____ |
| 3. The unexpended amount of final adjusted authorized FCC for award year 2006-2007 that was NOT requested from GAPS by June 30, 2007. This amount will be reduced from your total award amount next spring (see instructions). | | $_____ |
| 4. Institutional Capital Contribution (ICC) deposited into the Fund between July 1, 2006 and June 30, 2007 | | $_____ |
| 5. Loans advanced to students from the Fund during the 2006-2007 award year (minus 2006-2007 award year refunds) | | $_____ |
| 6. Administrative cost allowance claimed for the 2006-2007 award year (see instructions) | | $_____ |
| 7. Total principal and interest repaid by borrowers from all sources during the 2006-2007 award year | _____ | $_____ |
| 8. Total principal repaid by borrowers from all sources during the 2006-2007 award year for loans in default for more than 2 years but not more than 5 years | _____ | $_____ |
| 9. Total principal repaid by borrowers from all sources during the 2006-2007 award year for loans in default for more than 5 years | _____ | $_____ |

ED Form 646-1
OMB no 1845-0030
Expires 08/30/2006

## Fiscal Operations Report, Part III (continued)

Name of school _____

OPEID Number _____    State _____

Part III. Federal Perkins Loan Program for Award Year July 1, 2006 through June 30, 2007

*Section C. Cumulative Repayment Information as of June 30, 2007*

Status of Borrowers as of June 30, 2007

| | Amount (a) | Number of Borrowers (b) | Amount Lent (c) | Principal Amount Outstanding (d) |
|---|---|---|---|---|
| 1.1. Borrowers whose loans are fully retired | | _____ | $_____ | |
| 1.2. Loans that have been purchased | $_____ | | | |
| 2. Borrowers whose loans were assigned to and officially accepted by the U.S. Department of Education as of June 30, 2007 (Note: Field 2 equals the sum of Field 2.1 plus Field 2.2.) | | _____ | $_____ | $_____ |
| 2.1. Assignments due to default or liquidation | | _____ | $_____ | $_____ |
| 2.2. Assignments due to total and permanent disability discharge | | _____ | $_____ | $_____ |
| 3. Total borrowers not in repayment status | | _____ | | $_____ |
| 4. Borrowers on schedule in repayment status | | _____ | | $_____ |
| 5.1. In default less than 240 days (monthly installments) or less than 270 days (other installments) | | _____ | $_____ | $_____ |
| 5.2. In default 240 days or more (monthly installments) or 270 days or more (other installments), up to 2 years | | _____ | $_____ | $_____ |
| 5.3. In default more than 2 years but not more than 5 years | | _____ | $_____ | $_____ |
| 5.4. In default more than 5 years | | _____ | $_____ | $_____ |

Cohort Default Rate (Sections D and E)

Schools with fewer than 30 borrowers who entered repayment in the 2005-2006 award year should skip to Section E.

*Section D. Schools with 30 or More Borrowers Who Entered Repayment in the 2005-2006 Award Year*

1.1. Number of borrowers who entered repayment in 2005-2006                     _____

1.2. Number of borrowers from Field 1.1 above with loans in default by June 30, 2007     _____

1.3. Cohort default rate ((Field 1.2 / Field 1.1) x 100)                     _____

*Section E. Schools with Fewer than 30 Borrowers Who Entered Repayment in the 2005-2006 Award Year*

2.1. Number of borrowers who entered repayment in:            2.2. Number of borrowers with loans in default by:

(a) 2003-2004 (07/01/2003-06/30/2004)                    (a) June 30, 2005 (those in 2.1(a) only)     _____

(b) 2004-2005 (07/01/2004-06/30/2005)     _____        (b) June 30, 2006 (those in 2.1(b) only)     _____

(c) 2005-2006 (07-01/2005-06/30/2006)     _____        (c) June 30, 2007 (those in 2.1(c) only)     _____

2.3. Total number of borrowers who entered repayment during the three years above (fields 2.1(a) + 2.1(b) + 2.1(c))     _____

2.4. Total number of borrowers with loans in default during the three years above (fields 2.2(a) + 2.2(b) + 2.2(c))     _____

2.5. Cohort default rate ((Field 2.4 / Field 2.3) x 100)     _____

ED Form 646-1
OMB no 1845-0030
Expires 06/30/2008

## Fiscal Operations Report, Part IV

Name of school _____
OPEID Number _____    State _____

Part IV.  Federal Supplemental Educational Opportunity Grant (FSEOG) Program for Award Year
July 1, 2006 through June 30, 2007

### Section A. Federal Funds Authorized for FSEOG

1. Final adjusted FSEOG authorization                                                               $_____

### Section B. Federal Funds Available for FSEOG Expenditures

2. FWS funds transferred to and spent in FSEOG                                                      +$_____
3. Federal Perkins Federal Capital Contribution funds transferred to and spent in FSEOG            +$_____
4. 2007-2008 FSEOG funds carried back and spent in 2006-2007                                        +$_____
5. Additional 2007-2008 FSEOG funds carried back and spent for 2007 summer enrollment              +$_____
6. 2005-2006 funds carried forward and spent in 2006-2007                                           +$_____
7. 2006-2007 funds carried forward to be spent in 2007-2008                                         - $_____
8. 2006-2007 funds carried back and spent in 2005-2006                                              - $_____
9. Additional 2005-2007 funds carried back and spent for 2006 summer enrollment                    - $_____
10. Total federal funds available for 2006-2007 FSEOG (fields 1 + 2 + 3 + 4 + 5 + 6 - 7 - 8 - 9)    $_____

### Section C. Funds to FSEOG Recipients

11. Total funds to FSEOG recipients (fields 12 + 13)                                                $_____
12. Nonfederal share of funds to FSEOG recipients (25 percent of Field 11)                          $_____

    (a) Cash outlay contributed                                   $_____
    (b) Other resources designated                                $_____

### Section D. Federal Funds Spent for FSEOG Program

13. Federal share of funds to FSEOG recipients (75 percent of Field 11)                             $_____
14. Administrative cost allowance claimed                                                          +$_____
15. Federal funds spent for FSEOG (fields 13 + 14)                                                  $_____

### Section E. Use of FSEOG Authorization

16. Expended FSEOG authorization (fields 7 + 8 + 9 + 15) minus (fields 2 + 3 + 4 + 5 + 6)           $_____
17. Unexpended FSEOG authorization (Field 1 - Field 16) (cannot be negative)                        $_____

ED Form 646-1
OMB no 1845-0030
Expires 06/30/2008

## Fiscal Operations Report, Part V

Name of school _____
OPEID Number _____     State _____

Part V. Federal Work-Study (FWS) Program for Award Year July 1, 2006 through June 30, 2007

### Section A. Federal Funds Authorized for FWS

1. Final adjusted FWS authorization                                                                 $_____

### Section B. Federal Funds Available for FWS Expenditures

2. Federal Perkins Federal Capital Contribution funds transferred to and spent in FWS        +$_____
3. FWS funds transferred to and spent in FSEOG                                                -$_____
4. 2007-2008 FWS funds carried back and spent in 2006-2007                                    +$_____
5. Additional 2007-2008 FWS funds carried back and spent for 2007 summer enrollment          +$_____
6. 2005-2006 funds carried forward and spent in 2006-2007                                     +$_____
7. 2006-2007 funds carried forward to be spent in 2007-2008                                   - $_____
8. 2006-2007 funds carried back and spent in 2005-2006                                        - $_____
9. Additional 2006-2007 funds carried back and spent for 2006 summer enrollment              - $_____
10. Total federal funds available for 2006-2007 FWS (fields 1 + 2 - 3 + 4 + 5 + 6 - 7- 8- 9)   $_____

### Section C. Total Compensation for FWS

11. Total earned compensation for FWS Program                                                 $_____

   (a) On-campus earned compensation                                    $_____

   (b) Off-campus earned compensation for public or private non-profit
      agencies, excluding amounts reported in Field 11c      $_____

   (c) Off-campus earned compensation for agencies that were unable to pay
      regular nonfederal share and had a federal share up to 90 percent      $_____

   (d) Off-campus earned compensation for private for-profit organizations      $_____

12. Total institutional share of earned compensation (see instructions)                       $_____

### Section D. Funds Spent from Federal Share of FWS

13. Total federal share of FWS earned compensation                                            $_____

   (a) Federal share paid at a rate up to 75 percent                    $_____

   (b) Federal share paid at a rate up to 100 percent for waivers of
      nonfederal share                                          $_____

   (c) Federal share paid at a rate up to 90 percent for agencies that were
      unable to pay regular nonfederal share                   $_____

   (d) Federal share paid at a rate up to 50 percent for off-campus, private
      for-profit organizations                                 $_____

14. Administrative cost allowance claimed                                                     +$_____
15. Federal share of Job Location and Development (JLD) Program expenditures                  +$_____
16. Total federal funds spent for FWS (fields 12 + 14 + 15)                                    $_____

### Section E. Use of FWS Authorization

17. Expended FWS authorization (fields 3 + 7 + 8 + 9 + 16) minus (fields 2 + 4 + 5 + 6)        $_____
18. Unexpended FWS authorization (Field 1 - Field 17)                                          $_____

### Section F. Information About the Job Location and Development (JLD) Program

19. Total expenditures for the JLD Program                                                     $_____
20. Institutional expenditures for the JLD Program (see instructions)                          $_____
21. Number of students for whom jobs were located or developed                                _____
22. Total earnings of the students in Field 21 above                                          $_____

FISAP Version:                        DO NOT SEND THESE PAGES TO THE DEPARTMENT                Page A-9

ED Form 646-1
OMB no 1845-0030
Expires 06/30/2008

## Fiscal Operations Report, Part V (continued)

Name of school _____
OPEID Number _____     State _____

Part V. Federal Work-Study (FWS) Program for Award Year July 1, 2006 through June 30, 2007

*Section G. Information About FWS Students Employed in Community Service Activities*

23. Number of students in community service employment      _____

24. Federal share of community service earned compensation      $_____

25. Nonfederal share of community service earned compensation      $_____

*Section H. Information About FWS Students Employed as Reading Tutors of Children or Employed in Family Literacy Activities*

26. Number of FWS students employed as reading tutors of children or employed in family literacy activities      _____

27. Federal share of earned compensation for FWS students employed as reading tutors of children or employed in family literacy activities      $_____

    (a) Amount of the federal share in Field 27 spent on community service employment      $_____

28. Total earned compensation for FWS students employed as reading tutors of children or employed in family literacy activities      $_____

*Section I. Information About FWS Students Employed as Mathematics Tutors of Children*

29. Number of FWS students employed as mathematics tutors of children      _____

30. Federal share of earned compensation for FWS students employed as mathematics tutors of children      $_____

31. Total earned compensation for FWS students employed as mathematics tutors of children      $_____

ED Form 646-1
OMB no 1845-0030
Expires 08/30/2008

## Fiscal Operations Report, Part VI

Name of school _____
OPEID Number _____     State _____

### Part VI. Program Summary for Award Year July 1, 2006 through June 30, 2007

*Section A. Distribution of Program Recipients and Expenditures by Type of Student*

| Taxable and Untaxed Income Category Student Type | Federal Perkins Loan | | FBEOG | | FWS | | Unduplicated Recipients |
|---|---|---|---|---|---|---|---|
| | Recipients (a) | Funds (b) | Recipients (c) | Funds (d) | Recipients (e) | Funds (f) | (g) |
| **Undergraduate Dependent** | | | | | | | |
| 1. $0 - $5,999 | | | | | | | |
| 2. $6,000 - $11,999 | | | | | | | |
| 3. $12,000 - $23,999 | | | | | | | |
| 4. $24,000 - $29,999 | | | | | | | |
| 5. $30,000 - $41,999 | | | | | | | |
| 6. $42,000 - $59,999 | | | | | | | |
| 7. $60,000 and over | | | | | | | |
| **Undergraduate Independent** | | | | | | | |
| 8. $0 - $1,999 | | | | | | | |
| 9. $2,000 - $3,999 | | | | | | | |
| 10. $4,000 - $7,999 | | | | | | | |
| 11. $8,000 - $11,999 | | | | | | | |
| 12. $12,000 - $15,999 | | | | | | | |
| 13. $16,000 - $19,999 | | | | | | | |
| 14. $20,000 and over | | | | | | | |
| 15. Graduate/Professional | | | does not apply | does not apply | | | |
| 16. TOTAL (fields 1-15) | | | | | | | |
| 17. Total less-than-full-time students (from fields 1-15) | | | | | | | |
| 18. Total "Automatic" Zero EFC students (from fields 1-15) | | | | | | | |

ED Form 646-1
OMB no 1845-0030
Expires 08/30/2008

# Fiscal Operations Report, Part VI (continued)

Name of school _____

OPEID Number _____     State _____

## Part VI. Program Summary for Award Year July 1, 2006 through June 30, 2007

*Section B. Calculating the Administrative Cost Allowance*

**Administrative Cost Allowance Worksheet (Worksheet must be retained for audit and program reviews)**

**Step 1. Calculate the amount spent in 2006-2007 on which the administrative cost allowance is based.**

| | |
|---|---|
| 1. Total compensation in FWS (amount from Part V, Section C, Field 11) | $_____ |
| 2. Amount of Federal Perkins Loan funds advanced to students (amount from Part III, Section B, Field 6) | +$_____ |
| 3. Total funds to FSEOG recipients (amount from Part IV, Section C, Field 11) | +$_____ |
| 4. Total amount spent (fields 1 + 2 + 3) | $_____ |

**Step 2. Calculate the administrative cost allowance.**

**Schools whose total amount spent was $2,750,000 or less**

| | |
|---|---|
| 5. Enter total amount spent (Field 4) | $_____ |
| 6. Multiply | x_____0.05 |
| 7. Total administrative cost allowance—go to Step 3 | $_____ |

**Schools whose total amount spent was more than $2,750,000 but less than $5,500,000**

| | |
|---|---|
| 8. Enter total amount spent (Field 4) | $_____ |
| 9. Subtract | -$____2,750,000 |
| 10. Expenditures over $2,750,000 (Field 8 - Field 9) | $_____ |
| 11. Multiply | x_____0.04 |
| 12. Administrative cost allowance on expenditures over $2,750,000 (Field 10 x Field 11) | $_____ |
| 13. Add administrative cost allowance on expenditures of $2,750,000 ($2.75 million x .05) | +$____137,500 |
| 14. Total administrative cost allowance (Field 12 + Field 13)—go to Step 3 | $_____ |

**Schools whose total amount spent was $5,500,000 or more**

| | |
|---|---|
| 15. Enter total amount spent (Field 4) | $_____ |
| 16. Subtract | -$____5,499,999 |
| 17. Expenditures of $5,500,000 or more (Field 15 - Field 16) | $_____ |
| 18. Multiply | x_____0.03 |
| 19. Administrative cost allowance on expenditures of $5,500,000 or more (Field 17 x Field 18) | $_____ |
| 20. Add administrative cost allowance on expenditures less than $5,500,000 (($2.75 million x .05) + Field 12) | +$____247,500 |
| 21. Total administrative cost allowance (Field 19 + Field 20)—go to Step 3 | $_____ |

**Step 3. Decide how much administrative cost allowance your school claimed.**

| | |
|---|---|
| 22. How much administrative cost allowance did your school claim? (The amount may be the same or less than the amount calculated in Step 2.) | $_____ |
| 23. How much administrative cost allowance did your school claim in each program? | |
| (a) Federal Perkins Loan (must be the same as Part III, Section B, Field 6) | $_____ |
| (b) FSEOG (must be the same as Part IV, Section D, Field 14) | $_____ |
| (c) FWS (must be the same as Part V, Section D, Field 14) | $_____ |

Exhibit G
Family Educ. Loan Prog.
Claim Form

Federal Family Education Loan Program

# Claim Form

Guarantor Identification

## I. CLAIM INFORMATION

1. Claim Type

2. DCO

3. Claim Review Type

## II. BORROWER INFORMATION

4. Social Security #

5. Name (Last, First, MI)

6. AKA

7. Address

8. Valid?

9. Home # (    )

10. Valid?

11. Other # (    )

12. Valid?

13. Work # (    )

14. Valid?

15. Employer

16. E-mail Address

## III. LOAN INFORMATION

| 17. Loan Type | 18. Loan ID | 19. 1st Disb Dt | 20a. $ Curr Prin Bal | 20b. $ Unpd Fee/Int | 21. Dt Loan Sold | 22. Dt Servicer Resp | 23. Int Rate/Type/ Conv Dt | 24. $ Uninsured Interest |
|---|---|---|---|---|---|---|---|---|

## IV. ENDORSER/COMAKER/PLUS STUDENT (E/C/S) INFORMATION

| 25. Loan ID | 26. E/C/S Code, ID # | 27. E/C/S Name | 28. Social Security # | 29. Address | 30. Valid? | 31. Home # | 32. Valid? |
|---|---|---|---|---|---|---|---|

## V. CONVERSION TO REPAYMENT INFORMATION

33. OSD

34. Notification Dt

35. Repayment Change?

36. 1st Pmt Due Dt

## VI. REPAYMENT INFORMATION

| 37a. $ Total Borrower Pmts | 38. # Mnths Pmts | 39. # Mnths Def/Forb | 40. # Mnths Violation | 41. # Events | 42. # Reconv Mnths | 43. Pmt Due Dt |
|---|---|---|---|---|---|---|

37b. $ Dt Refund

## VII. REQUESTED CLAIM AMOUNT

44. Total Amount Disb/Repurchased          $ _____

45. Capitalized Int                    + $ _____

46. Prin Repaid                        - $ _____

47. Prin Used for Int Claimed          = $ _____

48. Cure Int Capitalized               - $ _____

49. Prin Claimed                       = $ _____

50. Int-Paid-Through Dt _____

51. Int Claimed as of _____          $ _____

52. Unpaid Cure Int not Capitalized        $ _____

53. Other Charges Claimed                  $ _____

## VIII. LENDER/SERVICER INFORMATION AND CERTIFICATION

54. Lender ID

55. Servicer ID

56. Lender/Servicer Name

57. Lender/Servicer Address

58. Prepared By

59. Preparer's # (    )

EXHIBIT
G

BY SUBMITTING THIS CLAIM TO THE GUARANTOR FOR REIMBURSEMENT, THE LENDER/HOLDER CERTIFIES, TO THE BEST OF ITS KNOWLEDGE, THAT THE INFORMATION IN THIS CLAIM IS TRUE AND ACCURATE AND THAT THE LOAN(S) INCLUDED IN THIS CLAIM WAS (WERE) MADE, DISBURSED (INCLUDING REMITTANCE OF ORIGINATION FEES) AND SERVICED IN COMPLIANCE WITH ALL FEDERAL REGULATIONS AND APPROPRIATE GUARANTOR RULES. SHOULD THE GUARANTOR DETERMINE THAT THE LOAN(S) WAS (WERE) NOT SERVICED IN COMPLIANCE WITH FEDERAL REGULATIONS AND APPROPRIATE GUARANTOR RULES, AND SUCH NON-COMPLIANCE RESULTS IN THE GUARANTOR'S INABILITY TO COLLECT FROM THE BORROWER OR IN THE GUARANTOR'S INELIGIBILITY FOR FEDERAL REINSURANCE ON THE LOAN(S), THE LENDER/HOLDER AGREES TO REPURCHASE SUCH LOAN(S) OR REFUND THE AMOUNT OF THE REINSURANCE LOSS IF REQUIRED BY THE LENDER/HOLDER HEREBY ASSIGNS ALL RIGHTS, TITLE, AND INTEREST IN THE LOAN(S) LISTED IN SECTION III OF THIS FORM TO THE GUARANTOR, OR ITS SUCCESSOR.

07/06

**IX. Collection History (the 270-day period prior to default date)**

80. Borrower's Social Security #

81. Borrower/Comaker(s)                    Endorser(s)

| Date/Code | Date/Code | Date/Code | Date/Code |
|-----------|-----------|-----------|-----------|
|           |           |           |           |

07/00

## Instructions for Completing Claim Form

This form is to be used to submit a request for claim reimbursement to the guarantor. All loans included on the Claim Form must have the same loan type, due date, interest-paid-through date, claim review status, and lender ID. (Note: Some guarantors may require separate claims for subsidized and unsubsidized Stafford loans, and/or for loans with different interest rates.) When completing this form, print or type all information and complete all fields. Use the chart in the Common Manual titled "Information to be Provided for Claim Form" to identify which fields are required and provide the requested information; for fields where the information is not available (or not applicable), complete alpha fields with "N/A" and all numeric/date fields with zeroes. All case fields must be completed with numerics in MM/DD/CCYY format. Address/phone "valid" fields must be completed with a "Y" for yes or an "N" for no; indicate "Y" unless the information is known to be invalid. No claim may be submitted for an amount less than fifty dollars ($50.00). If the number of claimed loans requires more space than is provided, attach a separate Claim Form with the following information completed: Section II (social security number and name) and Section III (all applicable loan information).

*Note: Order of claim documentation will not be a reason for returning a claim to the lender. However, confusing or conflicting documentation may require claim return for lender clarification. All supporting documentation not required for claim submission must be retained by the lender in accordance with federal requirements.*

### I. CLAIM INFORMATION:

1. **Claim Type:** Provide the appropriate claim type code from the following key:

   BC   Bankruptcy (Chapter 12 or 13)
   BH   Bankruptcy (with hardship petition or adversary complaint)
   CS   Closed School
   DB   Default (reached prior to borrower's bankruptcy filing)
   DE   Death
   DF   Default (failure to make monthly payments)
   DI   Disability (total and permanent)
   DQ   Default (failure to make quarterly or less frequent than monthly payments)
   DU   Abbreviated Cure
   FC   False Certification
   IN   Ineligible (borrower is determined not eligible for the loan)

2. **DCO: Date Condition Occurred** is defined by the Claim Type indicated in item 1 at the top of the form. Provide the corresponding month, day, and year as follows:

   If Claim Type is "BC" (Bankruptcy – Chapter 12 or 13), provide the date you received the Notice of First Meeting of Creditors or other acceptable evidence of the bankruptcy action, or the date the guarantor advised you to file a claim.
   If Claim Type is "BH" (Bankruptcy – with hardship petition or adversary complaint), provide the date you received the petition for undue hardship (or adversary complaint), or the date the guarantor advised you to file a claim.
   If Claim Type is "CS" (Closed School), provide the date you received the statement from the borrower certifying eligibility for a Closed School discharge or the date the guarantor advised you to file a claim.
   If Claim Type is "DB" (Default – reached prior to borrower's bankruptcy filing), provide the due date of the borrower's first unmet installment.
   If Claim Type is "DE" (Death), provide the date you received official notification of the death of the borrower or, if applicable, the student.
   If Claim Type is "DF" (Default – failure to make monthly installments), provide the due date of the borrower's first unmet installment.
   If Claim Type is "DI" (Disability – total and permanent), provide the date you received official notification that the borrower's physician certified the borrower to be totally and permanently disabled.
   If Claim Type is "DQ" (Default – failure to make quarterly or less frequent than monthly installments), provide the due date of the borrower's first unmet installment.
   If Claim Type is "DU" (Abbreviated Cure – ICA/location cure), provide the due date of the borrower's first unmet installment that resulted in the original default.
   If Claim Type is "FC" (False Certification), provide the date you received the statement from the borrower certifying eligibility for a False Certification discharge or the date the guarantor advised you to file a claim.
   If Claim Type is "IN" (Ineligible – borrower is determined not eligible for the loan), provide the date you determined or were notified of the borrower's ineligibility.

3. **Claim Review Type:** Provide one of the following numeric codes to indicate the Claim Review Type for which you currently qualify:

   "1" Exceptional Performer Status – Expedited claim review
   "2" Standard Review Status – Regular claim review
   "3" Program Review Status – Monitored claim review

### II. BORROWER INFORMATION:

4. **Social Security #:** Provide the borrower's social security number (do not submit a Claim Form without a social security number).
5. **Name (Last, First, MI):** Provide the borrower's last name, first name, and middle initial.
6. **AKA:** Provide previous or alternative name(s) used by borrower (e.g., maiden name).
7–8. **Address and Valid?:** Provide the borrower's last known complete address (apartment number, box number, street address, city, state, and zip code plus four); indicate the validity of the address by entering a "Y" or an "N" in the appropriate field. Use "Y" unless the information is known to be invalid.
9–14. **Home #, Other #, Work #, and Valid?:** Provide the home phone number, work phone number, and/or other phone number (including area code) for the borrower, if any or all are available. Indicate the validity of each number by entering a "Y" or an "N" in the appropriate field. If no number is available, enter "NA" in the number field. If it has been verified that the borrower does not have a phone, enter "Y" in the validity field. If it has not been verified that there is no phone for the borrower, enter "N" in the validity field.
15. **Employer:** Provide the name, phone number and address of the borrower's place of employment, if known.
16. **E-mail Address:** Provide borrower's current e-mail address (optional).

### III. LOAN INFORMATION: For each loan included in this claim, provide the requested information.

17. **Loan Type:** For each loan listed, provide the loan type using one of the following codes: SF = Subsidized Stafford (including non-subsidized disbursed prior to 10/92); SU = Unsubsidized Stafford; PL = PLUS; GB = Graduate PLUS; SL = SLS; CL = Consolidation. A separate Claim Form must be submitted for each loan type. *Note: Subsidized and unsubsidized Stafford loans that have been combined into one repayment schedule may be combined into one claim, subject to guarantor requirement.*
18. **Loan ID:** For each loan listed, provide the loan identifier code, file number, guarantee date, or guarantee amount, as required by the guarantor of the loan(s).
19. **1st Disb Dt:** For each loan listed, provide the date of the first disbursement.
20a. **$ Curr Prin Bal:** For each loan, provide the current principal balance (including all insured and uninsured capitalized interest) due on the date claimed.
20b. **$ Unpd Feet/Int:** For each eligible loan, provide separately (with "/" between) the amount of unpaid origination fee and unpaid capitalized interest included in the principal balance on the date claimed. For CS, DE, or FC claims, provide zeros.
21. **Dt Loan Sold:** For each loan that has been purchased from another lender, provide the date the loan was purchased. If the loan was not purchased from another lender, enter zeroes. If the loan is not being serviced, enter zeroes.
22. **Dt Servicer Resp:** For each loan, provide the date on which the current servicer assumed responsibility for servicing the loan, as applicable. If the loan is not being serviced, enter zeroes.
23. **Int Rate/Type/Conv Dt:** For each loan, provide the current interest rate and indicate the type of interest rate by entering the appropriate code: F = Fixed rate; V = Variable rate; A = Adjustable rate (8–10%). Indicate, if applicable, the date the loan was converted as required by HEA 1992 rebate requirements or HEA 1992 rebate requirements. Provide zeroes if the loan was not converted or was not subject to rebate requirements.
24. **$ Uninsured Int:** For each loan claimed, provide the amount of cure interest capitalized and the unpaid cure interest not capitalized that accrued during period(s) the account was out of guarantee (in cure status).

### IV. ENDORSER/COMAKER/PLUS STUDENT (E/C/S) INFORMATION: Complete this section if any claimed loan either has an endorser or comaker or is a PLUS loan.

25. **Loan ID:** Repeat the applicable Loan ID from field 18.
26. **E/C/S Code, ID #:** Provide "E" if the individual listed is an endorser; "C" if the individual listed is a comaker; "S" if the individual listed is a PLUS student. Assign each endorser and comaker a numeric identifier beginning with "1"; then "2", etc. An individual who is an endorser, comaker, or both will have a single numeric identifier regardless of the number of loans that individual has endorsed/comade.
27. **E/C/S Name:** For each loan listed, provide the last name, first name, and middle initial of any endorser, comaker, or PLUS student. An endorser or comaker exists on a PLUS loan; list both the endorser or comaker and the PLUS student information.
28. **Social Security #:** Provide the social security number for each endorser, comaker, or PLUS student, as applicable.
29–30. **Address and Valid?:** Provide the last known complete address (apartment number, box number, street address, city, state, and zip code plus four) for each endorser, comaker, or PLUS student. Indicate the validity of the address by entering a "Y" or an "N" in the appropriate field. Use "Y" unless the information is known to be invalid.
31–32. **Home # and Valid?:** Provide the home phone number (including area code) for each endorser, comaker, or PLUS student; indicate the validity of the number by entering a "Y" or an "N" in field 32. If no number is available, enter "NA" in the number field. If it has been verified that the borrower does not have a phone, enter "Y" in the validity field. If it has not been verified that there is no phone, enter "N" in the validity field.

### V. CONVERSION TO REPAYMENT INFORMATION: Complete this section only for accounts that entered repayment. This section is not applicable for CS, FC, or IN claims. For items in this section, provide dates of the "original" conversion to repayment based upon the first verified correct OSD.

33. **OSD (Out-of-School Date):** *Stafford Loans:* Provide the most recently verified date the borrower ended enrollment on at least a half-time basis that caused the loan in Section III that first reached maturity, to enter repayment. *PLUS/Graduate PLUS/SLS Loans Immediately Deferred:* Provide the date the borrower/student ceased eligibility for the initial in-school deferment. *Consolidation Loans and PLUS/Graduate PLUS/SLS Loans Not Immediately Deferred:* Provide the date of the last disbursement. *Consolidation Loans with Add-On Loans:* Determine if the due date of the first monthly installment was changed due to an add-on loan. If so, provide the disbursement date of the add-on loan. If not, provide the last disbursement date of the beginning loan balance.

34. **Notification Dt:** Provide the date you were notified of the date in field 33. If the account was converted to repayment based upon the anticipated graduation date, provide zeroes in this field. For PLUS/Graduate PLUS/SLS loans entering immediate repayment, provide the date of the last disbursement. For an SLS loan converted to repayment based on an alignment forbearance with a corresponding Stafford loan, provide the last day of the alignment forbearance. For Consolidation loans, provide the date of the last disbursement or the date of the add-on disbursement if that is what was used in field 33. For repurchased loans (including rehabilitated loans), provide the date used to convert the loan back to a repayment status.

35. **Repayment Change?:** If the OSD provided in field 33 was received after the loan entered repayment, and the resulting 1st payment due date is prior to the notification date, provide a "Y" (yes). If there was no change to the OSD after the loan entered repayment or the receipt of the OSD provided in field 33 resulted in establishing a new 1st payment due date that is later than the notification date, provide an "N" (no). For repurchased loans (including rehabilitated loans), provide an "N" (no).

36. **1st Pmt Due Dt:** Provide the due date of the first monthly installment established following the OSD provided in field 33. If this claim includes loans that entered repayment at different times, provide the due date of the first monthly installment for the first loan entering repayment. For repurchased loans (including rehabilitated loans), provide the due date established following the notification date provided in field 34.

## VI. REPAYMENT INFORMATION: Complete this section only for accounts that entered repayment. Data in fields 36 through 43 must only reflect events occurring on or after the date provided in field 36. (Fields 36 through 43 are not applicable for CS, FC, or IH claims.)

37a. **$ Total Borrower Pmts:** Provide the total amount of payments made by or on behalf of the borrower (for CS or FC claims, provide principal, interest, and any collection costs paid by the borrower that may be subject to refund, not including payments made by third parties).

37b. **$ Of Refund:** For DI claims only, provide the total amount of payments made by or on behalf of the borrower that were received by the lender/servicer after the date the borrower became unable to work and earn money.

38. **# Mnths Pmts:** Provide the number of months the due date was advanced by payments made by or on behalf of the borrower. Use the loan with the highest number of months advanced by payments. Do not include payments that did not advance the due date of the borrower's account.

39. **# Mnths Def/Forb:** Provide separately (with "/" between) the number of regular monthly installments deferred and forborne. Provide the higher or lower number when multiple loans are included in the claim and their use of deferment and/or forbearance differs. When there are overlapping periods of deferment/forbearance on multiple loans, count those months only once. Do not include forbearance periods covering uninsured months.

40. **# Mnths Violation:** Determine the number of days the account was out of guarantee (i.e., in cure status and uninsured). Divide the total number of days by 30 and round up. Provide the total number of violation months. Include forbearance periods covering uninsured months.

41. **# Events:** Provide the total number of non-continuous individual periods of deferment and forbearance granted on this account. (A deferment or forbearance immediately followed by another deferment or forbearance must be considered one event.) Include all uninsured months, whether a forbearance period was granted or not. For Stafford and SLS loans, use the total number of events listed in field 41 times 3.0 months (90 days); use 2.0 months (60 days) for PLUS, Graduate PLUS, and Consolidation loans.

42. **# Reconv Mnths:** For Stafford and SLS loans, multiply the number of events times 3.0 months, this data would be the same as the # Mnths Def/Forb data. For PLUS, Graduate PLUS, and Consolidation loans.

43. **Pmt Due Dt:** Provide the due date of the first current installment of the borrower's delinquency. In the case of DB, DF, DO, or DU claims, this data must be the Date Condition Occurred (DCO). With BC, BH, DE, or DI claims, enter "NA" in this field unless the account was delinquent prior to the DCO. In which case this date must be prior to the DCO.

## VII. REQUESTED CLAIM AMOUNT:

44. **Total Amount Disb/Repurchased:** Provide the total original principal value of loans disbursed to the borrower. (For CS or FC claims that include Stafford, PLUS, Graduate PLUS, or SLS loans that have not been paid in full as a result of a Consolidation loan, provide the amount paid by the consolidation lender to the prior holder on the applicable underlying loan(s).) For repurchased loans (including rehabilitated loans), provide the total amount of interest capitalized excluding uninsured interest, if identified by the guarantor.

45. **Capitalized Int:** Provide (and add) the total amount of interest capitalized (added to the total principal amount) and disclosed to the borrower. (Not applicable for CS or FC claims that include Stafford, PLUS, Graduate PLUS, or SLS loans that have been paid in full as a result of a Consolidation loan.) For repurchased loans (including rehabilitated loans), all interest capitalized after resumption of servicing of the rehabilitation or repurchase should be included in this field, including uninsured interest excluded per instructions for field 44.

46. **Prin Repaid:** Provide (and subtract) the total principal (only) repaid on the borrower's account before and after entering repayment, including any cancellations after disbursement, post-withdrawal return of funds, third party payments, and prepayments to principal. (Not applicable for CS or FC claims that include Stafford, PLUS, Graduate PLUS, or SLS loans that have been paid in full as a result of a Consolidation loan.) For repurchased loans (including rehabilitated loans), include only those payments applied to principal following the repurchase or rehabilitation.

47. **Prin Used For Int Claimed:** Provide the total principal value of the borrower's debt, including insured and uninsured capitalized interest. Interest claimed should be calculated based upon this principal amount.

48. **Cure Int Capitalized:** Provide (and subtract) any capitalized interest amount that is not eligible for claim payment because it accrued during a violation period when the account was out of guarantee. Do not include this amount in field 49 or field 51. (Not applicable for CS or FC claims that include Stafford, PLUS, Graduate PLUS, or SLS loans that have been paid in full as a result of a Consolidation loan.)

49. **Prin Claimed:** Based upon the calculations above, provide the total principal value of the claim.

50. **Int-Paid-Through Dt:** Provide the date through which interest was last paid. (For CS or FC claims that include Stafford, PLUS, Graduate PLUS, or SLS loans that have been paid in full as a result of a Consolidation loan, this date will be the date of the consolidation, unless a subsidized deferment applied to the Consolidation loan requires adjustment to a later date.)

51. **Int Claimed As Of:** Provide the date through which interest claimed was accrued and the amount of outstanding accrued insured interest claimed. Do not include any uninsured interest (unpaid cure interest not capitalized) in this field. (For CS or FC claims that include Stafford, PLUS, Graduate PLUS, or SLS loans that have been paid in full as a result of a Consolidation loan, provide the amount of interest accrued from the date of consolidation through the date interest was claimed on the amount of the applicable underlying loan(s).)

52. **Unpaid Cure Int Not Capitalized:** Provide the amount of unpaid interest that accrued during period(s) the account was out of guarantee that was not capitalized. (Not applicable for CS or FC claims that include Stafford, PLUS, Graduate PLUS, or SLS loans that have been paid in full as a result of a Consolidation loan.)

53. **Other Charges Claimed:** Provide the amount of any other insured costs incurred by the lender on this account (e.g., guarantor collection cost repurchased or collection costs incurred on CS or FC claims). Do not include late charges.

## VIII. LENDER/SERVICER INFORMATION AND CERTIFICATION: With this claim submission, the lender certifies full compliance as indicated in this section of the Claim Form.

54. **Lender ID:** Provide the six-digit Department of Education lender code and, as applicable, the four-digit non-Department of Education suffix of the lender or the current holder.
55. **Servicer ID:** If the account is being serviced, provide the six-digit Department of Education servicer code.
56. **Servicer Name:** If the account is being serviced, provide the servicer's name; if there is no servicer, provide the lender's name.
57. **Lender/Servicer Address:** If the account is being serviced, provide the servicer's address; if there is no servicer, provide the lender's address.
58. **Prepared By:** Provide an identifier of the person or unit responsible for answering questions about information provided on this form.
59. **Preparer's #:** Provide the phone number (including area code) where the preparer may be reached.

## IX. COLLECTION HISTORY (THE 270-DAY PERIOD PRIOR TO DEFAULT DATE):

60. **Borrower's Social Security #:** Provide the borrower's social security number.
61. **Collection History:** Provide the month, day, and year (MM/DD/CCYY) of each collection activity. Provide the appropriate Collection Activity Code and/or Skiptracing Activity Code from below. Endorser and/or comaker collection activity, if applicable, must include the numeric identifier assigned to the endorser/comaker in Section IV (e.g., LC2 = letter contact to the endorser or comaker designated "2"). List the collection activity for the comaker who also is an endorser in the Borrower/Comaker section. Note: Even if the address and/or phone number of the borrower or endorser were invalid before the account became delinquent (prior to DCO), provide the date you were notified of the invalid address/phone and any skiptracing performed prior to the delinquency, in order to demonstrate that skip requirements were satisfied. Also, do not complete this section for CS or FC claims. Do not complete this section for DE, DI, BC or BH claims, unless the borrower's loans were delinquent prior to the DCO. However, for all DE claims, the "DD" collection activity code and corresponding date must be provided. For all claims, final demand information must be provided; for DU claims, Intensive Collection Activities (ICA) must be provided. NOTE: Provide all activities after day 270 pertinent to the collection of the account.

| | | | |
|---|---|---|---|
| BL | Date borrower located (for ICA/Location cures only) | PD | Lender requested default aversion assistance |
| CR | The date on which the payment was reversed due to nonsufficient funds for one monthly installment (when reporting nonsufficient funds that includes multiple installments, provide a CR code for each installment) | PR | The date on which one monthly installment was satisfied by payment or prepayment (when reporting a payment that includes multiple payments, provide a PR code for each payment) |
| DB | Deferment period/post deferment grace period, begin date | TA | Attempted phone contact with borrower |
| DD | Date of death | TC | Phone contact or contact in person with borrower |
| DE | Deferment period/post deferment grace period, end date | TR | Account converted from one servicing system to another |
| DS | Disclosure sent (for ICA/Location cures only) | VA | Lender became aware of valid address for borrower |
| FB | Forbearance period begin date | VT | Lender became aware of valid phone number for borrower |
| FD | Final demand letter | | |
| FE | Forbearance period end date | | Skiptracing Activity Codes (to obtain address/phone number) |
| IA | Lender became aware of borrower's address | SA | Contact attempted with reference or endorser by phone or a reference skiptracing activity |
| IR | Lender became aware of borrower's incarceration, or lender became aware of borrower's residence outside a State, Mexico, or Canada, or borrower has no phone service | SD | Contact with Directory Assistance for borrower, endorser, or comaker |
| IT | Lender became aware of invalid phone number for borrower | SO | Other skiptracing activity including contact or contact attempt to a relative, individual, borrower, or other entity by phone or letter |
| LC | Letter contact with borrower | SR | Contact with reference or endorser by phone or letter |
| LN | Lender approved a deferment or forbearance with ending date prior to lender's receipt of documentation or adjusted OSD that changes the delinquency | SS | Contact with borrower's school by phone or letter |

07/09

**Exhibit H**
Family Educ. Loan Prog.
Lender's Req/Report

# U.S. DEPARTMENT OF EDUCATION
## Federal Family Education Loan Program

OMB NO: 1845-0013
Expiration Date: 10-31-2010
Previous Versions Obsolete

## LENDER'S INTEREST AND SPECIAL ALLOWANCE REQUEST AND REPORT – (LaRS/799)

*Read instructions for each part before completing this form.*

### IDENTIFICATION AND CERTIFICATION

1. Lender Identification Number (LID), Lender Name:

2. Servicer Identification Number, Servicer Name (if applicable):

3. Year and Quarter Ending (Complete both fields):

    1 [ ] March 31

    2 [ ] June 30

    3 [ ] September 30

    4 [ ] December 31

    YEAR

*Mail completed form to:*

U.S. Department of Education
Post Office Box 2768
Washington, D.C. 20013-2768

### CERTIFICATION

As an eligible Lender, Servicer, or Eligible Lender Trustee in the Federal Family Education Loan Program (FFELP) that submits the Lender Reporting System report (LaRS), I certify, by my signature below that:

The data that my organization submits to the U.S. Department of Education is correct to the best of my knowledge and belief. I certify that this submission seeks payment of only those amounts that are proper and authorized under the laws, regulations, and policies applicable to the Federal Family Education Loan Program. I understand that all documents, files, accounts and records supporting this data are subject to audit or review by the Secretary of Education or other authorized representatives of the United States Government, and I agree to make all such documents, files, accounts and records available to the Secretary or such authorized representatives without restriction.

4. Signature _____

5. Date _____

6. Typed Name and Title _____
   _____

WARNING: Any person who knowingly and willfully submits a false statement to obtain payment may be prosecuted under Federal law, and if convicted, is subject to imprisonment for up to five years or a fine of up to $20,000, or both. 18 U.S.C. 1001, 20 U.S.C 1097. In addition, any person who knowingly makes a false claim or causes a false claim to be presented, or knowingly makes a false statement to obtain payment of a claim, may be subject to civil penalty and damages under the False Claims Act.

REPORTING BURDEN: According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless such collection displays a valid OMB control number. The valid OMB control number for this information collection is 1845-0013. The time required to complete this information collection is estimated to average 3.76 hours per response, including the time to review instructions, search existing data sources, and gather and maintain the data needed, and complete and review the information collection. If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: U.S. Department of Education, Washington, DC 20202-5446. If you have any comments or concerns regarding the status of your individual submission of this form, write directly to: Financial Management, Lender Reporting, Post Office Box 2768, Washington, D.C. 20013-2768.


EXHIBIT
H

**LENDER'S INTEREST AND SPECIAL ALLOWANCE REQUEST AND REPORT (LaRS/799)**

OMB NO: 1845-0013
Expiration Date: 12-31-2010
Previous Versions Obsolete

LID: _____   PAGE: _____

PART I – Loan Origination and Lender Loan Fees

| Loan Type (A) | Fee Code (B) | Fee Percent (C) | Loan Interest Rate (D) | Principal Amount of Loans (E) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

☐ Check here if submitting additional pages for Part I



**LENDER'S INTEREST AND SPECIAL ALLOWANCE REQUEST AND REPORT (LaRS/799)**

OMB NO: 1845-0013
Expiration Date: 12-31-2010
Previous Versions Obsolete

LID: _____   PAGE _____

### PART II – Interest Benefits

| Loan Type (A) | Interest Rate (B) | Billing Code (C) | Ending Principal Balance (D) | Average Daily Principal Balance (E) | Interest Amount (Use only for Adjustments) (F) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Check here if submitting additional pages for Part II ☐



# LENDER'S INTEREST AND SPECIAL ALLOWANCE REQUEST AND REPORT (LaRS/799)

OMB NO: 1845-0013
Expiration Date: 12-31-2010
Previous Versions Obsolete

LIO: _____     PAGE _____

## PART III – Special Allowance

| Billing Code (A) | Calendar Year (B) | Quarter Code (C) | Loan Type (D) | Special Allowance Category (E) | Interest Rate (F) | Ending Principal Balance (G) | Average Daily Principal Balance (H) | Adjustments for Difference in Average Daily Principal Balance (I) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

☐ Check here if submitting additional pages for Part III