**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *ex rel.* JENNIFER S. SHULTZ, | ) | |
| | ) | |
| Plaintiff/Relator, | ) | Case No.:  1:07-cv-05425 |
| | ) | Judge Suzanne B. Conlon |
| v. | ) | |
| | ) | |
| DEVRY INC. | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE MOTION OF DEVRY INC. TO DISMISS RELATOR'S**
**FIRST AMENDED COMPLAINT**
**FOR LACK OF SUBJECT MATTER JURISDICTION**

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION..................................................................................................... 1

II.     THIS ACTION SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER
        JURISDICTION PURSUANT TO THE FALSE CLAIMS ACT'S PUBLIC
        DISCLOSURE BAR (31 U.S.C. § 3730(e)(4)) ............................................................. 5

        A.      Summary of Shultz's Allegations ......................................................... 5

        B.      The Allegations Made By Shultz Have Been Publicly Disclosed ........................... 6

        C.      Shultz's Lawsuit Is Based Upon Publicly Disclosed Information ......................... 9

        D.      Shultz Is Not An Original Source ....................................................... 12

III.    CONCLUSION ...................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Rockwell Int'l Corp. v. United States*,
    549 U.S. 457 (2007) ............................................................................................ 1-2, 5

*United Phosphorus, Ltd. v. Angus Chem. Co.*,
    322 F.3d 942 (7th Cir. 2003) ...................................................................................... 2

*United States ex rel. Bannon v. Edgewater Med. Ctr.*
    406 F. Supp. 2d 907 (N.D. Ill. 2005).................................................................... 10-11

*United States ex rel. Bott v. Silicon Valley Colls.*,
    262 F. App'x 810, 2008 U.S. App. LEXIS 381 (9th Cir. 2008) ................................. 6

*United States ex rel. Findley v. FPC-Boron Employees' Club*,
    105 F.3d 675 (D.C. Cir. 1997).................................................................................... 8

*United States ex rel. Fine v. Sandia Corp.*,
    70 F.3d 568 (10th Cir. 1995) ...................................................................................... 8

*United States ex rel. Fowler v. Caremark Rx, Inc.*,
    No. 03-CV-8714, 2006 U.S. Dist. LEXIS 58992 (N.D. Ill. Aug. 21, 2006),
    *aff'd* 496 F.3d 730 (7th Cir. 2007)..................................................................... 2, 13

*United States ex rel. Fowler v. Caremark Rx, L.L.C.*,
    496 F.3d 730 (7th Cir. 2007) .......................................................................... *passim*

*United States ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc.*,
    436 F.3d 726 (7th Cir. 2006) ........................................................................ 1, 8, 13-14

*United States ex rel. Glaser v. Wound Care Consultants, Inc.*,
    No. 1:05-cv-573-LJM-WTL, 2000 U.S. Dist. LEXIS 88925 (S.D. Ind. Dec. 3, 2007).... 13

*United States ex rel. Grant v. Rush-Presbyterian/St. Luke's Med. Ctr.*,
    No. 99 C 06313, 2000 U.S. Dist. LEXIS 19249 (N.D. Ill. Aug. 24, 2000)..................... 12

*United States ex rel. Graves v. ITT Educ. Servs., Inc.*,
    111 F. App'x 296, 2004 U.S. App. LEXIS 21799 (5th Cir. 2004).................................... 7

*United States ex rel. Gross v. Aids Research Alliance-Chicago*,
    No. 01-C-8182, 2004 U.S. Dist. LEXIS 7302 (N.D. Ill. Apr. 27, 2004),
    *aff'd*, 415 F.3d 601 (7th Cir. 2005).................................................................... 11

*United States ex rel. Hafter v. Spectrum Emergency Care*,
    190 F.3d 1156 (10th Cir. 1999).................................................................................. 13

*United States ex rel. Harshman v. Alcan Elec. & Eng'g, Inc.*,
    197 F.3d 1014 (9th Cir. 1999) ....................................................................... 8

*United States ex rel. Hendow v. Univ. of Phoenix*,
    461 F.3d 1166 (9th Cir. 2006) ...................................................................... 8

*United States ex rel. Houck v. Folding Carton Admin. Comm.*,
    881 F.2d 494 (7th Cir. 1989) ..................................................................... 13

*United States ex rel. Main v. Oakland City Univ.*,
    426 F.3d 914 (7th Cir. 2005) ............................................................... 6, 7-8

*United States ex rel. Mathews v. Bank of Farmington*,
    166 F.3d 853 (7th Cir. 1999) ............................................................ *passim*

*United States ex rel. Whitten v. Triad Hosp., Inc.*,
    No. CV202-189, 2005 U.S. Dist. LEXIS 26208 (S.D. Ga. Oct. 27, 2005),
    *rev'd*, 210 F. App'x 878, 2006 U.S. App. LEXIS 30931 (11th Cir. 2006) ......................... 4

## Statutes and Other Authorities

20 U.S.C. §§ 1071 *et seq.* ................................................................ 5

20 U.S.C. § 1094 ...................................................................... 5, 6

31 U.S.C. § 3730 .................................................................. *passim*

Fed. R. Civ. P. 12(b) .................................................................... 1

Fed. R Civ. P. 26(a) .................................................................. 2, 9

34 C.F.R. § 668.14 ...................................................................... 5

DeVry Inc. respectfully submits this memorandum of law in support of its motion to dismiss the First Amended Complaint ("FAC") for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and 31 U.S.C. § 3730(e)(4). For the reasons set forth below, this action should be dismissed.[1]

## I. INTRODUCTION

Jennifer S. Shultz seeks to prosecute this action pursuant to the *qui tam* provisions of the False Claims Act ("FCA"). *See* 31 U.S.C. § 3730(b) (2008). The original complaint was filed under seal on September 26, 2007, in accordance with FCA requirements, and provided to the Department of Justice so that it could conduct an investigation of the allegations and determine whether the United States would intervene in the action. *See id.* § 3730(b)(2). Following an appropriate investigation, including the review of more than five thousand pages of documents voluntarily produced to the Department of Justice by DeVry, the United States declined to intervene on September 24, 2008. The action thus is now proceeding based solely on Shultz's invocation of the FCA's *qui tam* provisions.

As the Seventh Circuit has recognized, the *qui tam* provisions are designed to encourage "insiders to come forth with information about fraudulent claims when this information is not otherwise publicly available" while preventing "self-serving opportunists" from bringing "parasitic" claims. *United States ex rel. Fowler v. Caremark Rx, L.L.C.*, 496 F.3d 730, 739 (7th Cir. 2007); *see also United States ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc.*, 436 F.3d 726, 728 (7th Cir. 2006). Toward that end, the FCA imposes specific jurisdictional restrictions that limit who is permitted to prosecute a *qui tam* action. Relevant to the present motion, 31 U.S.C. § 3730(e)(4) prohibits an individual from bringing a *qui tam* action that is based upon publicly disclosed allegations or transactions *unless* the relator is an original source of the information. *See Fowler*, 496 F.3d at 736-37; *Gear*, 436 F.3d at 728; *United States ex rel. Mathews v. Bank of Farmington*, 166 F.3d 853, 858-59 (7th Cir. 1999). This statutory bar, which is known as the "public disclosure" bar, is jurisdictional: if a *qui tam* action falls within its proscription, it must be dismissed. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457

---

[1] DeVry was founded in 1987 and is now one of the largest post-secondary educational institutions in the United States. (FAC ¶ 5.) It owns and operates educational institutions under the names of DeVry University, Ross University, Chamberlain College of Nursing, and Becker Professional Review. (*Id.*) On average, more than 50,000 students are enrolled at DeVry's educational institutions each year. (*Id.*)

(2007). Accordingly, where, as here, the court's jurisdiction is at issue, "the court may consider evidence outside the pleadings . . . [a]nd plaintiffs bear the burden to establish jurisdiction." *United States ex rel. Fowler v. Caremark Rx, Inc.*, No. 03-CV-8714, 2006 U.S. Dist. LEXIS 58992, at \*10 (N.D. Ill. Aug. 21, 2006) (Conlon, J.) (citing *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003)), *aff'd* 496 F.3d 730 (7th Cir. 2007).

The present action falls squarely within the public disclosure bar. Threshold discovery confirms that Shultz does not constitute a proper relator within the requirements of § 3730(e)(4) and governing Seventh Circuit precedent, but rather is an individual who was recruited by Mississippi counsel to advance a claim that *he* developed from publicly available information. By way of background, Shultz's counsel served initial disclosures pursuant to the order of this Court and Federal Rule of Civil Procedure 26(a)(1) on November 12, 2008. (Ex. 1.)[2] Those disclosures included 134 pages of documents that were printed from the PACER/ECF system for the Western District of Michigan, all of which were publicly filed in 2003 in a lawsuit entitled *Nielsen v. DeVry Inc.*, No. 4:02-cv-23-GJQ. (*See* Ex. 2.) In addition, the initial disclosures identified 25 individuals, other than Shultz herself, as persons likely to have discoverable information in support of Shultz's claims. (Ex. 1 at 1-7.) All 25 of those individuals were persons for whom affidavits, declarations, or deposition transcripts were publicly filed in the *Nielsen* case. (*Compare* Ex. 1 *with* Ex. 2.)

Given Shultz's reliance on publicly available materials in her Rule 26(a)(1) initial disclosures, DeVry conducted threshold discovery to address the issue of subject matter jurisdiction under § 3730(e)(4). That discovery revealed that Shultz was recruited by Timothy J. Matusheski through a cold call he made to her in or about June 2007. (Ex. 3, Shultz Dep. at 19:24-21:23.) Prior to that unsolicited call, Shultz had never heard of Matusheski, she had no understanding of the Higher Education Act, Title IV, Program Participation Agreements, or the FCA, and she had never contemplated bringing an FCA action against DeVry. (*Id.*) Prior to her deposition on December 12, 2008, Shultz had not seen the initial disclosures that her counsel served on DeVry in November 2008, she had never seen any of the 134 pages of documents from the *Nielsen* case, she did not know 22 of the 25 individuals that she identified as likely to have discoverable information in support of her claims, and, as to the other three, she had no

---

[2] Exhibits cited herein, including the transcript of the deposition of Jennifer S. Shultz ("Shultz Dep."), are attached to the Declaration of Jennifer L. Spaziano.

interaction with any of them with respect to matters pertinent to the allegations in this lawsuit. (*Id.* at 12:8-15:15.)  Shultz provided no comments or changes to the original complaint before it was filed (*id.* at 22:10-18), and did not see the FAC prior to its filing (*id.* at 71:4-12).

The following pertinent facts also were established:

- Shultz was employed with DeVry from January 2002 through November 2003. (*Id.* at 11:7-12:3.)  During the 23 months of her employment with DeVry, which ended almost *four* years before this lawsuit was filed, Shultz *never* complained about the practices alleged in the FAC.  (*See id.* at 74:16-22.)

- While employed at DeVry, Shultz filed complaints with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") relating to alleged sexual harassment by her supervisor.  (*Id.* at 17:5-18:1.)  She did not complain of the practices underlying the FAC to these government agencies.  (*See id.* at 74:16-22.)

- In July 2004, Shultz sued DeVry in Ohio federal and state court, asserting claims for sexual harassment, sex discrimination, and retaliation under Title VII.  (*Id.* at 18:5-17.)  She did not assert *any* of the allegations underlying the present complaint in her lawsuits.  (*See* Exs. 4 and 5.)

- On April 14, 2005, DeVry and Shultz entered into a Settlement Agreement and Full and Final Release of All Claims that was intended to "resolve the issues raised in the [above-described] lawsuits and charges, and any and all claims which either party may have against the other party including, but in no way limited to, any claims relating in any way to Ms. Shultz's employment with DeVry, and her compensation and benefits relating thereto." (Ex. 6 at 1.)  Toward that end, Shultz represented to DeVry "that she has no pending lawsuits or complaints with any government agency or any other organization against DeVry or any of its trustees, representatives or employees" and agreed that "she will not file any lawsuit relating to her employment or the termination of her employment with DeVry and that she will not personally benefit from any charge or claim filed by any agency regarding her employment." (*Id.* ¶ 5.)  In addition, Shultz released DeVry from "any and all causes of actions or claims . . . which [she] ever had, now has, hereafter may have, or claim to have against [DeVry], on account of or

in any way arising out of her employment with DeVry and relating to her [above-described] claims."  (*Id.* ¶ 6.)[3]

- • Neither Shultz nor her counsel communicated with the government with respect to this case until after the lawsuit was filed.  (Ex. 3, Shultz Dep. at 37:2-5; Ex. 7.)

Notwithstanding (i) that Shultz's employment with DeVry terminated in November 2003, (ii) that she resolved all claims against DeVry in April 2005 and expressly agreed not to sue DeVry in the future, and (iii) that she had not previously raised any concerns or complaints regarding DeVry's compensation practices, had no understanding of the Higher Education Act, Title IV, Program Participation Agreements, or the FCA, and never contemplated bringing an FCA action against DeVry prior to Matusheski's summer 2007 telephone call, Shultz is named as the relator in the present lawsuit in which she alleges that DeVry violated the FCA before, during, and after her employment.

The record makes apparent the origins of this action.  Matusheski, through his own examination of public information, determined that Seventh Circuit case law made it possible to advance FCA claims against educational institutions who allegedly engage in recruiter compensation practices that violate their agreements with the Department of Education ("DoE"). *He* targeted two such educational institutions doing business in the Seventh Circuit – ITT Educational Services, Inc. and DeVry.  *He* identified, through public sources, employees of ITT and DeVry who previously had brought and settled legal actions against their former employers to serve as potential vehicles to bring his lawsuits.  *He* affirmatively solicited Shultz in the summer of 2007 to serve as a relator in this action.  And *he* educated her as to *his* theory of liability – effectively creating a "whistleblower" where none existed for the purpose of initiating an action against DeVry.  This case thus is the result of "opportunistic" counsel using publicly available sources to generate a *qui tam* action.  In accordance with the jurisdictional bar of Section 3730(e)(4) this action is properly dismissed for want of subject matter jurisdiction.

---

[3]  Even if Shultz could invoke the jurisdiction of this Court to hear the FCA claims that she has alleged – and she cannot for the reasons discussed in detail herein – the Settlement Agreement and Full and Final Release would prevent her from pursuing any such claims. *See United States ex rel. Whitten v. Triad Hosp., Inc.*, No. CV202-189, 2005 U.S. Dist. LEXIS 26208, at *15-19 (S.D. Ga. Oct. 27, 2005) (in the absence of government intervention, former employee not permitted to maintain FCA suit where such employee previously released defendant from "any and all claims" in his severance agreement with the defendant), *rev'd on other grounds*, 210 F. App'x 878, 2006 U.S. App. LEXIS 30931 (11th Cir. 2006).

## II.    THIS ACTION SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO THE FALSE CLAIMS ACT'S PUBLIC DISCLOSURE BAR (31 U.S.C. § 3730(e)(4)).

The FCA provides that a court shall have no jurisdiction over a complaint brought by a relator where the complaint is based upon public disclosures of allegations or transactions, unless the person bringing the action is an original source of the information alleged in her complaint. 31 U.S.C. § 3730(e)(4)(A).   An "original source" is an individual who has "direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information."   *Id.* § 3730(e)(4)(B).  In accordance with the statutory requirements, the Seventh Circuit has held that "[t]he inquiry into whether a court may hear a *qui tam* relator's claim has three parts:  (1) Have the allegations made by the plaintiff been 'publicly disclosed'?  (2) If so, is the lawsuit 'based upon' that publicly disclosed information? (3) If so, is the plaintiff an 'original source' of the information?"   *Fowler*, 496 F.3d at 736 (quotations and citations omitted). [4]  As discussed below, the allegations advanced in the FAC have been publicly disclosed, the lawsuit is based upon the publicly disclosed information, and Shultz is not an original source of the information.

### A.    Summary of Shultz's Allegations.

Under Title IV of the Higher Education Act ("HEA"), 20 U.S.C. §§ 1071 *et seq.*, the federal government insures federal student loans and makes direct educational grants and loans for the benefit of university students.  (*See* FAC ¶¶ 6-7.)  According to the FAC, to protect the fiscal integrity and effectiveness of the Title IV program, Congress "remov[ed] incentives for post-secondary institutions to recruit and enroll persons who are not likely to be willing or able to complete successfully the academic programs of the institution" and "are therefore less likely to be able and willing to re-pay their federal loans."  (*Id.* ¶ 11.)  The FAC alleges that 20 U.S.C. §1094(a)(20) and a parallel regulation, 34 C.F.R. § 668.14(b)(22)(i), thus condition institutional eligibility to participate in the Title IV program on the institution's commitment to refrain from paying recruiters contingent fees for enrolling students.  (*Id.* ¶¶ 10, 12, 13.)

---

[4]    In conducting its analysis under § 3730(e)(4), the Court is required to consider the FAC as the controlling document.  *Rockwell*, 549 U.S. at 473; *see also Fowler*, 496 F.3d at 735.

The FAC further alleges that, in order to be eligible to receive Title IV loan or grant proceeds, each DeVry-owned or controlled institution is required to enter into a "Program Participation Agreement" ("PPA") with the DoE, which repeats the language of 20 U.S.C. § 1094(a)(2) and confirms each institution's agreement to comply with the recruiter compensation restrictions. (*See* FAC ¶¶ 9-10.) The FAC alleges that DeVry fraudulently caused the DoE to disburse federal loans and grants by submitting PPAs promising compliance with Title IV's recruiter compensation restrictions but failing to comply with those restrictions. (*Id.* ¶ 15.) In particular, the FAC alleges that DeVry breached its PPAs by establishing guidelines for recruiter advancement (and therefore compensation) based, in part, on the number of successful enrollments, or "starts," secured annually. (*Id.* ¶¶ 17-18.) The FAC also alleges that it was improper for DeVry to base eligibility for attendance at an annual business conference, known as PRIDE, on enrollment criteria. (*Id.* ¶ 19.)[5]

### B. The Allegations Made By Shultz Have Been Publicly Disclosed.

"A 'public disclosure' exists under § 3730(e)(4)(A) when the critical elements exposing the transaction as fraudulent are placed in the public domain." *Fowler*, 496 F.3d at 736. Such disclosure can occur "in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media . . . ." 31 U.S.C. § 3730(e)(4)(A). Application of these rules to the present case compels the conclusion that the "critical elements" exposing DeVry's conduct as allegedly

---

[5] DeVry denies the allegations of the FAC and maintains that it has not violated the FCA. In fact, if Shultz's *qui tam* claims were not jurisdictionally barred, they would be subject to dismissal in any event for failure to state a claim. Among other things, the FAC fails to allege that DeVry made any statements to the government that were "false" within the meaning of the FCA because DeVry's alleged compensation practices do not violate Title IV. *See United States ex rel. Bott v. Silicon Valley Colls.*, 262 F. App'x 810, 811-12, 2008 U.S. App. LEXIS 381 (9th Cir. 2008) (affirming dismissal of complaint because relators had not pled "specific facts supporting the inference that salary reviews were performed solely on the basis of recruiting success," notwithstanding allegations that recruiters who failed to enroll a minimum number of students were terminated and those who met minimum requirements were retained and given raises). The FAC also fails to allege that DeVry had knowledge of the purported falsity of its statements regarding intended compliance with the recruiter compensation restrictions and there are no *facts* alleged that plausibly suggest that DeVry did not believe that it was compliant with the applicable regulations. *See United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 917 (7th Cir. 2005) (an educational institution is exposed to liability under the FCA only if it "knew about the [recruiter compensation restriction] and told [DoE] that it would comply, while planning to do otherwise").

"fraudulent" were publicly disclosed. Indeed, *all* the facts underlying Shultz's claims were publicly disclosed long before she filed her lawsuit.

First, the facts alleged with respect to DeVry's obligations under the HEA and Title IV, the provisions of its PPAs with the DoE, and the statements it made to the DoE in connection with the student loans at issue (FAC ¶¶ 7-14, 26-45) – all of which are critical elements of Shultz's FCA claims – were publicly disclosed through (i) numerous cases filed against educational institutions around the country based on the same regulatory scheme and conduct; and (ii) the news media that reported on those cases. In particular, during the period 1999 to 2007, at least fifteen lawsuits were filed against educational institutions advancing the *same* allegations as alleged in the FAC – *i.e.*, that such institutions violated the FCA when they promised in their PPAs to comply with Title IV's recruiter compensation restrictions yet failed to do so.[6] Numerous news articles discussed these lawsuits and the theories of liability being advanced against the industry, including the recruiter compensation practices at issue. (*See, e.g.*, Exs. 8-20.)

The early cases were largely unsuccessful in light of the Fifth Circuit's decision in *United States ex rel. Graves v. ITT Educational Services, Inc.*, in which the Court affirmed the district court's dismissal of relator's FCA claims, finding that the complaint failed to allege that the government's loan payments were dependent on the allegedly false certifications with respect to the school's compliance with Title IV's recruiter compensation restrictions. 111 F. App'x 296, 2004 U.S. App. LEXIS 21799 (5th Cir. 2004). On October 20, 2005, however, the Seventh Circuit issued its decision in *United States ex rel. Main v. Oakland City University*, in which it

---

[6]     *See United States ex rel. Bowman v. Computer Learning Ctrs.*, 4:99-cv-1138 (S.D. Tex.); *United States ex rel. Graves v. ITT Educ. Servs., Inc.*, No. 4:99-cv-3899 (S.D. Tex.); *United States ex rel. Bowman v. Educ. America, Inc.*, 4:00-cv-03028 (S.D. Tex.); *United States ex rel. Gay v. Lincoln Tech. Inst.*, 3:01-cv-00505 (N.D. Tex.); *United States ex rel. Payne v. Whitman Educ. Group*, 3:02-cv-00843 and 4:03-cv-3089 (S.D. Tex.); *United States ex rel. Main v. Oakland City Univ.*, 3:03-cv-00071 (S.D. Ind.); *United States ex rel. Hendow v. Univ. of Phoenix*, 2:03-cv-00457 (E.D. Cal.); *United States ex rel. Bott v. Silicon Valley Colls.*, 4:04-cv-00320 (N.D. Cal.); *United States ex rel. Ector v. Axia Coll. Online*, 1:05-cv-01637 (D.D.C.); *United States ex rel. Dahlstrom v. Walden Univ., Inc.*, 2:06-cv-01531 (W.D. Wash.); *United States ex rel. Torres v. Kaplan Higher Educ.*, 1:07-cv-05643 (N.D. Ill.); *United States ex rel. Cruz v. Western Career Coll.*, 2:07-cv-01666 (E.D. Cal.); *United States ex rel. Urquilla-Diaz v. Kaplan Univ.*, 8:07-cv-00669 (M.D. Fla.); *United States ex rel. Leveski v. ITT Educ. Servs., Inc.*, No. 1:07-cv-0867 (S.D. Ind.).

reversed a district court order dismissing similar FCA claims. 426 F.3d at 916-17. The *Main* Court held that an FCA lawsuit can survive a motion to dismiss if the complaint alleges that a university is violating a provision of its PPA and did not intend to comply with that provision at the time it entered into the agreement. Several months later, the Ninth Circuit, relying on *Main*, similarly reversed the dismissal of an FCA case that was based on allegations of a university's violation of Title IV's recruiter compensation restrictions. *See United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1171-73 (9th Cir. 2006).

Several news articles published in the wake of *Main* and *Hendow* discussed the impact of these cases on similarly situated educational institutions, including articles entitled "Inviting a Flurry of False Claims Cases" and "The Growing Threat of False-Claims Lawsuits." (*See* Exs. 13-20.) In addition, at least five new FCA lawsuits advancing the same allegations against educational institutions were filed. (*See supra* note 7.) In fact, on July 3, 2007, two months before he filed this action, Shultz's counsel filed a *qui tam* action in the Southern District of Indiana against ITT Educational Services, Inc. The allegations in the FAC are remarkably similar to those in – and *all* the exhibits to the FAC were attached as exhibits to – the First Amended Complaint filed in that action. (*See* Ex. 21.)

It makes no difference whether DeVry itself was specifically named in any of these publicly disclosed materials as one of the educational institutions which allegedly violated Title IV or the FCA as the Seventh Circuit has held that general allegations of fraud against an industry are sufficiently specific to trigger the public disclosure bar:

> We are unpersuaded by an argument that for there to be public disclosure, the specific defendants named in the lawsuit must have been identified in the public records. The disclosures at issue here were of industry-wide abuses and investigations. Defendants were implicated. Industry-wide public disclosures bar *qui tam* actions against any defendant who is directly identifiable from the public disclosures.

*Gear*, 436 F.3d at 729 (citing *United States ex rel. Harshman v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014 (9th Cir. 1999), *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675 (D.C. Cir. 1997), and *United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568 (10th Cir. 1995)). In fact, Shultz readily admits that she had *no knowledge* of DeVry's obligations under the HEA, Title IV, or its PPAs with the DoE until the summer of 2007, when Matusheski contacted her by telephone. (Ex. 3, Shultz Dep. at 15:16-17:4, 19:24-21:23.) Accordingly, DeVry *necessarily* was identified through these public disclosures.

Moreover, the facts alleged with respect to DeVry's recruiter compensation practices (*see* FAC ¶¶ 16-23), were publicly disclosed through (i) the public filings in the *Nielsen* case, including those that Shultz's counsel produced to DeVry as the bulk of Shultz's initial disclosures in this case; and (ii) DeVry's voluntary production of documents to the EEOC in connection with its investigation of Shultz's sexual harassment allegations. As discussed above, as part of Shultz's Initial Disclosures, made in satisfaction of her obligations under Rule 26(a), Shultz's counsel produced as documents that Shultz "may use to support [her] claims" 134 pages of documents printed from the PACER/ECF system for the Western District of Michigan. (*See* Ex. 2.) These documents were filed between September 26, 2003, and October 24, 2003, in a lawsuit entitled *Nielsen v. DeVry Inc.*, No. 4:02cv23-GJQ, and thus have been publicly available via the PACER/ECF system for several years. These public filings, which include affidavits, declarations and deposition transcripts, describe DeVry's recruiter compensation practices. (*Id.*) For example, an affidavit filed by a senior DeVry official describes both DeVry's recruiter compensation structure and its PRIDE program – the very same practices that underlie the FAC. (*Compare* Ex. 2, Dilello Decl. ¶¶ 13-14 *with* FAC ¶¶ 16-23.) In addition, DeVry produced documents to the EEOC in connection with its investigation of sexual harassment claims that Shultz had lodged in 2003, which describe DeVry's compensation practices and its PRIDE program. (Ex. 22 ¶ 4; Ex. 23.) Consequently, the FAC's remaining allegations with respect to DeVry's conduct also were publicly disclosed. *See Mathews*, 166 F.3d at 861 & n.4 (noting that every Court of Appeals to have considered the issue has determined that discovery material which has been filed with a court has been publicly disclosed and that "[d]isclosure to an official authorized to act for or represent the community on behalf of government can be understood as public disclosure").

### C. Shultz's Lawsuit Is Based Upon Publicly Disclosed Information.

In the Seventh Circuit, "[a] lawsuit is based upon public[ly] disclose[d information] when it both depends essentially upon publicly disclosed information and is actually derived from such information." *Fowler*, 496 F.3d at 737 (quotations omitted). As the Seventh Circuit made clear in *Fowler*, a "complaint will meet the jurisdictional requirement if it is *only* based on . . . materials [other than the public disclosures] . . . ." *Id.* (emphasis added). Put another way, a *qui tam* "complaint will not meet the jurisdictional bar . . . if the Relators used materials that they received from [public sources]." *Id.* at 738. Applying the principles affirmed in *Fowler* results

in the conclusion that Shultz's action is "based upon" the publicly disclosed information described above. Indeed, in sharp contrast to the facts underlying *Fowler*, where the defendant sought to invoke the public disclosure bar based on public disclosures provided to relators three years *after* they filed their original complaint, *id.* at 734, Shultz's lawyer derived this lawsuit from public disclosures even *before* he solicited Shultz's participation in this case as a "relator." Shultz therefore *cannot* demonstrate that the FAC is derived from non-public sources.

In this regard, Shultz readily admits that Matusheski contacted her out of the blue in the summer of 2007 – four years after her employment with DeVry had terminated and two years after she had settled her claims against DeVry and provided DeVry with a broad release and covenant not to sue. (Ex. 3, Shultz Dep. at 21:4-19.) Shultz had never before heard of Matusheski and did not seek legal advice from any other lawyer regarding a potential FCA suit against DeVry. (*Id.*) Because Matusheski instructed Shultz during her deposition not to answer any questions about his initial conversation with her, DeVry was unable to discover exactly how Matusheski learned of Shultz's existence and of her past relationship with DeVry. (*Id.* at 21:8-14.) Nevertheless, it is self-evident that, because she sued DeVry in the Southern District of Ohio, Shultz is publicly identifiable through a PACER/ECF search. (Ex. 24.)[7] Shortly after his initial conversation with Shultz, Matusheski sent her a copy of the *Main* and *Hendow* cases, thus beginning the education process of his selected relator. (Ex. 7.) The next day, he sent her a "Contingency Fee contract." (*Id.*)

Shultz testified that, prior to her conversation with Matusheski, she knew nothing about the HEA or Title IV and that she had never seen a PPA. (Ex. 3, Shultz Dep. at 15:16-17:4.) Accordingly, there can be no question that all the allegations in the FAC relating to such matters – paragraphs 7, 8, 9, 10, 11, 12, 13, 14, 15, 24, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45 – both depend essentially upon publicly disclosed information and are actually derived from such information. *See, e.g.*, *Mathews*, 166 F.3d at 863 (relator's claims were based on public disclosures where she relied on public disclosures to confirm the existence of the alleged fraud); *United States ex rel. Bannon v. Edgewater Med. Ctr.*, 406 F. Supp. 2d 907 (N.D. Ill. 2005) (relator's claims were based on public disclosures where she relied extensively

---

[7]     Notably, the purported relator in the case brought by Matusheski against ITT also is readily identifiable through a PACER search as she filed a sexual harassment action against ITT in the Eastern District of Michigan in 2005. (Ex. 25.)

on public disclosures in her complaint and failed to establish that she discovered the alleged fraud independent of the public disclosures); *United States ex rel. Gross v. Aids Research Alliance-Chicago*, No. 01-C-8182, 2004 U.S. Dist. LEXIS 7302 (N.D. Ill. Apr. 27, 2004), *aff'd*, 415 F.3d 601 (7th Cir. 2005) (relator's claims were based on public disclosures where he did not allege that information in his complaint was derived from non-public information).

The only paragraphs of the FAC with respect to which Shultz claims to know anything are the *nine* paragraphs that describe DeVry's alleged recruiter compensation practices. (*See* FAC ¶¶ 16, 17, 18, 19, 20, 21, 22, 23, 25.) As noted above, such practices were described in detail in the numerous submissions to the Court in the *Nielsen* case – produced by Matusheski in fulfillment of Shultz's initial disclosure obligations in this case. The allegations with respect to DeVry's PRIDE program, moreover, were derived from two documents DeVry produced to the EEOC in the course of that agency's investigation of Shultz's sexual harassment allegations. (Exs. 22 and 23.) Indeed, paragraph 19 of the FAC directly quotes from one of these documents, and paragraph 20 describes the elements of PRIDE membership as set forth in the second document. (*Compare* Ex. 23 *with* FAC ¶¶ 19-20.) Shultz cannot dispute that her allegations are "based on" these documents as she produced them to the government in accordance with her obligations under 31 U.S.C. § 3730(b)(2) to provide "substantially all material evidence and information" that she possessed. (Ex. 7.)[8]

In sum, Shultz's lawsuit both depends essentially upon publicly disclosed information and is actually derived from such information. This case therefore falls squarely within the scope of the public disclosure bar. *See Mathews*, 166 F.3d at 863-64 ("a *qui tam* plaintiff may not bring an action based *in any part* on [publicly disclosed] transactions") (emphasis added); *cf. Fowler*, 496 F.3d at 739 (public disclosure bar did not apply to *qui tam* action that was filed three years before public disclosure was made available to relators and where complaint was based only on the relators' inside information and defendant's direct disclosures to relators). Accordingly, this

---

[8]  Any argument that Relator's counsel have avoided the statutory bar by using information provided by Shultz – and not information publicly available through the *Nielsen* case – to draft Paragraphs 16-23 and 25 would miss the mark given (i) the genesis of this case and the fact that Shultz is not a whistleblower within the meaning of the FCA; (ii) their obvious reliance on publicly available information to draft all the other critical elements of the FCA claims advanced; and (iii) the fact that they admittedly relied upon documents which were publicly disclosed in connection with Shultz's earlier EEOC investigation.

Court lacks jurisdiction over this action unless Shultz is an "original source" of the information alleged.

### D. Shultz Is Not An Original Source.

To qualify as an original source and escape the FCA's jurisdictional bar, a relator must have "direct and independent knowledge of the information on which the allegations are based" *and* must have "voluntarily provided the information to the Government before filing" her action. 31 U.S.C. § 3730(e)(4)(B). This Court need not even address the first prong of the original source test because neither Shultz nor her counsel voluntarily provided the information on which the FAC is based to the government prior to filing this lawsuit. (*See* Ex. 3, Shultz Dep. at 37:2-5; Ex. 7.) As the Seventh Circuit has stated, "[t]o be an 'original source,' a *qui tam* plaintiff must be a *source* as well as being an *original* source. . . . More must be done to qualify as an original source than to file the action. The government must be voluntarily notified beforehand." *Mathews*, 166 F.3d at 865-66. Because Shultz did not share with the government the information about the fraud alleged in the FAC before filing her *qui tam* action, she does not qualify as an original source, and the FAC must be dismissed. *See id.*

Even if she had provided information to the government prior to filing suit, Shultz still would not qualify as an original source because she does not have direct and independent knowledge of the information on which her claims are based. To have "direct and independent knowledge" of an alleged fraud, an individual must have "first-hand, personal knowledge of the alleged wrongdoing, gained independent of the public disclosure of the wrongdoing." *United States ex rel. Grant v. Rush-Presbyterian/St. Luke's Med. Ctr.*, No. 99 C 06313, 2000 U.S. Dist. LEXIS 19249, at *13-14 (N.D. Ill. Aug. 24, 2000). As to the vast majority of the allegations in the FAC, including DeVry's submission of PPAs to the DoE and its obligations under Title IV, Shultz admittedly knew nothing until Matusheski contacted her in the summer of 2007 and advised *her* of *his* allegations to this effect. This occurred four years *after* her employment with DeVry was terminated.

The only matters about which Shultz had any knowledge were DeVry's recruiter compensation practices, and with respect to these matters, she had the same knowledge as any other individual working at DeVry. She did not understand there to be anything improper with respect to those compensation practices until Matusheski solicited her participation in a lawsuit and advanced his theories. (*See* Ex. 3, Shultz Dep. at 74:16-22.) Thus, any knowledge that

Shultz had regarding the alleged fraudulent practices in the FAC was learned from her attorney. Under these facts, Shultz cannot be an original source. *See United States ex rel. Glaser v. Wound Care Consultants, Inc.*, No. 1:05-cv-573-LJM-WTL, 2007 U.S. Dist. LEXIS 88925 (S.D. Ind. Dec. 3, 2007) (former employee of defendant not an original source within the meaning of § 3730(e)(4) where her knowledge of the fraud underlying her complaint was obtained from a conversation with her attorney); *United States ex rel. Houck v. Folding Carton Admin. Comm.*, 881 F.2d 494, 505 (7th Cir. 1989) (individual was not an original source of the information on which his claim was based where there was no evidence to indicate that the individual would have learned of the alleged wrongful conduct absent the public disclosure); *United States ex rel. Hafter v. Spectrum Emergency Care*, 190 F.3d 1156, 1162 (10th Cir. 1999) (to qualify as an original source, the knowledge imparted by the relator must be "marked by the absence of an intervening agency . . . [and] unmediated by anything but the [*qui tam* plaintiff's] own labor").

\*   \*   \*

As the Seventh Circuit has recognized, the public disclosure bar promotes the FCA's goals of "encourag[ing] private individuals who are aware of fraud against the government to bring such information forward at the *earliest possible time* and [] discourag[ing] persons with relevant information from remaining silent." *Mathews*, 166 F.3d at 866 (emphasis in original) (quotations omitted). As this Court has recognized, "[t]he provision aims to encourage whistleblowers to inform the government of fraud on the one hand, and to prevent parasitic *qui tam* suits on the other" and "[i]mposition of the jurisdictional bar . . . must be consistent with this legislative purpose." *Fowler*, 2006 U.S. Dist. LEXIS 58992, at \*11 (citing *Mathews*, 166 F.3d at 859). For all the reasons discussed above, this case runs afoul not only of the plain language of the statute but also of its intent. Shultz is not a private individual with knowledge of fraud against the government; she is a former DeVry employee who previously brought suit against the company and who was willing to pursue a claim that Matusheski pieced together from publicly available information. She thus is not "the type of whistle-blower[] 31 U.S.C. § 3730 aims to encourage." *Id.* at \*16-17 ("Congress intended that the courts not be troubled by persons who wish to capitalize on others' discovery of frauds." (quoting *Mathews*, 166 F.3d at 858)). The FCA's public disclosure bar, which is designed to deter exactly this type of parasitic *qui tam* action, deprives this Court of jurisdiction to hear Shultz's claims. *Gear*, 436 F.3d at 728-30 (affirming dismissal of FCA claims for lack of jurisdiction where suit was based on public

disclosures of industry-wide abuses and investigations and where relator did not speak to the government about his claims prior to filing suit).

## III.  <u>CONCLUSION</u>

The FAC should be dismissed for lack of subject matter jurisdiction.

DATED:  January 26, 2009                     Respectfully submitted,


                                             /s/ R. Ryan Stoll
Mitchell S. Ettinger, *pro hac vice*          R.Ryan Stoll
Jennifer L. Spaziano, *pro hac vice*          Skadden, Arps, Slate, Meagher & Flom LLP
Skadden, Arps, Slate, Meagher & Flom LLP      333 West Wacker Drive, Suite 2100
1440 New York Avenue, NW                      Chicago, IL 606006
Washington, DC 20005                          Telephone:  312-407-0700
Telephone:  202-371-7000                      Ryan.Stoll@skadden.com
Mitchell.Ettinger@skadden.com
Jen.Spaziano@skadden.com
                                             Attorneys for DeVry Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above Memorandum of Law in Support of the Motion of DeVry Inc. to Dismiss Relator's First Amended Complaint for Lack of Subject Matter Jurisdiction (the "Memorandum of Law") was served upon the following counsel on January 26, 2009, via the Court's CM/ECF system:

J. Brad Pigott
bpigott@prjlawyers.com

Robin B. Potter
robinpotter@igc.org

I further certify that, on the same day, I caused the Memorandum of Law to be mailed via United States Postal Service, postage prepaid, to the following non-registered participants:

Timothy J. Matusheski
Law Offices of Timothy J. Matusheski
P.O. Box 1421
Waynesboro, MS 39367

Michele M. Fox
Assistant United States Attorney
219 South Dearborn Street,
Chicago, IL 60604

Dated: January 26, 2009

/s/ R. Ryan Stoll
R. Ryan Stoll

Attorney for DeVry Inc.