IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER S. SCHULTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: 07 C 5425 |
| v. | ) |
| | ) Suzanne B. Conlon, Judge |
| DEVRY INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Jennifer S. Schultz sues her former employer DeVry Inc. ("DeVry") under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b). Schultz alleges DeVry fraudulently caused the Department of Education to disburse federal loans and grants by failing to comply with promised student recruiter compensation restrictions. DeVry moves to dismiss the amended complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and 31 U.S.C. § 3730(e)(4). For the reasons set forth below, the motion is granted.

## BACKGROUND

Under Title IV of the Higher Education Act, 20 U.S.C. §§ 1071, *et seq.* ("Title IV"), the federal government insures federal student loans and makes direct educational grants and loans for the benefit of students. Title IV conditions eligibility on the institution's commitment to refrain from paying student recruiters contingent fees for enrolling students. *Id.* § 1094(a)(20). DeVry is a large post-secondary educational institution that receives Title IV funding. DeVry is required to enter into a program participation agreement with the Department of Education to confirm DeVry's compliance with the recruiter compensation restrictions. Am. Compl. ¶¶ 9-10.

The underlying policy is to remove incentives for post-secondary institutions to recruit and enroll students who are not likely to complete the program and repay the loans. *Id.* ¶ 11. From 1999 to 2007, many False Claims Act lawsuits were filed against educational institutions for violating the recruiter compensation restrictions. News articles across the country discussed the lawsuits. DeVry. Exs. 8-20: News Articles.

Schultz was an on-campus DeVry student recruiter from January 2002 to November 2003. While employed at DeVry, Schultz filed complaints with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission alleging her supervisor sexually harassed her. In July 2004, Schultz sued DeVry in Ohio federal and state courts for sexual harassment, sex discrimination, and retaliation. DeVry and Schultz settled the claims in April 2005. Schultz did not allege any False Claims Act claims in the employment discrimination litigation. DeVry Exs. 4 and 5: Schultz's State and Federal Employment Discrimination Complaints.

At the time Schultz worked for DeVry, she did not have an understanding of Title IV, and had not seen a program participation agreement. DeVry Ex. 3: Schultz Dep. Tr. at 15-17. Shultz did not contemplate bringing a False Claims Act lawsuit against DeVry until attorney Timothy Matusheski telephoned her in May or June 2007. *Id.* at 21-23. Matusheski and Schultz did not know each other prior to that time. *Id.* at 21. Matusheski explained the program participation agreement to Schultz. *Id.* at 16. Schultz learned, in a conversation with Matusheski, that DeVry allegedly violated the program participation agreement by compensating recruiters for enrollments. She refused to respond to questions about the conversation based on

2

the attorney-client privilege. *Id.* at 20-21. Matusheski sent Schultz a contingency fee contract on May 30, 2007. Ex. 7: Schultz' Privilege Log at 3.

Schultz filed her initial complaint under seal on September 26, 2007. She had no role in drafting the complaint, and made no comments about or changes to the complaint before Matusheski filed it. Schultz Dep. Tr. at 22. The complaint remained under seal while the United States Attorney's Office investigated the case before determining it would not intervene. *See* 31 U.S.C. § 3730.

Schultz filed an amended complaint on December 5, 2008. She had no role in drafting the amended complaint, and did not see the amended complaint before Matusheski filed it. Schultz Dep. Tr. at 71. The amended complaint alleges DeVry submitted program participation agreements to the Department of Education in which DeVry agreed to comply with the recruiter compensation restrictions. Am. Compl. ¶ 15. According to the amended complaint, the Department of Education disbursed federal loans and grants, but DeVry advanced and compensated student recruiters based upon the number of successful enrollments. In violation of the program participation agreements, DeVry maintained a "PRIDE" motivation program that gave recruiters bonuses based upon responsibility for a specified number of enrollments. *Id.* ¶¶17-23.

## DISCUSSION

### I. Standard

A motion to dismiss may challenge subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). All well-pleaded allegations are accepted as true, and all reasonable inferences are drawn in

3

plaintiffs' favor. *St. John's United Church of Christ*, 502 F.3d at 625. A Rule 12(b)(1) motion may rely on evidence beyond the jurisdictional allegations of the complaint. *Id.*

## II.    Motion to Dismiss

DeVry argues this court lacks subject matter jurisdiction under § 3730(e)(4) because the amended complaint is based on publicly disclosed information, and Schultz is not the original source of the information. The False Claims Act provides that a court lacks jurisdiction over a relator's complaint based on public disclosures of allegations or transactions, unless the relator is an original source of the information. 31 U.S.C. § 3730(e)(4)(A). This analysis involves review of whether the allegations have been publicly disclosed; if so, whether the lawsuit is based on the publicly disclosed information; and if so, whether plaintiff is an original source of the information. *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 736 (7th Cir. 2007).

### A.    Public Disclosure

A public disclosure occurs when the critical elements exposing the transaction as fraudulent are placed in the public domain. *Id.* A public disclosure may occur, *inter alia*, in a civil or administrative hearing, or in the news media. 31 U.S.C. § 3730(e)(4)(A). The critical elements of the amended complaint were disclosed through the cases filed against educational institutions based upon the same regulatory scheme and alleged conduct, and the news articles that reported the cases. DeVry cites numerous analogous cases: *United States ex rel. Bowman v. Computer Learning Ctrs.*, 4:99-CV-1138 (S.D. Tex.) (1999); *United States ex rel. Graves v. ITT Educ. Servs., Inc.*, No. 4:99-CV-3889 (S.D. Tex) (1999); *United States ex rel. Bowman v. Educ. America, Inc.*, 4:00-CV-03028 (S.D. Tex.) (2000); *United States ex rel. Gay v. Lincoln Tech.*

4

*Inst.*, 3:01-CV-00505 (N.D. Tex.) (2000); *United States ex rel. Payne v. Whitman Educ. Grp.*, 3:02-CV-00843 and 4:03-CV-3089 (S.D.Tex.) (2002); *United States ex rel. Main v. Oakland City Univ.*, 3:03-CV-00071 (S.D. Ind.) (2003); *United States ex rel. Hendow v. Univ. of Phoenix*, 2:03-CV-00457 (E.D. Cal.) (2003); *United States ex rel. Bott v. Silicon Valley Colls.*, 4:04-CV-00320 (N.D. Cal.) (2004); *United States ex rel. Ector v. Axia Coll. Online*, 1:05-CV-01637 (D.D.C.) (2005); *United States ex rel. Torres v. Kaplan Higher Educ.*, 1:07-CV-05643 (N.D. Ill.) (2007); *United States ex rel. Cruz v. Western Career Coll.*, 2:07-CV-01666 (E.D. Cal.) (2007); *United States ex rel. Leveski v. ITT Educ. Servs., Inc.*, No. 1:07-CV-0867 (S.D. Ind.) (2007).

These cases advanced the same allegations raised in the amended complaint – that the educational institutions violated the False Claims Act by agreeing in program participation agreements to comply with Title IV's recruiter compensation restrictions, but failing to comply with the restrictions. Schultz's attorney Matusheski represented plaintiff in the *United States ex rel. Leveski v. ITT Educ. Servs., Inc.* case, which was filed in July 2007 – two months before Schultz filed this lawsuit. DeVry Ex. 21: *United States ex rel. Leveski v. ITT Educ. Servs., Inc.*, No. 1:07-CV-0867 (S.D. Ind.). And Matusheski sent Schultz copies of the "*Main and Hendow* cases" after their initial contact. Schultz Privilege Log at 3.

Schultz argues the cases and news articles do not constitute public disclosures because the lawsuits were not against DeVry. A similar argument was rejected in *United States ex rel. Gear v. Emergency Medical Assocs. of Ill., Inc.*, 436 F.3d 726 (7th Cir. 2006). Gear, a resident at Midwestern University, brought a *qui tam* lawsuit under the False Claims Act against two companies that supply doctors to hospital emergency rooms – Emergency Medical Associates of Illinois, Inc. ("EMA") and Illinois/Indiana EM-1 Medical Services, S.C. ("IMS"). Gear alleged

5

EMA and IMS billed Medicare for attending physician services when the services were actually performed by Midwestern University's residents. *Id.* at 727.

National news reports and audits had disclosed the improper billing practices, and the Department of Health and Human Services investigated Medicare billing practices for resident services at medical schools, including Midwestern University. Gear unsuccessfully argued these public disclosures did not expose any transactions suggesting that *EMA* and *IMS* were fraudulently billing Medicare. The specific defendants named in the lawsuit do not need to be identified in public disclosures. The disclosures were of industry-wide abuses; thus, EMA and IMS were identifiable, and the public disclosure bar applied. *Id.* at 728-29.

The critical elements exposing DeVry's alleged fraud were publicly disclosed in parallel litigation and news reports. A reasonable inference may be drawn that Matusheski identified DeVry as a potential defendant from these disclosures, and then contacted Schultz to serve as a putative plaintiff.

### B.     Based on Public Disclosure

A lawsuit is based upon publicly disclosed information when it both depends essentially upon publicly disclosed information and is actually derived from public information. 31 U.S.C. § 3730(e)(4)(A); *Fowler*, 496 F.3d at 737. A complaint does not meet the jurisdictional requirement if it is based on any public disclosure. *Fowler*, 496 F.3d at 738.

Schultz argues Matusheski used information *she* provided to draft the complaint against DeVry. Namely, as a student recruiter, Schultz was familiar with the compensation structure and the PRIDE program. She provided Matusheski internal DeVry documents and DeVry's admissions representatives' manual, which describes DeVry's compensation plan for on-campus

6

admissions representatives. Schultz Dep. Tr. at 36, 55-61, and 70. But Schultz does not dispute that she knew nothing about DeVry's obligations under Title IV or the program participation agreement until attorney Matusheski educated her. The amended complaint depends on information Matusheski provided to Schultz. The allegation is that DeVry fraudulently caused the Department of Education to disburse federal loans and grants by failing to comply with promised student recruiter compensation restrictions. Shultz could not assert this claim without knowledge of DeVry's Title IV obligations and its program participation agreement. The amended complaint is based on publicly disclosed information.

## C. Original Source

An original source must have direct and independent knowledge of the information on which the allegations are based, and must voluntarily provide the information to the government before filing the complaint. 31 U.S.C. § 3730(e)(4)(B).

Schultz argues Matusheski provided a draft complaint to the United States Attorney's Office three weeks before filing. According to DeVry, providing a draft complaint, which contains only allegations and not the information upon which the allegations are based, is insufficient to meet the statutory prerequisite. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 472 (2007) (analyzing the phrase "information on which the allegations are based" and explaining that the information required is the information underlying the action). "Precisely what it would mean to have voluntarily provided the information to the government before filing the lawsuit under [§ 3730(e)(4)(B)] is not something settled in the caselaw or clearly specified in the statute." *United States ex rel Mathews v. Bank of Farmington*, 166 F.3d 853, 866 (7th Cir. 1999). The history of the case, and Schultz's delay of almost four years after her employment

7

with DeVry to provide merely the draft complaint to the government, suggests noncompliance with § 3730(e)(4)(B).

Schultz does not have direct and independent knowledge of the information alleged in the complaint filed in her name. She did not have an understanding of Title IV or DeVry's program participation agreement until she spoke to Matusheski. She first learned in a conversation with Matusheski that DeVry allegedly violated the program participation agreement by compensating recruiters for enrollments, but refused to answer questions about this conversation in her deposition based on the attorney-client privilege. A reasonable inference may be drawn that Schultz learned about the allegations in the amended complaint from Matusheski. Under these facts, Schultz is not an original source.

## CONCLUSION

DeVry's motion to dismiss is granted. The amended complaint is based on publicly disclosed information, and Schultz is not the original source of the information.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

March 4, 2009

8